UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARTH TECH, INC.,　)
a California corporation,　)
　)
　　　Plaintiff,　)
　)
vs.　)　Case No.: 6:00-cv-1536-ORL-31B
　)
MIGUEL DELGADO BELLO,　)
　)
　　　Defendant.　)
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff EARTH TECH, INC., a California corporation, by and through its undersigned counsel, and hereby sues Defendant MIGUEL DELGADO BELLO, and states as follows:

### Jurisdiction and Venue

1. This is an action for damages in excess of $75,000.00, exclusive of interest and costs, to remedy damages sustained by Plaintiff as a result of Defendant's breach of his duty of loyalty to Plaintiff. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and Rule 1.02(c) of the Local Rules of the United States District Court for the Middle District of Florida.

### Parties and Factual Allegations

2. Plaintiff EARTH TECH, INC. ("Earth Tech" or the "Company") is a foreign corporation organized and existing under the laws of the State of California.

JACKSON, LEWIS, SCHNITZLER & KRUPMAN

3. Defendant MIGUEL DELGADO BELLO ("Delgado") is an individual, *sui juris*, who is a citizen of and resides in Seminole County, Florida.

4. On or about October 12, 1992, Delgado was hired by SEC Donahue Environment and Infrastructure ("SEC Donahue") as a Project Manager charged with business development in Venezuela.

5. SEC Donahue was subsequently acquired by Rust Environment & Infrastructure, Inc. ("Rust E&I"). At that time, Delgado became employed by Rust E&I charged with business development in Venezuela.

6. At all relevant times, Rust E&I owned Grupo Rust International Di Venezuela, C.A. ("Grupo Rust"), a Venezuelan corporation formed by Rust E&I to conduct business operations in Venezuela.

7. On or about May 26, 1995, Delgado hired Luis E. Delgado Contreras ("Contreras") as Rust E&I's legal representative in Venezuela charged with providing legal advice on and supporting local business development efforts.

8. Upon information and belief, Contreras is Delgado's cousin.

9. On or about May 26, 1995, Delgado suggested to Rust E&I management that the Company compensate Contreras with a "participation fee" consisting of a percentage of the total amounts of any contracts obtained by Rust E&I through Contreras' services. Specifically, Delgado suggested Rust E&I compensate Contreras with a participation fee of 3.5% for the first $5,000,000.00 and 2.5% thereafter.

10. On or about May 26, 1995, Rust E&I rejected Delgado's proposal, and specifically informed Delgado that Contreras' compensation was not to be based on percentages of contracts.

11. On or about October 13, 1997, Rust E&I executed a limited Power of Attorney authorizing Delgado to enter into contracts on behalf of the Company. Delgado was specifically instructed in writing by Rust E&I that "no proposal for fixed price work nor any contract should be signed without the specific written approval of" Rust E&I management, and that such approval "must take place prior to signing the aforementioned proposals or contracts."

12. On or about January 1, 1998, Grupo Rust entered into a one-year Foreign Representation Agreement with Contreras (the "Contreras I Agreement"), appointing him as representative of Grupo Rust to provide legal advice on and support business development in Venezuela. In exchange for his services under the Contreras I Agreement, Contreras was entitled to be compensated at the rate of $150 per hour, plus a fixed monthly amount for office space, equipment, administrative and accounting support. The Contreras I Agreement was executed on behalf of Rust E&I by Delgado's immediate supervisor.

13. Consistent with its policies regarding participation fees, the Contreras I Agreement did not provide for compensation to Contreras based on percentages of contracts.

14. On or about February 1, 1998, Delgado recommended to Rust E&I management that Contreras' contract not be renewed because Rust E&I did not benefit from its relationship with Contreras.

15. On or about June 10, 1998, Delgado entered into a superseding, two-year Foreign Representation Agreement with Contreras (the "Contreras II Agreement"). According to the Contreras II Agreement, Contreras was entitled to be compensated at the rate of $150 per hour, plus a fixed monthly amount for office space, equipment and administrative support. Additionally, Contreras was to receive a participation fee of 2% of the total amounts of any contracts obtained by Grupo Rust through Contreras' services.

16. The Contreras II Agreement was executed by Delgado on behalf of Rust E&I.

17. Contrary to express, written instructions from Rust E&I, Delgado entered into the Contreras II Agreement without obtaining the specific written approval of Rust E&I management.

18. Contrary to express instructions from Rust E&I, Delgado inserted a clause in the Contreras II Agreement providing for compensation based on percentages of contracts.

