NIGHT BOX FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2001 OCT 29 PM 4: 47

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES,
AG, a Swiss Corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada Corporation,

            Plaintiffs,

v.

MIGUEL DELGADO BELLO,          Case No.: 6:00-CV-1536-ORL-31B

            Defendant.

---

MIGUEL DELGADO BELLO,

            Counterplaintiff,

v.

EARTH TECH, INC.,
a California Corporation,

            Counterdefendant.

---

**PLAINTIFFS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTIONS FOR
A PRELIMINARY INJUNCTION AND SANCTIONS**

Plaintiffs Earth Tech, Inc. ("Earth Tech"), Tyco International Services, AG and Tyco International (US) Inc. (collectively, "Tyco"), respectfully submit this reply memorandum of law in further support of their motions for a preliminary injunction and for sanctions under the Court's inherent powers and Fed. R. Civ. P. 37.

**I.
DELGADO SHOULD BE SANCTIONED
FOR COMMITTING A FRAUD ON THE COURT**

Delgado's response has simplified the task of deciding whether he should be sanctioned by the Court: he has now perjured himself by denying any involvement in the extortionate e-

mails. Additional evidence submitted with this memorandum proves conclusively that Delgado was behind the fake faxes and e-mails.

Delgado has also substantially narrowed the issues in dispute:

- He does not dispute that the faxes and e-mails sent to Tyco and Earth Tech are a fraud -- i.e., that PDVSA did not send them.

- He does not dispute that the faxes and e-mails are defamatory and were designed to coerce plaintiffs into dropping their claims and settling with him.

- He does not dispute that he was the real source of the fraudulent faxes.

- He does not dispute that the Court has the inherent power to sanction and punish the sender of the phony faxes and e-mails.

The only issue left to decide, then, is whether Delgado is the source of the e-mails or, as Delgado incredibly asserts, Tyco and Earth Tech fabricated the e-mails and sent them to themselves. That decision is easy to make. It is frivolous and absurd to suggest that plaintiffs devised this elaborate scam of counterfeit e-mails just to resolve the petty claims of a disgruntled former employee. That did not happen. (Reply Affidavit of Charles Alpert ("Alpert Reply Aff") ¶ 5.) What did happen, as the evidence previously presented demonstrates and the new evidence confirms, is that Delgado sent both the faxes (which he does not deny) and the e-mails.[1]

### A. The Electronic Evidence Proves that Delgado Sent the E-mails

The additional evidence now submitted to the Court is conclusive. Delgado's electronic fingerprints are all over the e-mails. Here is the proof:

Two of the fraudulent e-mails sent from "pdvsacitgo@aol.com" were received by Tyco on April 2, 2001 and April 3, 2001. (Affidavit of Douglas Haven ("Haven Aff.") Exs. A and D.)

---

[1] Hoping that the Court will ignore his misconduct and declare "a pox upon both your houses," Delgado accuses attorney Michael Diaz of extortion, and makes other absurd and insupportable accusations against Earth Tech and Tyco. We will not dignify those wild accusations with a response, except to deny them categorically. Mr. Diaz has done the same in his accompanying Reply Affidavit.

These were among the first of the extortionate e-mails to be sent. Attached to each of these e-mails (in electronic form) was a Venezuelan newspaper article. The articles were about Delgado's lawsuits against plaintiffs and referred repeatedly to Delgado, who was the acknowledged source of both stories. Based on these stories given to the press by Delgado, the "pdvsa" e-mails pressed Tyco to "negotiate a settlement" with Delgado or risk a "criminal investigation." Id.

A simple examination of the newspaper articles attached to these e-mails proves that Miguel Delgado created the attachments and sent the e-mails. As explained in the Affidavit of Douglas Haven, the newspaper articles came from the Venezuelan newspaper Tal Cual Lunes.[2] The articles were downloaded from the Internet (at www.talcualdigital.com) and then saved on the user's computer in a document created using the Microsoft word processing software called "Word." The electronic history of these Word documents -- including the identity of the person, or "author," who created them -- is stored within the documents themselves. (Haven Aff. ¶¶ 3-10.)

