NIGHT BOX FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2001 DEC -7 PM 4: 30

CLERK. U S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

EARTH TECH, INC.,
A California Corporation,

       Plaintiff,

vs.                           Case No.: 6:00-cv-1536-ORL-31 JGG

MIGUEL DELGADO BELLO,

       Defendant.


MIGUEL DELGADO BELLO,

       Counterplaintiff,

vs.

EARTH TECH, INC.,
A California Corporation,

       Counterdefendant.

_____/

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS AND MOTION FOR SANCTIONS

    MIGUEL DELGADO BELLO, Defendant and Counterplaintiff, (hereinafter "Delgado") by and through his undersigned attorney, files this Memorandum in Support of his Motion to Suppress evidence and for Sanctions against Plaintiffs, Earth Tech, Inc., both Tyco Plaintiffs, and their attorneys for abuse of the judicial process, intentional breach of attorney-client privilege of Mr. Delgado and violations of the Electronic Communications Privacy Act.

Page 1

## A. Background Facts

On Monday, December 3, 2001 at 3:26 pm in the afternoon, Plaintiffs' counsel faxed to this firm a copy of Plaintiffs' Emergency Motion and Memorandum in Support of a Protective Order and Restraining Order to Preserve Evidence (Exhibit A, attached hereto).

That same day, at 4:52 pm, Plaintiffs' counsel faxed to this firm a copy of the cover letter to this Court providing the Judge a courtesy copy of the Emergency Motion (Exhibit B, attached hereto).

That same day, at 4:58 pm, Plaintiffs' counsel faxed to this firm a copy of Notice of Service of Subpoena dated December 3, 2001, with an attached subpoena issued November 29, 2001 (Exhibit C, attached hereto). Plaintiffs did not provide the undersigned any prior notice of the Service of Subpoena on Phillip C. Gordon, the affiant of the affidavit attached to their Memorandum in Support of their Emergency Motion.

On Tuesday morning, December 4, 2001, after Plaintiffs obtained Delgado's e-mail password, they accessed the account and copied a confidential e-mail Delgado had sent to his attorney and used it during the deposition of a key witness, Charles Alpert (Delgado affidavit, Exhibit D, attached hereto).

## B. Argument

Rule 45 (b) of the *Federal Rules of Civil Procedure* provides:

"(1) A subpoena may be served by any person who is not a party and is not less than 18 years of age. Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . . . Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed in Rule 5(b).
(2) Subject to the provisions of clause (ii) of the subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the . . . production, or inspection specified in the subpoena . . . ."

The subpoena attached to the Notice of Service of Subpoena dated December 3, 2001 was signed by Plaintiffs' New York counsel on November 29, 2001. It was faxed from Plaintiffs' counsel's New York office (212 area code) on November 30, 2001 to Philip C. Gordon, Records Custodian of United States.com (see top of the subpoena, Exhibit C, attached hereto). Gordon

Page 2

signed an affidavit, that Plaintiffs' purport in their Memorandum was completed in response to the subpoena, on November 29, 2001, the very same day the subpoena is dated and the day before the subpoena was faxed to him.  Plaintiffs' transparent attempt at secrecy has exposed substantial and numerous serious breaches of due process, invasion of privacy, and blatant breach of attorney-client privilege.

1. Failure to give proper notice of subpoena.

First, Plaintiffs' failed to give Delgado notice of the service of the subpoena.  Not only did they not give Delgado notice of the subpoena on the day that the subpoena was created or on the day it was apparently faxed to Gordon, they waited until the end of the day 4 days after the subpoena was executed to fax a copy to the undersigned after they filed the Emergency Motion and Memorandum, with the affidavit attached, with the clerk's office, and after they provided a courtesy copy to the Court!  Delgado had refused to provide Plaintiffs the password to his "myplace.com" e-mail address because the inquiry violated his privacy rights and invaded attorney-client privilege.  Because Plaintiffs knew that Delgado would have a basis for a protective order against disclosure of such information had they provided notice of the issuance of the subpoena, the obvious purpose of waiting to fax a copy of the subpoena to Delgado until after they obtained the affidavit and after they actually provided copies to the Clerk and the Court was to prevent Delgado from raising such issues regarding the appropriateness of the subpoena.

The issuance of an *ex parte* subpoena destroys the normal processes of discovery.  Mutual knowledge of all the relevant facts by both parties is essential to proper litigation.  To this end, an *ex parte* discovery subpoena does not assist the "just, speedy and inexpensive" resolution of the litigation as envisioned by Rule 1 of the *Federal Rules of Civil Procedure.  Richardson v. State of Florida,* 137 F.R.D. 401, 403 (M.D. Fla. 1991).

