UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG
a Swiss Corporation, and
TYCO INTERNATIONAL (US), INC.,
a Nevada Corporation,

    Plaintiffs,

vs.                                              Case No.: 6:00-cv-1536-ORL-31 JGG

MIGUEL DELGADO BELLO,

    Defendant.

_____

MIGUEL DELGADO BELLO,

    Counterplaintiff,

vs.

EARTH TECH, INC.,
A California Corporation,

    Counterdefendant.

_____/

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY AND EMERGENCY MOTION TO POSTPONE HEARING ON MOTION FOR INJUNCTION AND SANCTIONS

    MIGUEL DELGADO BELLO, Defendant and Counterplaintiff, (hereinafter "Delgado") by and through his undersigned attorney, files this Memorandum in Support of his Emergency Motion for Extension of Time to Complete Discovery and Emergency Motion to Postpone

Page 1

Hearing on Motion for Injunction and Sanctions until that discovery is completed.

## A. BACKGROUND

After a hearing was held on October 30, 2001 on Earth Tech's emergency motion for injunctive relief and sanctions, this Court issued an Order dated October 31, 2001 directing the parties to complete discovery regarding the issues relating to Earth Tech's motion by December 21, 2001. Then the Court issued a Notice of Hearing by Order dated November 19, 2001 scheduling another hearing on Earth Tech's motion for Friday, January 18, 2002.

On December 3, 2001, Plaintiffs filed an Emergency Motion and Memorandum in Support of a Protective Order and Restraining Order to Preserve Evidence. Attached to that Motion and Memorandum, Plaintiffs attached an affidavit from Philip C. Gordon, the alleged CEO of UnitedStates.com. Simultaneous with the service of the Motion and Memorandum, Plaintiffs faxed a copy of the Notice of Service of the subpoena dated November 29, 2001 on Gordon to Delgado.

On December 4, 2001, before Delgado had an opportunity to respond, this Court issued an Order apparently relying on the Gordon affidavit, prohibiting Delgado from "changing, altering or tampering with the password for any e-mail accounts under his control, pending further Order of this Court."

On December 7, 2001, Delgado filed a Motion to Suppress and Motion for Sanctions. In that Motion, Delgado sought this Court to suppress the affidavit of Gordon for various reasons, many of which have now been admitted by Plaintiffs in their Memorandum in Opposition.

We now know from Plaintiffs' Memorandum in Opposition to Delgado's Motion to Suppress and Motion for Sanctions filed on December 18, 2001 that Plaintiffs first served a subpoena on Gordon on October 23, 2001 before the last hearing. Plaintiffs attached a copy of that affidavit and proof of service to the Memorandum in Opposition reflecting that they served Gordon at "14 Galleon St., #D, Venice, Calif.". Plaintiffs never served a copy of that subpoena on Delgado. Neither Plaintiffs nor Gordon provided Delgado any notice before Gordon provided Plaintiffs with the password to the requested e-mail addresses.

After this Court ordered Delgado on November 5, 2001 to transfer the domain name "tycovenezuela.com" to Tyco, on November 8, 2001, Delgado did so. In that transfer document,

Page 2

Delgado listed his new e-mail account as "MiguelD285@myplace.com", a free e-mail address that we now know is provided by UnitedState.com and Gordon. (Exhibit A). From that date on Plaintiffs had not only Delgado's e-mail account but also his passcode, having admittedly obtained it from Gordon pursuant to the October 23, 2001 subpoena. Only after Plaintiffs sought to reduce the information obtained into an affidavit, Gordon asked for a subpoena to cover himself. That was when the November 29, 2001 subpoena was faxed to Gordon, the same day as the affidavit was executed. Again, Plaintiffs did not serve a copy of that subpoena on Delgado until *after* they filed the Motion and Memorandum to which Gordon's affidavit was attached.[1]

### B. DIFFICULTY IN TAKING DEPOSITION OF GORDON

In light of Plaintiffs' arguments based on the Gordon affidavit, Delgado attempted to serve Gordon at the address and phone number listed on Plaintiff's November 29, 2001 subpoena (Exhibit D). It was then that Delgado learned from the process server that the listed address is a Mailbox Etc. location and the phone number is a fax number at that same location. Hence, Delgado could not serve Gordon at that location. Delgado then wrote to Plaintiffs on December 10, 2001 seeking disclosure of the address and phone number at which Plaintiffs contacted Gordon (Exhibit E), not knowing until December 18, 2001 that Plaintiffs had communicated with Gordon as early as October 23, 2001 and has served him at a different address. When Delgado received no response, he faxed another letter on December 11, 2001 again seeking to obtain the information so that Gordon could be served sufficiently before the scheduled deposition of December 14, 2001 (Exhibit F)

