

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG
a Swiss Corporation, and
TYCO INTERNATIONAL (US), INC.,
a Nevada Corporation,

        Plaintiffs,

vs.                      Case No.: 6:00-cv-1536-ORL-31 JGG

MIGUEL DELGADO BELLO,

        Defendant.

_____

MIGUEL DELGADO BELLO,

        Counterplaintiff,

vs.

EARTH TECH, INC.,
A California Corporation,

        Counterdefendant.

_____/

## DELGADO'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR SANCTIONS

        Defendant and Counterplaintiff, Miguel Delgado Bello (hereinafter "Delgado"), by and through his undersigned attorney, files these proposed findings of fact and conclusions of law:

### FINDINGS OF FACT

1.      Plaintiffs filed this Motion for Sanctions against Delgado alleging that through a

series of faxes and e-mails, Delgado is guilty of attempted extortion of Plaintiffs --
ie. Threatening to bring criminal charges against Plaintiffs for illegal behavior in
Venezuela if they did not settle his Venezuela lawsuit against Plaintiffs.  Delgado
has uniformly testified that he knows nothing about these alleged faxes and e-
mails (Hearing Transcript, p. 82).  This Court held evidentiary hearings on
October 31, 2001 and again on January 19, 2002, and allowed the parties to
submit supporting affidavits and take depositions of the affiants.

2.      The Court makes the following factual findings:  The Plaintiffs have failed to
prove by clear and convincing evidence that Delgado had any responsibility for
the seven (7) alleged faxes.  Plaintiffs have attempted by circumstantial evidence
to show that Delgado was responsible for these faxes: first, by the content of the
faxes themselves relating to Delgado's Venezuelan lawsuit; and second, by a
letter from the President of Pequiven indicating that he is without knowledge of
these faxes coming from PDVSA, an affiliate company of Pequiven (Hearing
Transcript, p. 184).   However, Plaintiffs never were able to attribute the faxes to
Delgado.  The faxes were sent from a fax number that is located at PDVSA
(Hearing Transcript, p. 140; Def. Exhs. # 11 & 12) and there was no showing that
Delgado had access to a PDVSA fax machine (Hearing Transcript, p. 141).
Plaintiffs presented a letter from Edwardo Praeslj, claiming he was President of
PDVSA (Alpert Affidavit, Exhibit D).  In reality, he is President of Pequiven, and
therefore is unable to speak to whether the faxes emanated from PDVSA, a
different company than PDVSA (Hearing Transcript, Def. Exh # 11).  More
importantly, the letter is hearsay and improper evidence. [1]

3.      Plaintiffs attempt to attribute to Delgado a number of e-mail messages by
circumstantial evidence (Alpert Affidavit, Exhibits # B & C).  Plaintiffs initially
claim that the e-mails that were allegedly sent from "pdvsacitgo@aol.com" were
sent by Delgado because (1) AOL records showed that someone logged onto

---

[1] This Court repeatedly rejected hearsay submitted by Delgado (Hearing Transcript, pp.
57, 69-70, 81, 90-91, 165-166); therefore, this rank hearsay must also be rejected.

Delgado AOL account using the screen name "pdvsa"; (2) Delgado allegedly used Hall's American Express account to create the "pdvsacitgo@aol.com" e-mail account; (3) that the "meta data" of the Microsoft Word documents attached to the e-mails reflected "Miguel" was the creator of the documents; and (4) the contents of the e-mails themselves implicate Delgado. Plaintiffs did not present an alleged e-mail from a screen name "pdvsa@aol.com", nor definitive evidence that Delgado himself was responsible for those log-ons rather than a number of other people who had access to his AOL account, including a former official of PDVSA, who now works for Earth Tech (Hearing Transcript, p. 149; 151; 272). In fact, this former PDVSA official (now Earth Tech employee) created the "pdvsa@aol.com" screen name several years ago when working closely with Delgado on the Venezuela project for Plaintiffs (Hearing Transcript, p. 272) and Plaintiffs have provided no evidence that the employee did not log onto Delgado's former AOL account at the times reflected by the AOL records (Atkins Affidavit, Exhibit C).

4.     Plaintiffs' claim that the "meta data" of the Microsoft Word documents attached to these e-mails is a "fingerprint" or "DNA" evidence categorically proving that the documents came from Miguel Delgado. However, the evidence from their own security employee reflects that anyone can imput the names "Miguel" and "Miguel and Company" into a computer when installing or reinstalling Microsoft Word (Haven Deposition, p. 43). [2] In fact, there is no way to determine when the Word program was loaded on the computer and could have been done at any time (Haven Deposition, p. 45). Delgado never had a company known as "Miguel and Company" and never encripted that name in any computer (Hearing Transcript, p. 154). Further, Delgado's laptop computer was stolen in May, 2001, before the

---

[2] Plaintiffs' counsel's argument that this "meta data" was a "permanent part of the computer" was dispelled by Plaintiffs' own witness, Haven, who admitted that one could change this information by reinstalling Microsoft Word software on a computer (Haven Deposition, p. 43).