19. Pursuant to the unauthorized Contreras II Agreement, Contreras has subsequently demanded payment of $1,400,000.00 in participation fees.

20. On or about June 10, 1998, Delgado entered into a two-year Foreign Consultant Agreement with Antonio Elias Nacad M. ("Nacad") and Hernan De Armas Perez ("Perez")(the "Nacad Agreement"), appointing Nacad and Perez as Consultants of Grupo Rust. In exchange for their services under the Nacad Agreement, Nacad and Perez were to receive a participation fee of 3% of the total amounts of any contracts obtained by Grupo Rust through their services.

21. The Nacad Agreement was executed by Delgado on behalf of Rust E&I.

22. Contrary to express, written instructions from Rust E&I, Delgado entered into the Nacad Agreement without obtaining the specific written approval of Rust E&I management.

23. Contrary to express instructions from Rust E&I, Delgado inserted a clause in the Nacad Agreement providing for compensation based on percentages of contracts.

24. Upon information and belief, Nacad and Perez are close friends of Delgado's.

25. Pursuant to the unauthorized Nacad Agreement, Nacad and Perez have subsequently demanded payment of participation fees.

26. On or about June 10, 1998, Delgado entered into a two-year Foreign Consultant Agreement with Carlos Santana ("Santana")(the "Santana Agreement"), appointing Santana as a Consultant of Grupo Rust. In exchange for his services under the Santana Agreement, Santana was to receive a participation fee of 1.5% of the total amounts of any contracts obtained by Grupo Rust through his services.

27. The Santana Agreement was executed by Delgado on behalf of Rust E&I.

28. Contrary to express, written instructions from Rust E&I, Delgado entered into the Santana Agreement without obtaining the specific written approval of Rust E&I management.

29. Contrary to express instructions from Rust E&I, Delgado inserted a clause in the Santana Agreement providing for compensation based on percentages of contracts.

30. Upon information and belief, Santana is a close friend of Delgado's.

31. Pursuant to the unauthorized Santana Agreement, Santana has subsequently demanded payment of participation fees.

32. On or about June 20, 1998, Delgado entered into a two-year Foreign Consultant Agreement with Jesus Aristimuno G. ("Aristimuno")(the "Aristimuno Agreement"), appointing Aristimuno as a Consultant of Grupo Rust. In exchange for his services under the Aristimuno Agreement, Aristimuno was to receive a participation fee of 2% of the total amounts of any contracts obtained by Grupo Rust through his services.

33. The Aristimuno Agreement was executed by Delgado on behalf of Rust E&I.

34. Contrary to express, written instructions from Rust E&I, Delgado entered into the Aristimuno Agreement without obtaining the specific written approval of Rust E&I management.

35. Contrary to express instructions from Rust E&I, Delgado inserted a clause in the Aristimuno Agreement providing for compensation based on percentages of contracts.

36. Upon information and belief, Aristimuno is a close friend of Delgado's.

37. Pursuant to the unauthorized Aristimuno Agreement, Aristimuno has subsequently demanded payment of $1,400,000.00 in participation fees.

38. On or about September 11, 1998, Defendant Earth Tech acquired Rust E&I, becoming a successor in interest to Rust E&I. At that time, Delgado became employed by Earth Tech charged with coordinating business development efforts in Venezuela on behalf of Earth Tech.

39. On or about May 18, 1999, Delgado entered into a three-year Master Services Subconsulting Agreement with Yanes & Asociados ("Yanes")(the "Yanes Agreement"), appointing Yanes as a Subconsultant of Earth Tech.

40. The Yanes Agreement was executed by Delgado on behalf of Earth Tech.

41. Contrary to express, written instructions, Delgado entered into the Yanes Agreement without obtaining the specific written approval of Earth Tech management.

42. Pursuant to the unauthorized Yanes Agreement, Yanes has subsequently demanded payment of $158,000.00 in fees.

43. During 1999, Earth Tech and Pequiven, S.A. engaged in negotiations to enter into a joint venture for the construction, expansion, financing, operation, maintenance and management of the Water Supply System to the General Jose Antonio Anzoategui Oil and Petrochemical Complex in Venezuela (the "Jose Water Project").

44. Earth Tech subsequently retained the services of a law firm to represent its interests in Venezuela, including on the Jose Water Project.

45. On or about June 2, 1999, because Earth Tech retained the services of another law firm to represent its interests in Venezuela, Delgado and Earth Tech agreed that there was no longer a need for Contreras to provide services to Earth Tech, including on the Jose Water Project.