The author listed in the Properties file of the documents attached to the April 2, 2001 and April 3, 2001 e-mails is identified as "Miguel." (Haven Aff. ¶¶ 6 & 9, Exs. B & E.) He is also repeatedly identified as the author in the background codes, or "metadata," imbedded in each document. These codes reveal each of the steps involved in the creation of the documents. (Haven Aff. ¶ 7.) Thus, the document attached to the April 2, 2001 e-mail was created using a Spanish-language version of Word and then stored on the C drive of the user's computer entitled "Miguel8C;" the document was edited and saved by "Miguel;" and each time the document was accessed, the user was identified as "Miguel." (Haven Aff. ¶ 7, Ex. C.) Likewise, the document attached to the April 3, 2001 e-mail was authored by "Miguel;" was created, edited, and saved by

---

[2]  Mr. Haven is in charge of computer support and security for Tyco. In particular, Mr. Haven has been responsible for collecting and electronically storing all of the e-mails at issue, including the e-mails sent to Tyco on April 2, 2001 and April 3, 2001. (Haven Aff. ¶¶ 1-8.)

"Miguel;" and was stored on the C drive of the user's computer entitled "Miguel7C." (Haven Aff. ¶¶ 9-10, Exs. E & F.)

The "Miguel" who created the e-mail attachments is the same Miguel who is the subject of the attached newspaper stories and the same Miguel who sought to benefit from the extortionate e-mails in the lawsuits brought by Miguel: namely, Miguel Delgado. By testifying in his affidavit that he "never sent any e-mail messages to Tyco officials" and that he has "not used e-mail to communicate with Earth Tech officials" (Delgado Aff. ¶ 5), Delgado has submitted false testimony, and has thereby provided yet another basis for the Court to sanction him.

### B. Delgado's Charge That Tyco and Earth Tech Sent the E-Mails Is Frivolous and Sanctionable

Delgado has only aggravated his misconduct, and destroyed his credibility, by charging that the phony e-mails were actually created by Earth Tech or Tyco to frame him.[3] That allegation is false. (Alpert Reply Aff. ¶ 5.) It is also frivolous because it was made to deceive the Court and harass plaintiffs without any reasonable inquiry and without an iota of evidentiary support. See Fed. R. Civ. P. 11(b).

Delgado's accusation is also preposterous on its face. Tyco is a high profile and publicly traded corporation with duties to its officers, employees, and shareholders. It is beyond belief that Tyco would pose as the Venezuelan government, commit wire fraud, and transmit counterfeit e-mails -- to itself -- simply to resolve an employment dispute at one of its affiliates. Delgado's conspiracy theory is all the more incredible given that most of the e-mails were also sent to a third party, Albert Meyer of Tice & Associates (ameyer@tice.com). (See Alpert Aff.

---

[3] Delgado alleges: "[I]t is now very believable that Earth Tech and Tyco, either through Morales or otherwise, created all of these e-mails . . . ;" "it is still most likely that Earth Tech or Tyco . . . simply manufactured these e-mails to support the argument made in their Motion;" and "it is more likely that either Earth Tech or Tyco or its representatives created the e-mails in an effort to develop the very argument presented by Earth Tech . . . ." (Memorandum In Opposition at 7-8.)

4

Ex. B.) Tice is a bear fund that is openly hostile to Tyco and has tried to drive down Tyco's market value by encouraging investors (against the advice of other analysts), to short-sell Tyco stock. (Alpert Reply Aff. ¶ 5.) Why would Tyco fabricate outrageous and damaging lies about itself (apparently with the imprimatur of the Venezuelan government) and then send them, over and over again, to one of its adversaries in the securities market? It would not. It did not.

Delgado's baseless allegation that Tyco or Earth Tech created the fraudulent e-mails and sent them to themselves is itself sanctionable.