There is a potential for abuse of a subpoena for production which is issued to a third party without notice to the opposing parties.  One-sided discovery raises concerns about fairness to opposing parties and the person who is subject to the subpoena, as well as about the efficient administration of the court system.  When a party issues a discovery subpoena to a non-party to produce documents, without notifying the other parties to the litigation of this fact, it creates a situation which is unfair to the person who is subject to the subpoena, as well as the opposing

counsel. *Richardson v. State of Florida,* 137 F.R.D. 401, 403-404 (M.D. Fla. 1991).

In fact, the term "prior notice" has been interpreted to mean <u>notice</u> prior to service of the subpoena on the nonparty as well as prior to document production. *McCurdy v. Wedgewood Capital Management Co., Inc.,* 1998 WL 964185, p. 6 (E.D. Pa. 1998); *Biocore Medical Technologies, Inc. v. Khosrowshahi,* 1998 WL 724003, p.5 (D.Kan. 1998). In our case, Plaintiffs' didn't provide notice until after service of the subpoena and after the document production in order to avoid the subpoena being quashed.

The District Court in *Spencer v. Steinman,* 179 F.R.D. 484, 489 (E.D.Pa. 1998), stated regarding a similar failure to provide notice of the issuance of a subpoena:

> "The risks attached to misuse of the subpoena power are great. Under this delegation of public power, an attorney is licenced to access, through a nonparty with no interest to object, the most personal and sensitive information about a party. By failing to receive prior notice of the information sought from the nonparty, a party is deprived of its greatest safeguard under the Rule, i.e., the ability to object to the release of the information prior to its disclosure. Therefore, the loss of the opportunity to object prior to the release of the information caused injury to Defendant. Moreover, misuse of the subpoena power is not limited to the harm it inflicts upon the parties, it also compromises the integrity of the court's processes. When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to Defendant of the subpoenas cause[s] injury to the public."

2. Failure to properly serve the subpoena.

Plaintiffs' didn't even properly serve the subpoena on Gordon. Plaintiffs' apparently faxed the subpoena to Gordon on November 30, 2001, after Gordon voluntarily provided Plaintiffs' the affidavit (dated November 29, 2001), thereby severely breaching Delgado's privacy and confidentiality rights. Moreover, the Federal Rule requires that the subpoena be served by someone other than a party. Sending the subpoena by fax from Plaintiffs' counsel to Gordon does not constitute service within the meaning of the Rule. *Firefighters Institute For Racial Equality v. City of St. Louis,* 220 F. 3d 898, 903 (8th Cir. 2000). For Plaintiffs' attorneys to fax a copy of the subpoena to Gordon is not service by an independent third party and would have been the basis for the Court to quash the subpoena. *Firefighters Institute For Racial Equality v. City of St. Louis,* 220 F. 3d 898, 903 (8th Cir. 2000).

We have also learned that the address for Gordon on the subpoena is a mail box number

at a Mail Boxes etc. location where actual service is impossible.  This was used to ensure that Delgado could not subpoena Gordon for deposition at that address.

The fact that the subpoena was not faxed to Gordon until the day after it was signed, namely on November 30, 2001, and is addressed to a mail box number, not a physical address, means that both Plaintiffs and Gordon collaborated and conspired to severely breach Delgado's privacy rights and intentionally invade his attorney-client privilege without an enforceable subpoena.  From the actions of Plaintiffs' counsel during the deposition of Charles Alpert on December 4, 2001, it would clearly appear that counsel intentionally breached Delgado's attorney-client privilege by using his password and gaining access to his e-mail account (see Delgado affidavit, attached as Exhibit D).

3.  The subpoena was issued by the wrong Court.

Even had Plaintiffs' properly served the subpoena to Gordon, the subpoena was unenforceable and Delgado would have clearly objected to the enforceability of the subpoena had he been given timely and proper notice of the issuance of the subpoena.  Moreover, the subpoena calls for Gordon to provide the requested documentation at Plaintiffs' attorneys' office in Santa Monica, California.  Clearly this is more than 100 miles from the Middle District of Florida District Court, the Court that issued the subpoena from the clear language of the subpoena itself, and, therefore, the subpoena was unenforceable under Rule 45 (b) .  *Beach v. City of Olathe, Kansas,* 2001 WL 1098032, *2, (D. Kansas, Sept. 2001).  For Gordon to breach Delgado's privacy and provide the requested documentation pursuant to an unenforceable subpoena was improper and unlawful as well.  However, that fact in conjunction with the fact that he provided the requested information before he ever received the subpoena, demonstrates that Plaintiffs and Gordon engaged in collusion and a conspiracy to violate Delgado's privacy rights and confidentiality, not to mention their unlawful and santionable access and use of documents protected by attorney-client privilege.