Instead of providing the address at which Plaintiffs served Gordon, in a fax letter dated December 11, 2001, Plaintiffs stated that Gordon <u>was represented</u> by counsel and offered to provide the name and address of counsel "as soon as I confirm it" (Exhibit G)

---

[1] Plaintiffs' feeble attempt to claim that their failure to timely serve either Gordon subpoena on Delgado was a mistake is asserted in bad faith. Plaintiffs previously served subpoenas on third party AOL on May 2, 2001 and on third party Parsons Brinckerhoff on November 7, 2001, and simultaneously served copies of each of these subpoenas on Delgado (Exhibits B & C). These subpoenas also reflect that Plaintiffs knew full well how to issue the subpoenas from the appropriate District Court.

Instead, Plaintiffs intentionally failed to serve Delgado with the Gordon subpoenas so they could communicate with Gordon uninhibited by any interference by Delgado or this Court.

Then on December 13, 2001, Plaintiffs advised Delgado that they had spoken to "an attorney who <u>may represent</u> Gordon" (emphasis added), but would not provide the name and phone number unless "he (the attorney) gives me authorization" (Exhibit H). As a result, Delgado faxed Plaintiffs a letter on December 13, 2001 advising that he was forced to cancel Gordon's deposition for December 14, 2001 since he had not been served and insisting that they provide the information they had as to where Gordon could be contacted and served (Exhibit I). Only then on December 13, 2001 did Plaintiffs then provide the address for Gordon that we now know they had back on October 23, 2001 but failed to provide Delgado to frustrate his ability to serve Gordon (Exhibit J). However, Plaintiffs didn't provide that address until they knew that Gordon had moved and was unable to be served even at that address (Exhibit P).

Then the next day, Plaintiffs advised Delgado that he could "fax your subpoena to Philip Gordon at the following number: 213-947-1325" (Exhibit K). Frustrated with the game playing, Delgado faxed a new subpoena to the suggested phone number asking Gordon to respond immediately (Exhibit L) and faxed a letter to Plaintiffs objecting to their refusal to provide a current phone number and address for Gordon when they were obviously, regularly communicating with him (Exhibit M). Gordon predictably did not respond to the fax.

Finally, on December 17, 2001 (3 days before the discovery cut off) Plaintiffs provided Delgado with the name and phone number of Gordon's attorney, Jeffrey Rosenfeld in Los Angeles, Calif. Plaintiffs indicated they were not opposed to extending the discovery deadline past December 21, 2001 for the taking of Gordon's deposition (Exhibit N).

Having obtained that information, Delgado was able to schedule Gordon's deposition for

Then on December 13, 2001, Plaintiffs advised Delgado that they had spoken to "an attorney who <u>may represent</u> Gordon" (emphasis added), but would not provide the name and phone number unless "he (the attorney) gives me authorization" (Exhibit H). As a result, Delgado faxed Plaintiffs a letter on December 13, 2001 advising that he was forced to cancel Gordon's deposition for December 14, 2001 since he had not been served and insisting that they provide the information they had as to where Gordon could be contacted and served (Exhibit I). Only then on December 13, 2001 did Plaintiffs then provide the address for Gordon that we now know they had back on October 23, 2001 but failed to provide Delgado to frustrate his ability to serve Gordon (Exhibit J). However, Plaintiffs didn't provide that address until they knew that Gordon had moved and was unable to be served even at that address (Exhibit P).

Then the next day, Plaintiffs advised Delgado that he could "fax your subpoena to Philip Gordon at the following number: 213-947-1325" (Exhibit K). Frustrated with the game playing, Delgado faxed a new subpoena to the suggested phone number asking Gordon to respond immediately (Exhibit L) and faxed a letter to Plaintiffs objecting to their refusal to provide a current phone number and address for Gordon when they were obviously, regularly communicating with him (Exhibit M). Gordon predictably did not respond to the fax.

Finally, on December 17, 2001 (3 days before the discovery cut off) Plaintiffs provided Delgado with the name and phone number of Gordon's attorney, Jeffrey Rosenfeld in Los Angeles, Calif. Plaintiffs indicated they were not opposed to extending the discovery deadline past December 21, 2001 for the taking of Gordon's deposition (Exhibit N).

Having obtained that information, Delgado was able to schedule Gordon's deposition for Thursday, December 27, 2001 at 9:00 am in Los Angeles, Calif. and serve his new counsel by fax. After arriving in Los Angeles, Calif. the evening of Wednesday, December 26, 2001 for the deposition the next day, the undersigned received a voice-mail message from Gordon's counsel that Gordon has been injured in a skiing accident over the Christmas holiday and would not be able to attend the deposition the next day. Then the next morning, Plaintiffs' counsel and the undersigned met with Gordon's counsel who provided each of us the fax he had sent the day before indicating Gordon's unavailability for the deposition (Exhibit O). Only this morning did we learn from Gordon's attorney that Gordon would not be available for deposition in California

until the earliest January 17 or 18, 2001.