date of many of the alleged e-mails, and he has not either purchased or borrowed another computer (Hearing Transcript, p. 153). The fact that Hall's address and phone number may have been incorrectly listed on the e-mail account registration does not lend any credence to Plaintiffs' argument that Delgado opened the account. Not only does Delgado deny knowing anything about "KnowX.com" website and has never visited the website (Hearing Transcript, p. 138), it does not even stand to reason that Delgado would have searched on "KnowX.com" under Hall's name and account to conduct a background search on himself! (Hall Affidavit, Exhibit A, entries on 1/31/01). It stands to reason that someone else, including Plaintiffs who were trying to establish that Delgado was a resident of Florida, not Venezuela, would have been conducting a search on "Miguel Delgado". Consequently, Plaintiffs have not established that Delgado was responsible for the e-mails from "pdvsacitgo@aol.com". Rather, the evidence established that any owner of an AOL account (the number is likely to be in the millions) could use "pdvsacitgo" as a screen name if it were not already in use (Haven Deposition, p. 36). The only e-mails that Delgado sent were from "migueld285@aol.com" (Hearing Transcript, p. 82) prior to September, 2001, when he created the "myplace.com" e-mail address (Hearing Transcript, p. 146).

5.    A serious evidentiary defect with all of the e-mails that Plaintiffs attribute to Delgado is that they all constitute hearsay. Plaintiffs attached these e-mails to an affidavit by Charles Alpert, an in-house attorney for Earth Tech. However, Alpert did not receive any of these e-mails. Plaintiffs' security employee, Haven, admitted that on April 18, 2001 a Tyco in-house attorney contacted him to advise him of several e-mails from "pdvsacitgo@aol.com" and directed him to watch for additional e-mails from that address (Haven Deposition, 14-25). Haven then set a filter on the Tyco server to divert any further e-mails from that screen name to himself (Haven Deposition, p. 22, 24).. Thereafter, Haven received further direction from another Tyco attorney to watch for further e-mails from "unitedstates.com" and "venezuela.com". Again he set a filter to divert any

further e-mails from those screen names to himself (Haven Deposition, p. 25-26). All e-mails that Haven received came from Tyco attorneys, not from any employees of Tyco or Earth Tech (Haven Deposition, p. 14; 56). Therefore, Plaintiffs have not presented direct evidence from anyone of the named recipients that they actually received the alleged e-mails. The evidence shows that Plaintiffs' attorneys and their security employee, Haven, not the named recipients reviewed the e-mails (Haven Deposition, p. 25-26). Plaintiffs failed to provide evidence (other than the second-hand attestation from Alpert in his affidavit) that the named recipients ever viewed the alleged e-mails (or faxes for that matter).

6.  Plaintiffs allege that Glenn Morales held himself out to be an attorney for Delgado and sent several e-mails to Mr. Kozlowski (Alpert Affidavit, Exhibit C). However, the Plaintiffs failed to establish that the activities of Morales, even if there has been evidence that these e-mails were in fact received, are attributable to Delgado. Under Venezuelan law, Plaintiffs admit that an attorney has no authority to represent a client without a power of attorney filed with the government (Alpert Deposition, p. 150; Hearing Transcript, p. 84). Delgado never hired Morales nor gave Morales the requisite power of attorney to represent him (Hearing Transcript, p. 83-84). Moreover, even if I were to apply the law in the United States, Plaintiffs have not provided any evidence of agency other than the e-mails themselves, which have not been properly identified or authenticated. As Delgado had no knowledge of these e-mails purportedly being sent by Morales (Hearing Transcript, p. 83-86), Delgado cannot be held responsible for any alleged e-mails from Morales.

7.  Plaintiffs allege that Delgado should be held responsible for an e-mail allegedly sent by Aleandro Teran, a former attorney of Delgado. However, the uncontroverted evidence established that Delgado terminated the services of Teran and hired a new attorney to handle his Venezuelan case in February, 2000 (Hearing Transcript, p. 89-90). The e-mail allegedly received by Plaintiffs is dated March 7, 2000 at a time when Teran no longer represented Delgado (Alpert

Page 5

Affidavit, Exhibit C). Moreover, Plaintiffs again did not present evidence that this e-mail was in fact received by Mr. Koslowski and no evidence that Delgado or Teran were connected to the supposed e-mail address "tycoven@aol.com". In fact, AOL sent information to Plaintiffs pursuant to subpoena indicating they were "unable to match any account to the screen name or e-mail address tycoven@aol.com" (Atkins Affidavit, Exhibit C). Therefore, Plaintiffs have failed to prove that Delgado had any responsibility for the alleged e-mail dated March 7, 2000.

8.      Although Plaintiffs vehemently argue that the faxes and e-mails purportedly sent by Delgado or on his behalf are extortionist in nature, most of the faxes and e-mails presented by Plaintiffs at worst threaten to take the information alleging criminal misbehavior by Plaintiffs to the media or the press, not to file criminal charges -- hence, are not extortion. For example, the fax dated January 28, 2001 threatens only to go to the media or to PDVSA, by inference (Alpert Affidavit, Exhibit A). Similarly, the fax of January 30, 2001 only threatens: "We are concern that these matters may get out of hand" (Alpert Affidavit, Exhibit A). Further, the fax of February 13, 2001, purportedly from someone at PDVSA simply says that "we cannot go public by orders from high up in the government" (Alpert Affidavit, Exhibit A). E-mail references to "media campaigns" (April 2, 2001 e-mail) or to "legal complications and rumors" (May 20, 2001 e-mail) do not even infer withholding criminal charges in exchange for a civil gain.