46. On or about June 2, 1999, Earth Tech requested confirmation from Delgado that he had instructed Contreras not to undertake any additional representation of Earth Tech.

47. On or about June 4, 1999, Delgado represented to Earth Tech that he had not hired Contreras to provide services on the Jose Water Project.

48. Contrary to Delgado's assertions, on or about June 18, 1999, Contreras submitted an invoice to Earth Tech for $1,400,000.00 in participation fees for legal services provided on the Jose Water Project.

49. Throughout Delgado's employment with Earth Tech, the Company repeatedly requested Delgado provide management with an accounting of all business development efforts in Venezuela, including all commitments he made on behalf of Earth Tech. Delgado repeatedly failed to provide Earth Tech with such an accounting.

50. On July 7, 1999, Earth Tech terminated Delgado's employment for failure to disclose material business arrangements and for failing to abide by limitations on his authority.

## Count I
## Breach of Duty of Loyalty

51. Earth Tech realleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

52. At all times relevant hereto, Delgado served as an agent of Earth Tech for purposes of business development in Venezuela.

53. At all times relevant hereto, Plaintiff confided in Delgado to act in the best interests of Earth Tech and not act in a manner adverse to Earth Tech.

54. At all times relevant hereto, Delgado accepted the trust placed in him by Earth Tech.

55. At all times relevant hereto, Delgado owed a duty of loyalty to his employer, Earth Tech. Indeed, Delgado owed Earth Tech the duty to refrain from self-dealing, the overall duty not to take unfair advantage and to act in the best interests of Earth Tech, and the duty to disclose material facts to Earth Tech.

56. Delgado breached his duty of loyalty to Earth Tech by, *inter alia*,:

(a) representing Earth Tech in contractual negotiations with Delgado's family and friends;

(b) entering into an unauthorized Foreign Representation Agreement with Contreras containing terms adverse to the interests of Earth Tech;

(c) failing to notify Earth Tech of the existence of a contractual relationship with Contreras;

(d) entering into an unauthorized Foreign Consultant Agreement with Nacad and Perez containing terms adverse to the interests of Earth Tech;

(e) failing to notify Earth Tech of the existence of a contractual relationship with Nacad and Perez;

(f) entering into an unauthorized Foreign Consultant Agreement with Santana containing terms adverse to the interests of Earth Tech;

(g) failing to notify Earth Tech of the existence of a contractual relationship with Santana;

(h) entering into an unauthorized Foreign Consultant Agreement with Aristimuno containing terms adverse to the interests of Earth Tech;

(i) failing to notify Earth Tech of the existence of a contractual relationship with Aristimuno;

(j) entering into an unauthorized Master Services Subconsulting Agreement with Yanes containing terms adverse to the interests of Earth Tech;

(k) failing to notify Earth Tech of the existence of a contractual relationship with Yanes;

(l) misrepresenting the existence, nature and substance of Contreras' activities to Earth Tech; and

(m) failing to provide Earth Tech with an accounting of all business development efforts in Venezuela including all commitments Delgado made on behalf of Earth Tech.

57. Earth Tech has suffered damages and will continue to suffer damages as a result of Delgado's breach of his duty of loyalty. Earth Tech's damages include, but are not limited to: (i) sums Earth Tech has had to pay under the agreements unlawfully entered into by Delgado purportedly on behalf of Earth Tech; (ii) attorneys' fees and costs expended in connection with litigation which ensued related to those unlawful agreements; (iii) consequential damages resulting from Delgado's unlawful activities; and (iv) attorneys' fees and costs associated with the instant litigation.

58. Earth Tech demands a trial by jury on all triable issues.

WHEREFORE, Plaintiff EARTH TECH, INC. demands judgment against Defendant MIGUEL DELGADO BELLO for compensatory and punitive damages, attorneys' fees, costs, interest, and such other relief as the Court deems necessary, just, and proper.

Dated this 15th day of November, 2000.

Respectfully submitted,

JACKSON LEWIS SCHNITZLER & KRUPMAN
390 North Orange Avenue, Suite 1285
Post Office Box 3389
Orlando, Florida 32802-3389
Telephone: (407) 246-8440
Facsimile: (407) 246-8441

By: _____
Carlos J. Burruezo, Esq.
Florida Bar No. 843458

Juan C. Lopez-Campillo, Esq.
Florida Bar No. 0139785

Attorneys and Trial Counsel for Plaintiff EARTH TECH, INC.

I:\Clients\E\Earth Tech\Delgado\Pleadings\Complaint.wpd