C.     **Delgado's Other Falsehoods**

In responding to the previously submitted evidence linking him to the extortionate e-mails, Delgado makes other false and incredible statements:

First, in an attempt to deflect the improper conduct of his attorneys in Venezuela, Delgado states that Glenn Morales is not his lawyer, but is actually a double agent for Earth Tech and Tyco. (Delgado Aff. ¶¶ 3, 11.) That is as false as it is bizarre. Neither Tyco or Each Tech had ever heard of Mr. Morales, much less hired him, before Mr. Morales contacted them on behalf of Delgado on July 27, 2001. (See Alpert Aff. ¶ 12, Ex. C.) Mr. Morales wrote repeatedly to Tyco's executives and outside counsel stating that he represented Delgado and referring to Delgado as "my client." (Alpert Reply Aff. ¶¶ 6-7, Ex. B.)

Second, Delgado admits that he registered the domain name "tycovenezuela.com," but then denies that he sent the e-mail to Tyco announcing this web site. (Delgado Aff. ¶ 6-7.) That is just not believable. As he confesses, Delgado registered the "tycovenezuela" domain name on August 21, 2001. (See Alpert Aff. Ex. F.) Just one week later, on August 28, 2001, Tyco received an e-mail from "tycovenezuela" (the name Delgado stole) inviting them to "come and visit" the new web page at "tycovenezuela.com" (Delgado's admitted web page). (See Alpert Aff. Ex. E.) There is no credible explanation for this quick sequence of events, other than Delgado being the source of the e-mail.

5

Third, to try to explain why e-mails were sent from his personal e-mail address with the "pdvsa" screen name, Delgado says that he allowed PDVSA officials to use his e-mail account while he was working for Earth Tech. (Delgado Aff. ¶ 5.) That excuse does not withstand scrutiny. To begin with, the "pdvsa" e-mails sent via Delgado's personal account were sent in 2001 -- almost two years after he was fired by Earth Tech. (See Atkins Aff. Ex. C, at 12346-55.) Furthermore, most of the e-mails using the "pdvsa" screen name were sent immediately before or after e-mails sent by "migueld285" -- i.e., by Miguel Delgado. For example, on February 1, 2001, three e-mails were sent in rapid succession within 7 minutes: an e-mail from "migueld285" at 6:10 AM, followed immediately by an e-mail from "pdvsa" at 6:13 AM, followed by an e-mail from "migueld285" at 6:17 AM. (Id. at 12354.) This shows that PDVSA officials did not send the "pdvsa" e-mails from Delgado's personal account -- Delgado did.

Fourth, to evade the evidence that he was the one who created the "pdvsacitgo@aol.com" account under the name of his former employer (William Les Hall at McKim & Creed), and that he made unauthorized charges on Mr. Hall's American Express corporate accounts, Delgado states that (1) he was not terminated by McKim & Creed, (2) he served as a "consultant" for McKim & Creed after his employment ended, and (3) he did not charge anything to Mr. Hall's account after he left McKim & Creed. Those statements are all false. (Hall Reply Affidavit ¶¶ 2-9.) As Mr. Hall explains in his Reply Affidavit, Delgado was terminated in October 2000. Delgado proposed to remain as a consultant, but McKim & Creed rejected the proposal. American Express records demonstrate that Delgado continued to use Mr. Hall's corporate cards through April 2001 -- more than six months after he was terminated. He made these charges without authorization or permission. (Hall Aff., October 4, 2001, Ex. A; Hall Reply Aff. ¶¶ 4-9, Ex. A.).[4]

---

[4] Delgado also makes a series of false statements about Earth Tech's operations. He asserts that he was transferred to Venezuela by Earth Tech. That is false. (Alpert Reply Aff. ¶ 11.) He asserts that Earth Tech never acquired Grupo Rust International de Venezuela C.A. That is false. (Alpert Reply Aff. ¶ 12.)

### D. Delgado Should be Sanctioned for his Continuing Efforts to Deceive the Plaintiffs and the Court

Despite the compelling evidence of his misconduct, Delgado has continued his pattern of deceit. Since filing these motions, Tyco has received two more threats by e-mail from "pdvsa." (Alpert Reply. Aff. ¶ 3, Ex. A.) An e-mail from "pdvsa@unitedstates.com" on October 15, 2001 accused Tyco of being "foolish" to litigate against Delgado. An e-mail from "pdvsa@unitedstates.com" on October 16, 2001 threatened Tyco that "sooner or later the labor benefits must be paid" to Delgado.