4.  Violations of Electronic Communications Privacy Act.

Delgado asserts that given the fact that Plaintiffs obtained the confidential information regarding Delgado's "myplace.com" e-mail account from Gordon before (or in absence of) service of an ineffective and void subpoena, both Plaintiffs and Gordon have seriously and

Page 5

flagrantly violated the Federal Electronic Communications Privacy Act. 18 USCA Section 2511.

Title I of the Electronic Communications Privacy Act subjects to suit any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication." 18 USCA Section 2511 (1)(a). Statements made in the Senate in consideration of the amendments made to the ECPA in 1986 were:

> "Tremendous advances in telecommunications and computer technologies have carried with them comparable technological advances in surveillance devices and techniques. Electronic hardware making it possible for overzealous . . . industrial spies . . .to intercept the personal or proprietary communications of others are readily available in the American market today. . . ." *S.Rep. No. 541, 99th Cong. 2d Sess., 5 (1986) reprinted in 1986 U.S.C.C.A.N. 3557, 3559.*

We know for a fact that the ADT Security Services Manager of PC/Lan Development and Support, Douglas Haven, has been since April, 2001 intercepting any e-mails that he determined came from source addresses that had anything to do with Delgado or the PDVSA (see Exhibit E, Haven deposition, TR 17-18, 21-22). It is only stands to reason that Haven continued to intercept those e-mails from Delgado's new e-mail account, "myplace.com", now that Plaintiffs had the password. Although Title I has been interpreted that "intercepted" means that Title I is violated only when the electronic communications are intercepted while in transit, not when they are already in storage. *Wesley College v. Pitts,* 974 F. Supp. 375, 385 (D.Del. 1997). However, based on Haven's testimony, that is exactly the procedure he set up in April, 2001, and likely applied to Delgado's new e-mail account as well to obtain the confidential attorney-client privileged documents.

Title I also makes it unlawful for any person to use or disclose to any other person the contents of any electronic communication while knowing or having reason to know the information was obtained through the illegal interception of an electronic communication. 18 USCA Section 2511 (1)(c) & (d). Clearly, Haven had to have forwarded Delgado's e-mail outline of the questions for Alpert to Plaintiffs' attorneys for them to use them in preparation of Alpert (Delgado affidavit, Exhibit D).

Title II of the ECPA generally proscribes unauthorized access to stored wire or electronic

communications.  Title II provides that except as provided in subsection (c), "whoever --

> (1) intentionally accesses without authorization a facility through which an electronic
> communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility; and thereby obtains,
> alters or prevents authorized access to a wire or electronic communication which it is in
> electronic storage in such system shall be punished."

After Plaintiffs improperly obtain the password to Delgado's e-mail account, the very

next morning the entire storage on that e-mail address was discovered to be wiped clean and

gone (Delgado affidavit, Exhibit D).  Then, that same day, Plaintiffs counsel provide clear

evidence by their actions that they have read Delgado's outline of questions for Alpert which he

had earlier e-mailed to his attorney (Delgado affidavit, Exhibit D).  That presents compelling

evidence that Plaintiffs violated Title II by using the information obtained from Delgado's e-mail

account after they obtained the password.

Section 935 of the ECPA, entitled "Misuse of computer system information" provides:

> "A person is guilty of the computer crime of misuse of computer system information
> when:
> (1) As a result of his accessing or causing to be accessed a computer system, he
> intentionally makes or causes to be made an unauthorized display, use, disclosure, or
> copy, in any form, of data residing in, communicated by or produced by a computer
> system;
> (4) That person uses or discloses any data which that person knows or believes was
> obtained in violation of subdivision (1)(2) of this section."

Plaintiffs knew full well when they obtained the confidential password for Delgado's e-

mail account even before they served a faulty and void subpoena that they were obtaining this

information unlawfully.  Then when they used that information to access his account, erased all

of the e-mails in that account, and used the confidential document protected by attorney-client

privilege to prepare a key witness for deposition, Plaintiffs and their counsel engaged in criminal

activity within the meaning of the Electronic Communications Privacy Act.  Such conduct is

clearly sanctionable.