### C. UNFAIRNESS TO DELGADO TO PROCEED WITHOUT ALLOWING FURTHER DISCOVERY

Given the facts as we now know them, it is apparent that Plaintiffs refused to provide Delgado with Gordon's address and phone number to delay his deposition until such time as Delgado would not have enough time to follow up that deposition with additional depositions of representatives of Plaintiffs who had contact with Gordon. Plaintiffs' Memorandum in Opposition to Delgado's Motion dated December 18, 2001 now provide us with information that Plaintiffs clearly had Gordon's contact information as early as October 23, 2001, before the last hearing. Yet they refused to provide it to Delgado so as to delay the process until after the cut off date for discovery.

Now that Gordon is unavailable for an unknown period of time and we have passed the December 21, 2001 discovery cut-off, without an extension of time, Delgado is precluded from pursuing not only Gordon but also to depose whatever representative of Plaintiffs with whom Gordon was communicating. Plaintiffs have not only violated the Federal Rules of Civil Procedure by refusing to timely serve Delgado with a copy of the two Gordon subpoenas, they now have delayed filing the Gordon affidavit until such time as Delgado would not have enough time to depose him and Plaintiffs' representative that he spoke with before December 21, 2001.

It would be eminently and procedurally unfair and prejudicial to Delgado to allow Plaintiffs to refuse to timely serve Delgado with the Gordon subpoenas and then refuse to provide Delgado the information about Gordon's whereabouts, and then not to extend discovery to allow Delgado to engage in discovery surrounding the information contained in Gordon's affidavit and Gordon's communications with Plaintiffs.

What we now know is that Plaintiffs have had Delgado's e-mail password since at least on or before October 23, 2001. It doesn't take a computer genius to open up various free-mail accounts with Delgado's address and password and blame it on Delgado. What Gordon has to tell us not only about these e-mail accounts as well as how he mysteriously was injured on the eve of his scheduled deposition is important and likely to lead to discovery of admissible evidence regarding Delgado's claim that he had nothing to do with these e-mail accounts.

Page 5

During many of the depositions taken to date of Plaintiffs' witnesses reflect that Plaintiffs have precluded significant inquiry asserting attorney client privilege. However, Plaintiffs' counsel will not be able to assert attorney client privilege if they were the ones who communicated with Gordon, like they were the ones who "communicated" with Delgado, or his witness Aristimuno.

Plaintiffs are likely to suggest at this stage that the Court could go ahead and suppress the Gordon affidavit so to avoid further inquiry into apparent improprieties in obtaining the information for Gordon. However, it is now clear that there is much information behind this affidavit and the communications between Gordon and the Plaintiffs that suggests substantial chicanery by Plaintiffs with complicity by Gordon. Only by allowing an extension of time for Delgado to explore the obvious connection between Gordon and Plaintiffs will Delgado be provided adequate due process. Given the short period of time between the filing of this Motion and the scheduled hearing on Friday, January 18, 2001, there is clearly not enough time left to both depose Gordon and to schedule the deposition of Plaintiffs' representative that communicated with Gordon through October, November, and December, 2001.

In the alternative, instead of extending the time for discovery and postponing the follow up hearing, the Court could just decide to dismiss Plaintiffs' Motion of Injunction and Sanctions without further proceeding in light of Plaintiffs' apparent chicanery and blatant disregard for the Federal Rules of Civil Procedure, as outlined in detail in Delgado's Motion to Suppress and for Sanctions, currently pending before this Court.

### D. CERTIFICATION OF DISCUSSION WITH OPPOSING COUNSEL

The undersigned has discussed the substance of this Motion with opposing counsel and was unable to resolve the underlying issues presented in this Motion.

Respectfully submitted,

*/s/ Robert W. Rasch*

Robert W. Rasch
Florida Bar No. 0890560
ROBERT W. RASCH, P.A.
201 Live Oak Lane
Altamonte Springs, Florida 32714

Page 6

(407) 865-7473
Fax (407) 865-5979

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of this document has been served by U.S. mail this 8th day of January, 2002 to Tucker H. Byrd, Esq., Greenberg Traurig, P.A., 111 N. Orange Avenue, Suite 2050, Orlando, Florida 32801.

_____
Robert W. Rasch

# DOCUMENT

# NOT

# SCANNED

_____ Exceeds scanner's page limit
_____ Physical exhibit prevents scanning
__X__ Other: Exhibits

# **REFER TO COURT FILE**

Revised 8/11/99