9.      There are only two of the many faxes and e-mails that remotely smack of extortion -- a fax dated February 15, 2001 (Alpert Affidavit, Exhibit A) and an e-mail dated April 3, 2001 (Alpert Affidavit, Exhibit B). However, there simply is insufficient evidence to associate Delgado with the February 5, 2001 fax which was sent from a PDVSA fax machine and Plaintiffs are unable to prove by clear and convincing evidence that Delgado had access to a PDVSA fax machine or had anything to do with the e-mail account "pdvsacitgo@aol.com", the alleged source of the April 3, 2001 e-mail. Presumably, Plaintiffs sought information from AOL

Page 6

regarding "pdvsacitgo" screen name (since Plaintiffs admitted it was identical to the subpoena served on Gordon (Hearing Transcript, p. 326)) and obtained no supporting information.  Plaintiffs were unconvincing in their effort to claim that Delgado was responsible for setting up the account using Mr. Hall's name and American Express account. [3]

10.    Plaintiffs argued in oral argument that the "best evidence" that the e-mails did not come from Earth Tech & Tyco themselves is that the e-mails were also sent to Tice & Associates (Hearing Transcript, p. 13; 35).  However, Plaintiffs never proved that these alleged e-mails were ever sent to Tice & Associates.  Instead, Plaintiffs were only able to point to the top of the e-mails themselves (Alpert Deposition, p. 174; Hearing Transcript, p. 145) showing the name "Tice and Associates".  Only Plaintiffs apparently knew the significance of Tice & Company, as Delgado claimed not to know anything about Tice (Hearing Transcript, p. 13, 201-202).  Plaintiffs' argument that Tyco wouldn't have sent the e-mail to Tice, its adversary (Hearing Transcript, p. 14) only begs the question of whether the e-mail was ever sent in the first place.

11.    Besides the absence of credible evidence to establish that executives of Plaintiffs even received the faxes and e-mails or that Delgado had responsibility for sending such e-mails, this Court finds several additional reasons not to give credance to the e-mails themselves.  First, Plaintiffs' employee, Haven, testified that he had been asked to review 22 e-mails from the e-mail accounts that Plaintiffs attribute to Delgado (Haven Deposition, p. 21).  However, Plaintiffs presented only 9 of

---

[3] Plaintiffs presented evidence that Delgado's name appeared on several charges on Hall's American Express account after Delgado left McKim & Creed (Hall Affidavit, Exhibit A). However, Plaintiffs failed to present the documents that would have been signed by Delgado in order to improperly use that credit card (Hearing Transcript, p. 274).  Moreover, Plaintiffs presented no evidence to counter Delgado's testimony that he never had access to the McKim & Creed credit card; all of Delgado's reservations were made by McKim & Creed corporate personnel and Delgado did not know Hall's American Express credit card number (Hearing Transcript, p. 109-112).  Therefore, these is insufficient evidence to link Delgado to improper use of Hall's American Express card and to creation of the e-mail account "pdvsacitgo@aol.com".

these e-mails to this Court.  If Plaintiffs assert that all of these e-mails are attributable to Delgado (ie. came from the alleged e-mail accounts), what happened to the other 11 e-mails?  Why did Plaintiffs cull 11 e-mails from these accounts allegedly connected with Delgado?  Similarly, Haven testified that he reviewed the internet headers on all of these e-mails, the equivalent to the "meta data" on Microsoft Word document (Haven Deposition, p. 35, 39-40; 55).  Yet only one e-mail was presented to this Court with the full header -- the e-mail dated April 18, 2001 allegedly from "pdvsacitgo@aol.com" (Haven Deposition, Exhibit 7).  Yet Plaintiffs give no explanation why the full e-mails, including the headers, were not presented to this Court.  Haven acknowledged that some of the e-mails had attachments when he reviewed them, but even though he submitted them to Plaintiffs attorneys, the latter chose not to include them when presented to this Court (Haven Deposition, p. 59-63).  Hence, it would readily appear that Plaintiffs selectively presented only some of the relevant e-mails, and of the e-mails that Plaintiffs chose to submit, they submitted only parts of those e-mails.  Those are independent reasons to reject the e-mails as unauthenticated, incomplete evidence.

## CONCLUSIONS OF LAW

12.     Plaintiffs assert that Delgado should be sanctioned under Rule 37 of the *Federal Rules of Civil Procedure* and pursuant to this Court's inherent power to impose sanctions.  Rule 37 (b)(2)(C) provides in relevant part:

> "If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . .
> (C) An order striking out pleadings ... or rendering a judgment by default against the disobedient party ...."