Delgado continues to try to extort the plaintiffs, and now he has tried to mislead the Court. Like his prior misconduct, this is precisely the type of "bad faith" or "vexatious, wanton[ ], or . . . oppressive" conduct that warrants sanctions under the Court's inherent powers. See Chambers v. NASCO, 501 U.S. 32, 42 (1991); Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975); Richardson v. Cabarrus County Bd. Of Educ., 151 F.3d 1030, 1998 WL 371999 (4th Cir. 1998) (dismissal warranted given plaintiff's attempt to intimidate witnesses); Vargas v. Peltz, 901 F. Supp. 1572, 1579-82 (S.D. Fla. 1995) (dismissal warranted given plaintiff's fraud on court, perjury, and obstruction).[5] Given the frivolous nature of his pleading, sanctions against Delgado are also warranted under Rule 11.

## II.
## THE COURT SHOULD GRANT TYCO'S MOTION FOR A PRELIMINARY INJUNCTION UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT OF 1999

Delgado's own response supports Tyco's motion for injunctive relief: he admits that he registered the "tycovenezuela.com" domain name without Tyco's permission, and he does not

---

[5] Delgado also has not disputed that he has failed to appear for his deposition, despite Earth Tech's numerous requests. His only excuse is that he supposedly was ill. (Delgado Aff. ¶ 22.) However, Delgado has presented no proof of his alleged medical condition. Nor has he said when he will appear to be examined under oath.

7

dispute that Tyco has satisfied the other elements of the Anticybersquatting Consumer Protection Act ("ACPA").[6]

Delgado tries to excuse his theft of Tyco's name by claiming to be some sort of self-appointed cybercop. He claims that he registered the domain name "to prevent Tyco and Earth Tech from using the domain name and creating further fraud on PDVSA and the Venezuelan government." (Delgado Aff. ¶ 6.) That is no defense. Preventing the rightful owner from using its own name, by registering a domain name without any right to do so, is a perfect example of "cybersquatting." See, e.g., Sporty's Farm, 202 F.3d at 495-496; PL 106-113, 113 Stat. 1501 (enacted November 29, 1999). Here, Delgado has registered Tyco's mark without any right -- and he admits it.

Delgado cannot avoid liability by professing to be acting in the public good. First, the claim is disingenuous. Delgado stole Tyco's name as part of a campaign to extort money from Tyco -- the very type of harm the ACPA was adopted to prevent. Id. There can be little doubt that Delgado seeks to ransom the domain name as part of the settlement he has been trying to coerce from Tyco. Second, even if Delgado were sincere, he cannot seek refuge in the ACPA's safe harbor provision, as he tries to do. Under this provision, a party must show that he "had reasonable grounds to believe that the use of the domain name was a fair use or otherwise unlawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (emphasis added). This defense is only available to a party who reasonably believes that he can use the name, because, for example, he has some legal interest in it or because it is a common name. See, e.g., Cello Holdings, L.L.C. v. Lawrence-Dahl Companies, 89 F. Supp.2d 464, 474 (S.D.N.Y. 2000); 4 J. McCarthy, McCarthy On Trademarks And Unfair Competition § 25:78 (4th ed. 2001).

---

[6] Section 1125(d)(1)(A) provides that an individual is liable if with a bad faith intent to profit he registers a domain name that is either identical or confusingly similar to an existing distinctive mark or identical, confusingly similar, or dilutive of an existing famous mark. See, e.g., Sporty's Farm, L.L.C. v. Sportsman's Market Inc., 202 F.3d 489, 496-499 (2d Cir. 2000).

In short, Delgado has no right to use Tyco's name. And based upon the above, and because his excuse for registering the name is a sham, he is precluded from using the ACPA's safe harbor provision. See Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 270 (4th Cir. 2001) (defendant "who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from [the ACPA's] safe harbor provision."). Delgado was solely motivated by bad faith. Therefore he may not seek refuge in the ACPA's safe harbor.[7] See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 369 (4th Cir. 2001).