5. Remedy

Courts generally respond to Rule 45 (b)(1) violations by quashing the subpoenas when

opposing counsel demonstrate the inappropriateness of the information sought.  In this case, such

Page 7

remedies are inadequate because the information sought by the Gordon subpoena had already been obtained by the Plaintiffs, and even supplied to the Court prior to providing Delgado the requisite notice and before even receiving the subpoena. *McCurdy v. Wedgewood Capital Management Co., Inc.,* 1998 WL 964185, p. 6 (E.D. Pa. 1998); *Biocore Medical Technologies, Inc. v. Khosrowshahi,* 1998 WL 724003, p.5 (D.Kan. 1998).

Instead, Delgado petitions the Court to order the following:

1.    Suppress the affidavit of Gordon and place it in a sealed envelop within the Court file;

2.    Order Plaintiffs to return all copies of the affidavit and all documentation of any kind received from Gordon regarding Delgado's e-mail accounts back to Gordon;

3.    Order Plaintiffs and their counsel not to disclose Delgado's confidential e-mail information to any third party nor use it for any reason;

4.    Sanction Plaintiffs and their counsel for intentional and unwarranted breach of Delgado's privacy rights and confidential information regarding his e-mail account, and for their intentional, knowing, improper and unethical use of confidential, attorney-client information obtained as a result of use of Delgado's password obtaining by improper means;

5.    Dismiss Plaintiff's Complaint against Delgado and their defenses against Delgado's Counterclaim for their criminal and unethical behavior;

6.    Order Plaintiffs to reimburse Delgado's reasonable attorneys fees and costs associated with asserting and arguing this Motion.

Delgado has demonstrated severe prejudice as a result of the unwarranted and devious breach of his privacy rights and confidential e-mail information, and Plaintiffs improper acquisition and use of attorney-client privileged information. Such severe prejudice suffered by Delgado warrants the suppression of any and all information obtained by Plaintiffs and their counsel from Gordon. *Richardson v. State of Florida,* 137 F.R.D. 401, 405 (M.D. Fla. 1991); *McCurdy v. Wedgewood Capital Management Co.,* 1998 WL 964185, *8 (E.D. Pa. 1998).

Plaintiffs violations of the Electronic Communications Privacy Act warrant the dismissal

of their Complaint against Delgado and dismissal of their defenses to his Counterclaim.

Plaintiffs have now for some time been attempting to obtain access to Delgado's e-mail account under the guise of proving that he has been attempting to extort a settlement from them. Delgado has claimed that he had nothing to do with these alleged e-mails and that these e-mails have been created by or on behalf of Plaintiffs in an effort to discredit Delgado and dismiss his substantive claim. Plaintiffs have already demonstrated a willingness to engage in attempted bribery of one of Delgado's key witnesses, threats of bodily harm to Delgado, and witness tampering (affidavits previously filed by Delgado with the Court). Now Plaintiffs have been caught red-handed breaching Delgado's confidential e-mail account in a conspiracy with the owner of the domain name, using an unenforceable and void subpoena as an attempted cover for their previous breach. They even gained access to Delgado's e-mail account and passcode, accessed it and deleted all of the information after removing highly sensitive documents which they clearly knew were protected by attorney-client privilege, and then used them to prepare a key witness in this litigation (see Delgado affidavit, Exhibit D). This is far more than just the abuse of the subpoena; it is abuse of the judicial system.

Delgado asserts that in light of the severe prejudice suffered by him as a result of Plaintiffs unwarranted, clandestined and blatantly improper seizing of his confidential and private e-mail passcode, without giving him an opportunity to oppose the seizure, and then the acquisition and use of attorney-client privileged information demonstrates the sort of prejudice to warrant the most severe sanctions possible. Delgado petitions the Court for suppression of all such evidence obtained improperly, including not only Gordon's affidavit, but all information obtained from Gordon, and dismissal of all of Plaintiffs' claims and defenses.

Respectfully submitted,

Robert W. Rasch
Florida Bar No. 0890560
ROBERT W. RASCH, P.A.
201 Live Oak Lane
Altamonte Springs, Florida 32714

Page 9

(407) 865-7473
Fax (407) 865-5979

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of this document has been served by facsimile and U.S. mail this 7th day of December, 2001 to Tucker H. Byrd, Esq., Greenberg Traurig, P.A., 111 N. Orange Avenue, Suite 2050, Orlando, Florida 32801.

Robert W. Rasch

Page 10

# DOCUMENT

# <u>NOT</u>

# SCANNED

_____  Exceeds scanner's page limit
_____  Physical exhibit prevents scanning
\_\_X\_\_  Other:_____

# **REFER TO COURT FILE**

Revised 8/11/99