This rules gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders; however, the sanction of default judgment requires a willful or bad faith failure to obey a discovery order. *Malautea v.*

*Suzuki Motor Company, LTD.,* 987 F.2d 1536, 1542 (11ᵗʰ Cir. 1993).  Plaintiffs complain that Delgado did not make himself available for deposition.  However, Plaintiff's did not file a Motion to Compel Discovery and no discovery order was ever issued by this Court against Delgado.  Therefore, no sanction is appropriate against Delgado under Rule 37.

13.     In addition, Delgado provided Plaintiffs with doctor's statements explaining his unavailability through the end of August, 2001(Hearing Transcript, p. 157). Delgado further credibly testified that he was fearful of traveling to the U.S. because of alleged threats by Plaintiffs (knowing that the "investigator" hired by Plaintiffs, Bango, was well known in Venezuela as a dangerous person) and because of the September 11 tragedy (Hearing Transcript, p. 157-158).  Plaintiffs provided no evidence to refute that testimony.

14.     Plaintiffs also assert that Delgado should be sanctioned pursuant to the Court's inherent powers.  There is no doubt that "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it'.  Such power also extends to parties to litigation. *Malautea v. Suzuki Motor Company, LTD.,* 987 F.2d 1536, 1545 (11ᵗʰ Cir. 1993); *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11ᵗʰ Cir. 1985).

15.     Plaintiffs have sought dismissal of Delgado's counterclaim and his defenses to Plaintiff's claims as a remedy for the alleged misconduct, taking the position that monetary sanctions would be ineffective due to Delgado's inability to pay such monetary sanction (Hearing Transcript, p. 37-38).  Case law in this Circuit is clear that this Court may impose such most severe sanction only where there is a finding of willfulness or bad faith.  This Court may impose lesser sanctions without a showing of willfulness or bad faith, but Plaintiffs have argued that imposition of lesser sanctions (albeit monetary sanctions) would be ineffective (Hearing Transcript, p. 37-38, 305-306). *Bank Atlantic v. Blythe Eastman Pain Webber, Incorporated,* 12 F. 3d 1045, 1049 (11ᵗʰ Cir. 1994).  All of the Eleventh

Circuit cases discussing the extent of sanctions and level of proof discuss Rule 37, rather than the inherent power of the Court. Plaintiffs have cited this Court to the Fourth Circuit's decision in *Richardson v. Cabarrus County Board of Education,* 151 F.3d 1030 (4th Cir. 1998) as guidance.[4] In that case, the Fourth Circuit established certain factors to be considered by a District Court before exercising the inherent power to dismiss a claim or defense:

> "(1) the degree of the wrongdoer's culpability, (2) the extent of the client's blameworthiness if the wrongful conduct is committed by the attorney; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions; and (6) the public interest." *Richardson v. Cabarrus County Board of Education,* 151 F.3d 1030, 1998 WL 371999, ** 4 (4th Cir. 1998).

Setting aside for a moment the blameworthiness of Delgado, Plaintiffs clearly have demonstrated no prejudice to the Plaintiffs. The evidence reflects that only Tyco lawyers and its security employee reviewed these e-mails (Haven Deposition, p. 14-22; 56). Plaintiffs have not demonstrated that Tyco lawyers or its security employee were in any way influenced to suggest settlement with Delgado by reviewing the documents. Rather, it would appear that these e-mails did was encourage the attorneys to find more evidence and file the instant Motion for Sanctions against Delgado.

16. Similar factors were adopted by the Tenth Circuit in *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). However, the Tenth Circuit also added a factor as to "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance". That factor was applied in cases involving claims of destruction of evidence or spoliation, both of which are discovery offenses. *The Gates Ruber Company v. Bando Chemical Industries, Limited,* 167 F.R.D. 90, 101 (D.C.D. Colo, 1996). The Tenth Circuit also noted

---

[4] This case interesting enough involved evidence of witness intimidation, finding that "a court must be free to protect its integrity, send a message to the public, and prevent a misbehaving litigant from profiting from his own wrongdoing". *Richardson v. Cabarrus County Board of Education,* 151 F.3d 1030, 1998 WL 371999, ** 6 (4th Cir. 1998).

that before a District Court should order dismissal, it should consider an additional factor -- the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Obviously, Delgado never received any prior warning from either Plaintiffs or this Court. As far as lesser sanctions, Plaintiffs have encouraged this Court that lesser sanctions are not appropriate. However, were this Court convinced that Delgado had a hand in dissimenation of these faxes and/or e-mails, the Court is unconvinced that lesser sanctions than dismissal of Delgado's pleadings would not apply.

17.    Also according to the Tenth Circuit, two of the factors take on greater importance in most cases: (1) the culpability of the offender, or the mental state which gave rise to alleged behavior; and (2) the degree of prejudice or harm which resulted from the actions of the offender. *The Gates Ruber Company v. Bando Chemical Industries, Limited,* 167 F.R.D. 90, 102 (D.C. D. Colo, 1996). We have already discussed that absence of evidence of prejudice or harm to the Plaintiffs. Similarly, Plaintiffs have not attempted to prove that Delgado, a Venezuelan citizen, even understood the concept of extortion or that it is unlawful.