Delgado's promise not to use the tycovenezuela.com website is likewise no defense. The ACPA prohibits the unlawful registration of domain names. 15 U.S.C. § 1125(d)(1)(A)(ii) (making it unlawful to "register," traffic in, or use the name). Delgado has already done more than enough to warrant immediate injunctive relief.[8]

---

[7] Moreover, the safe harbor provision should be narrowly construed. See Harrod's Limited v. Sixty Internet Domain Names, 157 F. Supp.2d 658, 679 ("We do not think Congress intended the safe harbor to protect defendants operating, at least in part, with unlawful intent") (quoting Virtual Works, 238 F.3d at 270); 4 J. McCarthy, McCarthy On Trademarks And Unfair Competition § 25:78 (4th ed. 2001) (stating that test of reasonableness should be objective, not subjective, and that "a court should . . . make use of th[e] 'reasonable belief' defense very sparingly and only in the most unusual cases. . . . Otherwise every cybersquatter would solemnly aver that it was entitled to this defense because it believed that its conduct was lawful.").

[8] Delgado also asserts that Tyco cannot show irreparable harm because he purportedly does not "intend to ever use the Tyco name or use or develop this website." (Delgado Mem. at 10-11.) Delgado misses the point: he violated the statute when he registered the domain name. Because Tyco has demonstrated a likelihood of success on the merits, the Court can presume that Tyco will suffer irreparable harm in the absence of an injunction. See, e.g., Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 174 (2d Cir. 2000) ("proof of a likelihood of confusion . . . create[s] a presumption of irreparable harm, and thus a plaintiff would not need to prove such harm independently"); Northern Light Technology, Inc. v. Northern Lights Club, 97 F. Supp.2d 96, 121 (D. Mass. 2000) ("the existence of irreparable harm is even more insistent given the likelihood of a violation of the Anticybersquatting Act"); Advance Magazine Publishers Inc. v. Vogue International, 123 F. Supp.2d 790, 801 (D.N.J. 2000) (presuming irreparable harm in trademark case).

Green Products Co. v. Independence Corn By-Products Co., 992 F. Supp. 1070, 1079-80 (N.D. Iowa 1997), is particularly instructive on this point. Like Delgado, the defendant argued

## CONCLUSION

For the foregoing reasons, plaintiffs Earth Tech and Tyco respectfully submit that their motions for sanctions and a preliminary injunction should be granted.

Dated: Orlando, Florida
October 29, 2001

                                                GREENBERG TRAURIG, P.A.
                                                111 N. Orange Avenue, Suite 2050
                                                Orlando, Florida 32801
                                                Telephone: 407-418-2360
                                                Facsimile: 407-841-1295

                                                By: _____
                                                     Tucker H. Byrd, Esq.
                                                     Florida Bar No. 381632

Of Counsel:
Robert A. Atkins
Mathew S. Rosengart
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-373-2225

JACKSON, LEWIS, SCHNITZLER & KRUPMAN
390 North Orange Avenue
Orlando, Florida 32802
Telephone: 407-246-8440
Facsimile: 407-246-8441
Attorneys and Trial Counsel for Plaintiffs Earth Tech, Inc.,
Tyco International Services, AG, and Tyco International (US) Inc.

---

that there was no showing of irreparable harm because, although it had registered the domain name, it later agreed not to use it. The court nevertheless granted the injunction. First, it presumed irreparable harm based on the plaintiff's showing of a likelihood of success. Id. Second, it held that the defendant's consent to put the domain name "on hold" was insufficient to overcome the motion because the registration of the name itself could have resulted in confusion. Id. at 1080-1081. See also I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) (in trademark cases "irreparable harm may be shown even in the absence of actual injury to the plaintiff's business based on plaintiff's demonstration of a likelihood of success on the merits of its claim.")

10

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

_____ Exceeds scanner's page limit
_____ Physical exhibit prevents scanning
✓ Other: EXHIBITS - TOO MANY

# **REFER TO COURT FILE**

Revised 09/15/99