18.    Where no willfulness, bad faith or fault is shown from the evidence, a dispositive sanction would be improper. The imposition of dispositive sanctions "should be confined to the 'flagrant case' in which it is demonstrated that the failure to produce 'materially affect(s) the substantial rights of the adverse party' and is 'prejudicial to the presentation of his case'." *Wilson v. Volkswagon of America, Inc.,* 561 F.2d 494, 503 (4th Cir. 1977), *cert denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). The burden of proof is on the aggrieved party to establish 'a reasonable possibility of prejudice to its case, based on concrete evidence rather than a fertile imagination. *The Gates Rubber Company v. Bando Chemical Industries, Limited,* 167 F.R.D. 90, 104 (D.C. D. Colo, 1996). Plaintiffs have shown absolutely no evidence that Delgado exhibited any willfulness, bad faith or fault regarding the alleged faxes or e-mails, other than the content of the faxes or e-mails themselves. However, Plaintiffs cannot use the

faxes and e-mails to bootstrap this issue.

19. The First Circuit Court has established that in order for extreme sanctions to be imposed by a District Court, the movant must prove the opponent's misconduct by clear and convincing evidence. *Anderson v. Cryovac*, 862 F.2d 910, 926 (1st Cir. 1988). Other courts have adopted that same level of proof for extreme sanctions like dismissal, while finding that lesser sanctions may be imposed where the judge is persuaded by a preponderance of the evidence. *The Gates Rubber Company v. Bando Chemical Industries, Limited*, 167 F.R.D. 90, 108 (D.C. D. Colo, 1996).

20. Having reviewed all of the evidence presented by both parties in affidavits and live testimony, this Court finds that Plaintiffs have not presented clear and convincing evidence that Delgado intentionally or in bad faith engaged in extortion of Plaintiffs. Moreover, the evidence failed to establish that anyone other than Plaintiff's lawyers or its security person, Haven, ever received the alleged faxes or e-mails. Haven testified in his deposition that after he received several e-mails from one of Plaintiff's in-house attorneys, he set a filter on the server that diverted the e-mails to him. Plaintiffs cannot demonstrate that Plaintiffs were prejudiced in any fashion by the alleged faxes and e-mails, and prejudice is an essential element to issuance of sanctions. *Wouters v. Martin County, Florida*, 9 F.3d 924, 933 (11th Cir. 1993).

21. Even if Plaintiffs had presented evidence to show by the preponderance of the evidence that Delgado was responsible for the alleged extortionist activity (which we find they have not done), Plaintiffs specifically asserted to the Court that Delgado could not afford monetary sanctions and that monetary sanctions were a waste of time given Delgado's poor economic condition (Hearing Transcript, p. 37-38).

22. After this Court conducted the hearing on October 30, 2001, this Court issued an Order dated October 31, 2001 requiring that "Plaintiffs shall make available for deposition any of the affiants whose affidavits were submitted by Plaintiffs in

support of their Motion". On December 3, 2001, Plaintiffs filed an Emergency Motion and Memorandum in Support of a Protective and Restraining Order to Preserve Evidence, and attached an affidavit from Philip C. Gordon. When Delgado attempted to subpoena Gordon for deposition, he learned that the address on Plaintiff's subpoena to Gordon (which was not timely served on Delgado) was a post office box. When Delgado sought a physical address for Gordon from Plaintiffs for service of a deposition subpoena, Plaintiffs' counsel delayed providing that address in order to preclude Delgado from any follow up depositions or discovery from Gordon's deposition. Gordon's deposition reflected that it was Plaintiff's counsel, Atkins, who had multiple conversations with Gordon and would have been subject to deposition as a fact witness [5] had

---

[5] Atkins was admitted pro haec vice to practice before this Court. As such, he is governed by the Code of Professional Responsiblity governing members of the Florida Bar. Rule 2.02 (c) of the *Local Rules of the United States District Court, Middle District of Florida.* Since as early as October 23, 2001, but at least by November 21, 2001 when Atkins drafted the affidavit for Gordon to sign, Atkins knew that he was a potential witness in this case because of his repeated discussions and involvement with a key witness, Gordon; yet he and his law firm have continued to represent Plaintiffs in this case. *Hubbard v. Hubbard,* 233 So.2d 150, 153 (Fla. 4th DCA 1970). This Court concludes that Atkins and the Paul, Weiss law firm cannot continue to act as an advocate at trial or other preliminary proceedings since Atkins "ought" to be called as a witness by Plaintiffs regarding Atkin's activities in subpoenaing and conversing with Gordon. *Doughty v. Doughty,* 51 B.R. 36 (M.D. Fla. 1985); *Swenson's Ice Cream Company v. Voto, Inc.,* 652 So.2d 961-962 (Fla. 4th DCA 1995). The deposition of Gordon would indicate that Atkins was the only other person who had information regarding his communications with Gordon and the alleged changing of the passwords on several UnitedStates.com e-mail addresses. The concern of the disciplinary rule is that trial counsel might be inhibited from attacking his own credibility or arguing to the fact-finder the lack of credibility of his testimony thus affecting his ability to properly represent his client. *Williams v. Wood,* 475 So.2d 289, 290 (Fla. 5th DCA 1985). It would appear that Atkins did not present an affidavit nor testify regarding his actions with Gordon for that very reason, to the detriment of his clients. This Court has authority to disqualify an attorney and his law firm for violation of Disciplinary Rule 5-101(B) and Rule 5-102. *Arthur v. Gibson,* 654 So.2d 983, 984 (Fla. 5th DCA 1995). This Court hereby disqualifies Atkins and the Paul, Weiss law firm from further involvement in this case. Since Plaintiffs are represented by two other large law firms besides Paul, Weiss, Plaintiffs can show no hardship by disqualification of Atkins and Paul, Weiss law firm. *Draganescu v. First National Bank of Hollywood,* 502 F.2d 550, 552 (5th Cir. 1974).

he not intentionally delayed providing Delgado the whereabouts of Gordon (which Atkins clearly knew all along since at least October 23, 2001 when Atkins first served Gordon). Therefore, this Court finds that by the preponderance of the evidence, Plaintiffs and their counsel Atkins violated Rule 37(b)(2)(C) by failing to obey this Court's Order to allow depositions of any individuals that provided affidavits for Plaintiffs; Atkins further violated 28 U.S.C. Section 1927 by unreasonably and vexatously multiplying the proceedings and abusing the judicial process by hampering the enforcement of the Court's Order. *Malautea v. Suzuki Motor Company, LTD.,* 987 F.2d 1536, 1542-1547 (11th Cir. 1993). Therefore, Atkins, Paul, Weiss law firm, and Plaintiffs shall be jointly and severally responsible for Delgado's reasonable attorneys fees and costs incurred in having to raise and argue this issue.

23. This Court further finds that according to Gordon, on October 23, 2001, when he was first subpoenaed, he provided Atkins the passwords to all e-mail accounts listed in the subpoena and for all accounts related to Delgado (Gordon Deposition, pp. 61-62; 64-72, 105; Hearing Transcript, p. 300), even though the subpoena did not request the passwords (Exhibit 2 attached to Gordon Deposition). In fact, the original subpoena served on Gordon on October 23, 2001 also sought information for any accounts having the screen name "migueld285" (Hearing Transcript, p. 326). According to Gordon, he gave all such information to Atkins (Gordon Deposition, p. 111-112). Although Gordon's affidavit (drafted by Atkins (Gordon Deposition, p. 89)) states that on November 21, 2001 all the passwords for these e-mail accounts were the same, Gordon claims that he didn't know if they were the same on October 23, 2001 when he provided them to Atkins (Gordon Deposition, pp. 64-65). Gordon also testified that he didn't know when these e-mail accounts were created (Gordon Deposition, p. 113), a fact that is a critical and essential piece of evidence, necessary for Plaintiffs' claim that Delgado sent the alleged e-mails from the UnitedStates.com e-mail addresses. Likewise, Gordon could not testify as to whether the system records who makes changes in

passwords (Gordon Deposition, p. 53).

24.     Gordon testified that he requested that Atkins send him another subpoena on
        November 29, 2001, which subpoena added only the request for the passwords,
        which Gordon had already given to Atkins back on October 23, 2001 (Gordon
        Deposition, p. 90). Clearly the 2nd subpoena was merely to cover the fact that
        Gordon had provided the passwords to these accounts without any subpoena.

25.     The mere fact that the same password is attached to all 4 of these
        UnitedStates.com e-mail accounts as of November 21, 2001(according to
        Gordon's affidavit) does not establish that Delgado sent the alleged e-mails
        (Gordon's ultimate admission that he provided Atkins on October 23, 2001 all
        passwords to all accounts related to Delgado is particularly credible in light of the
        fact that Plaintiffs agreed to "defend the subpoena in any litigation", or in essence
        to pay for Gordon's attorneys' fees (Gordon Deposition, p. 108-109)) . There is
        no evidence as to what the passwords were on these unitedstates.com accounts on
        the dates reflected on the alleged e-mails or on the dates that the accounts in
        question were created (Hearing Transcript, p. 64-65, 113). What we do know is
        that one of the passwords that Gordon provided to Atkins on October 23, 2001
        was "crismar 423542" -- on the "myplace.com" address (Gordon Deposition, p.
        111-112). [6] Thus, Plaintiffs have failed to prove by "a preponderance of the
        evidence", much less by "clear and convincing evidence", that Delgado sent these
        e-mails from the UnitedStates.com accounts.

26.     Plaintiffs argued that Delgado created a screen name "pdvsa@aol.com" under his

---

[6] If Atkins had the passwords to the 4 "phony" unitedstates.com e-mail addresses on
October 23, 2001 and they were all the same, then Atkins would have discussed this evidence in
the October 30, 2001 hearing while asserting that Delgado was responsible for sending such e-
mails. Rather, Atkins waited until December 3, 2001 to make that assertion to this Court, after
he obtained Gordon's affidavit, circumstantially establishing, contrary to Atkins claim (Hearing
Transcript, p. 328), that as of October 23, 2001, these 4 unitedstates.com accounts did not have
the same password as Delgado's admitted e-mail address at "myplace.com". Although Delgado
has raised this issue before the Court, Plaintiffs have given no explanation. Plaintiffs silence is
viewed as an admission.

Page 15

AOL account. However, there is no alleged extortionist e-mail containing that screen name. Plaintiffs then argue that Delgado created the AOL account [pdvsacitgo@aol.com] using William Hall's name and American Express account number. Again there is no evidence to support this claim, only Hall's surmise. Delgado never had access to a McKim & Creed credit card nor the security pin number (Hearing Transcript, TR 113). Clearly, Plaintiffs have not provided even a preponderance of evidence to support that claim.

27. Plaintiffs claimed that they received several e-mails from Delgado's attorney, Glenn Morales, that were extortionist and santionable. However, the uncontroverted evidence establishes that according to Venezuelan law, which would apply regarding Delgado's Venezuelan attorneys, an attorney cannot represent a client unless he has obtained and filed a power of attorney (Alpert Deposition, p. 150; Hearing Transcript, p. 83-84). Plaintiffs also argued that an e-mail allegedly received by Tyco dated March 7, 2000 was received from Aleandro Teran, Delgado's attorney. However, the uncontroverted evidence established that Teran was dismissed as Delgado's attorney in February, 2000 and replaced by another attorney to handle Delgado's Venezuelan case (Hearing Transcript, TR 89-90). Not only is there no proof that these e-mails were sent by a current attorney of Delgado, there is no evidence that Delgado was aware that any of these e-mails were actually sent to Tyco (Hearing Transcript, TR 90). Plaintiffs could find no link between these e-mails and Delgado other than the content of the e-mails themselves. Plaintiffs had no idea whether Teran still represented Delgado on the date of this e-mail, March 7, 2001, or not (Alpert Deposition, p. 178), thereby further establishing that Plaintiffs knew that they did not have the evidence to support their Motion for Sanctions against Delgado. Delgado cannot be sanctioned for activity regarding which he was unaware.

28. Plaintiffs also argue that Delgado sent a number of faxes to Tyco officials, disguising the faxes as emanating from PDVSA. However, Plaintiffs only evidence is the content of the faxes themselves and a hearsay letter from a

PDVSA official, which letter merely states that he is not aware of any such faxes being sent from PDVSA or Pequiven (however, he is President only of Pequiven (Hearing Transcript, p. 139-141; Def Exh. # 11). Delgado admitted that he had two e-mail addresses: first, "migueld285@aol.com" and "migueld285@myplace.com". However, none of the alleged extortionist e-mails were sent from either of these e-mail accounts. Therefore, Plaintiffs' Motion that Delgado be sanctioned for sending extortionist e-mails and faxes to Plaintiffs are denied.

29.     Although Plaintiffs have claimed that Delgado should be sanctioned under Rule 37 for failure to make himself available for deposition, Plaintiffs have not countered any of the evidence presented by Delgado regarding his reasonable explanations for not making himself available until November, 2001. Hence, this Court finds Delgado's failure to appear for his deposition prior to November 20, 2001 was "substantially justified". Moreover, Plaintiffs never filed a Motion to Compel nor obtained a discovery order from the Court, a necessary prerequisite for sanctions under Rule 37. Therefore, Plaintiffs' request that Delgado be sanctioned under Rule 37 is denied.

30.     Delgado argues, primarily based on the deposition testimony of Gordon, that Atkins changed the passwords on several UnitedStates.com accounts to match the password he received from Gordon on October 23, 2001 for Delgado's account "migueld285@myplace.com". Gordon testified that he was served with Plaintiffs' subpoena on October 23, 2001 and in a phone conversation that day with Atkins, Gordon provided Atkins the passwords for all accounts associated with Delgado, including the "crismar 423542" password. (Delgado Deposition, pp. 64-72; 111-112). [7] Hence, Plaintiffs' claim that they did not have Delgado's "migueld285@myplace.com" account name and his password prior to November,

_____

[7] Gordon provided Atkins the passwords to all of these accounts, both the ones listed in the subpoena as well as any account "connected with Mr. Delgado", even though beyond the scope of the subpoena (Gordon Deposition, pp. 64-72)

2001 is not credible. Plaintiffs have chosen not to produce any evidence from Atkins, who according to Gordon, was Plaintiffs' only contact with Gordon and the only possible witness who could possibly explain what happened to these e-mail accounts and passwords after October 23, 2001 when Gordon provided them to Atkins (Gordon Deposition, pp. 60-62, 64-72, 82-92). However, Plaintiffs and Atkins chose not to provide this Court with either an affidavit nor testimony from Atkins regarding delaying and obstructing the deposition of Gordon in contravention of this Court's discovery Order of October 31, 2001 and his involvement in changing the passwords on the UnitedStates.com accounts -- "pdvsacitgo@venezuela.com", "citgopdvsa@venezuela.com", "tycovenezuela@venezuela.com" and "pdvsa@unitedstates.com" (although Atkins denied changing the passwords in his closing argument, he didn't even deny delaying and obstructing the deposition of Gordon). Besides Delgado's denial that he had any e-mail account other than "migueld285@aol.com" and "migueld285@myplace.com" (Hearing Transcript, p. 82), the only other evidence before this Court establishes that Atkins was provided the "crismar 423542" password for the "migueld285@myplace.com" account name on October 23, 2001 by Gordon (Gordon Deposition, pp. 105; 111-112). In addition. Gordon claimed that the registration information on the e-mail accounts -- "pdvsacitgo@venezuela.com", "citgopdvsa@venezuela.com", "tycovenezuela@venezuela.com" and "pdvsa@unitedstates.com" was "phony" and "not real" (Gordon Deposition, pp. 114-116). If Delgado created these e-mail accounts, he would not have created phony registrations on those accounts any more than he would have done so on "migueld285@myplace.com". In fact, when he created the "myplace.com" e-mail account, Delgado did not even change his password from the one he used on his AOL account, much less create phony registration information (Hearing Transcript, p. 146).

31.     Without countervailing evidence, hearing only argument of Plaintiffs' counsel, this Court finds by the preponderance of the evidence that Atkins and Plaintiffs

changed the passwords on the 4 e-mail accounts -- "pdvsacitgo@venezuela.com", "citgopdvsa@venezuela.com", "tycovenezuela@venezuela.com" and "pdvsa@unitedstates.com" sometime between October 23, 2001 and November 21, 2001, when Gordon verified the passwords for these accounts. By doing so, Atkins and Plaintiffs have attempted to defraud the Court and to create false and misleading evidence in an attempt to have this Court dismiss Delgado's pleadings. Obviously, Plaintiffs and Atkins realized after the October 30, 2001 hearing that they had insufficient evidence attributable to Delgado. They already had his "myplace.com" e-mail address and his password at that time. However, none of the alleged e-mails emanated from that e-mail address. So Atkins decided to change the passwords on these other accounts to allow him to argue that by association, these accounts were Delgado's accounts as well, and he was responsible for sending e-mails from these accounts.

32.     Atkins and Plaintiffs have engaged in a very serious form of sanctionable conduct -- modifying evidence to support their unsupportable claim that Delgado's password matched the password of these unitedstates.com accounts. Atkins and the Paul, Weiss law firm, have engaged in conduct far more than vigorous advocacy. They have abused Delgado, his counsel and the judicial system. Their actions warrant as a deterrent the award of attorneys fees and costs since they have demonstrated a "serious and studied disregard for the orderly process of justice". *Dictiomatic, Inc. v. Untied States Fidelity & Guaranty Company,* 127 F. Supp.2d 1239, 1249 (S.D. Fla. 1999). They have used the judicial system to harass and vex Delgado, and to increase dramatically both the number and extent of the proceedings in this case. As Judge Fay of the Eleventh Circuit forewarned many years ago:

> "It is my personal observation that too many practitioners have 'sold out to the client' . . . . What we must never forget is that we all serve as 'officers of the court'. Failing in this endeavor, we will lose much more than the case at hand." *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1454 (11th Cir. 1985).

33.   Atkins and the Paul, Weiss law firm are subject to sanctions under 28 U.S.C. Section 1927 for having unreasonably and vexatiously multiplying the proceedings. Finally, Atkins, Paul, Weiss and the Plaintiffs engaged in actions sanctionable under this Court's inherent power by improperly subpoenaing information from Gordon without notifying Delgado of the issuance of the subpoena on October 23, 2001 and on November 29, 2001, by obtaining Gordon's affidavit without notice to Delgado, delaying Gordon's deposition to protect Atkins from deposition, and modifying evidence in an attempt to bolster an unsupported Motion for Sanctions.

34.   While Plaintiffs repeatedly referred to this case as a "rather small employment dispute" (Hearing Transcript, p. 294), Plaintiffs have taken up all of the discovery period and caused Delgado to expend substantial amounts of money defending against their Motion for sanctions regarding alleged faxes and e-mails when Plaintiffs knew they had little or no evidence to link to Delgado. Then, after the October 30, 2001 hearing, apparently Plaintiffs felt even more unsure of their evidence, and the entire Gordon fiasco unraveled. In light of the clear lack of substantive evidence to support Plaintiffs' Motion for Sanctions, this Court finds that the Motion was brought "in bad faith" and that Atkins and the Paul, Weiss law firm unreasonably and vexatiously multiplied these proceedings with the aim of hoping that Delgado would admit that he sent some of the faxes or e-mails or that he would run out of money to defend himself. Therefore, an award of costs, expenses and attorneys' fees reasonably incurred by Delgado is awarded against Plaintiffs and against the Paul, Weiss law firm.

35.   Delgado is provided thirty (30) days in which to submit to the Court a submission of his attorneys fees and costs incurred through the process of defending against the Motion for Sanctions filed by Plaintiffs.

Respectfully submitted,

Page 20

Robert W. Rasch
Florida Bar No. 0890560
ROBERT W. RASCH, P.A.
201 Live Oak Lane
Altamonte Springs, Florida 32714
(407) 865-7473
Fax (407) 865-5979

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of this document has been served by facsimile and U.S. mail this 28th day of February, 2002 to Tucker H. Byrd, Esq., Greenberg Traurig, P.A., 111 N. Orange Avenue, Suite 2050, Orlando, Florida 32801.

Robert W. Rasch

Page 21