

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG,
a Swiss Corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada Corporation,

                **Plaintiffs,**

    v.

MIGUEL DELGADO BELLO,           **Case No.:  6:00-CV-1536-ORL-31JGG**

                **Defendant.**

MIGUEL DELGADO BELLO,

                **Counterplaintiff,**

    v.

EARTH TECH, INC.,

a California Corporation,

                **Counterdefendant.**

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF**
**LAW REGARDING SANCTIONS AGAINST DEFENDANT MIGUEL DELGADO**

100

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING SANCTIONS AGAINST DEFENDANT MIGUEL DELGADO

Plaintiffs Earth Tech, Inc. ("Earth Tech"), Tyco International Services, AG and

Tyco International (US) Inc. (collectively, "Tyco") respectfully submit these Proposed

Findings of Fact and Conclusions of Law Regarding Sanctions Against Defendant

Miguel Delgado.

## I.      THE PARTIES TO THIS ACTION

1.      Plaintiff Earth Tech, a wholly owned subsidiary of Tyco International Ltd.

organized under the laws of the State of California, is an architectural, engineering, and

construction firm based in Long Beach, California. (Cmplt. ¶ 5; Alpert Aff. ¶ 3.)[1]

2.      Plaintiff Tyco International (US) Inc. is a corporation organized and

existing under the laws of the State of Nevada, with its principal place of business in the

State of New Hampshire. Tyco is a global company engaged in numerous and diverse

business activities involving, among other things, the manufacturing and distribution of

electronic products, plastics, medical and health products, electronic security services,

and telecommunications services. (Cmplt. ¶ 3; Alpert Aff. ¶ 2.)

3.      Plaintiff Tyco International Services, AG is a Swiss Corporation, with a

principal place of business in Schaffhausen, Switzerland. (Cmplt. ¶ 4.)

4.      Defendant Miguel Delgado Bello ("Delgado") is a citizen and resident of

the State of Florida. (Delgado Dep. at 46-49, 73-81.) In September 1998, Delgado

became employed by Earth Tech as a result of Earth Tech's acquisition of Rust

Environment and Infrastructure, Inc. ("Rust"). Delgado's job was to help find business

opportunities for Earth Tech in Venezuela. (Alpert Aff. ¶ 5.)

---

[1]      Citations to the record are as follows: the Amended Complaint, dated October 10, 2001 ("Cmplt.");
the Transcript of the October 30, 2001 and January 18, 2002 Hearing ("Tr."); plaintiffs' hearing exhibits
("PX"); defendant's hearing exhibits ("DX"); designated deposition testimony ("[witness name] Dep. at
___"); and affidavits ("[affiant name] Aff. ___").

5. On July 7, 1999, Earth Tech terminated Delgado's employment. (Alpert Aff. ¶ 5.) In September 1999, Delgado was hired by another engineering firm, McKim & Creed. Delgado was fired by McKim & Creed in October 2000. (Hall Aff. ¶¶ 2, 4.)

## II. THE BACKGROUND OF THE CASE

6. In January 1999, Tyco and Earth Tech submitted a proposal to Pequiven, S.A. ("Pequiven") to construct and manage a major water supply system in Venezuela. Pequiven is a subsidiary of Petroleos de Venezuela, S.A., or "PDVSA," the Venezuelan government-controlled petroleum corporation. In July 1999, Tyco and Earth Tech were awarded the contract for what is called the "Jose Water Project." The project now supplies water to several petrochemical facilities in Venezuela. It is owned 75% by a Tyco affiliate and 25% by Pequiven. (Alpert Aff. ¶ 6.)

7. Pursuant to his job responsibilities, Delgado had introduced Earth Tech to the prospect of bidding on the Jose Water Project. However, Earth Tech terminated Delgado on July 7, 1999, citing his dishonesty, insubordination and refusal to refrain from engaging in unauthorized practices. (Alpert Aff. ¶ 7.) Among other things, Earth Tech learned that Delgado had entered into numerous contracts on Earth Tech's behalf -- mostly with his friends and relatives -- contrary to his instructions and without any authority. (Alpert Aff. ¶ 8; Alpert Dep. at 100-13.)

### The Venezuela and U.S. Litigations

8. On August 13, 2000, Delgado filed a lawsuit against Earth Tech and Tyco in Caracas, Venezuela seeking more than $500,000 in so-called "social benefits" allegedly owed to him as a consequence of his termination by Earth Tech. That litigation is still pending. (Alpert Aff. ¶ 9.)

9. On November 15, 2000, Earth Tech commenced this action, seeking damages for Delgado's breach of the duty of loyalty, including damages arising from the unauthorized contracts Delgado signed with his friends and relatives in Venezuela.

10.     On March 21, 2001, notwithstanding his own prior pending claims in Venezuela, Delgado sued Earth Tech in this action.  Delgado asserted various counterclaims for wages, bonuses and commissions allegedly owed for his work on the Jose Water Project.  By Order dated April 11, 2001, the Court dismissed Delgado's counterclaim for "Commission and/or Bonus Owed."  On April 19, 2001, Delgado filed an Amended Counterclaim, seeking $4,080,000 in damages.

11.     On October 5, 2001, Earth Tech filed an emergency motion with the Court for leave to file an amended complaint to assert claims against Delgado under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A), for registering the Internet domain name "tycovenezuela.com"; for a preliminary injunction under Section 43 of the Lanham Act enjoining Delgado from using the "tycovenezuela.com" domain name; and for sanctions against Delgado for refusing to comply with discovery and for sending a series of fabricated faxes and e-mails to senior Earth Tech and Tyco executives intended to harass plaintiffs and coerce plaintiffs into dropping their claims and paying Delgado a settlement.

12.     By Order dated October 9, 2001, the Court granted Earth Tech's motion for leave to file its amended complaint and scheduled a hearing on plaintiffs' motion for injunctive relief and sanctions for October 30, 2001.  The Court subsequently scheduled a further evidentiary hearing on the sanctions motion for January 18, 2002.[2]

13.     By Order dated November 5, 2001, the Court granted plaintiffs' motion for a preliminary injunction.  (Order Granting Plaintiffs' Motion For Preliminary Injunction ("Inj. Order")).

---

[2]     The evidentiary record received and considered by the Court includes two days of live testimony, forty four hearing exhibits, the various pleadings and memoranda submitted by plaintiffs and the defendant, nineteen affidavits with accompanying exhibits, designations from six depositions in excess of three hundred pages, and the complete deposition transcript of Philip Gordon.

### III.    THE FRAUDULENT AND EXTORTIONATE MESSAGES SENT BY DELGADO

14.    In the period from January 2001 through October 2001, senior executives of Earth Tech and Tyco, including the CEO of Earth Tech (Diane Creel) and the Chairman and CEO of Tyco (Dennis Kozlowski), received numerous faxes and e-mails apparently sent by PDVSA, the Venezuelan government-owned oil company and plaintiffs' business partner.  These faxes and e-mails threatened plaintiffs that they would suffer grave legal problems, political scandals and business losses in Venezuela if they did not settle their litigations with Delgado.

15.    These faxes and e-mails were not, in fact, sent by PDVSA.  They were sent by Delgado and made to appear as if they came from PDVSA in order to coerce plaintiffs into paying Delgado and withdrawing their claims against him.

### The Opening Threat From Delgado's Attorney

16.    The first threat Tyco received in connection with Delgado's claims was not disguised, but was sent by Delgado's attorney.  On March 7, 2000, the Chairman and CEO of Tyco, Dennis Kozlowski, received an e-mail from Delgado's attorney in Venezuela, Alejandro Teran.  (Alpert Aff. Ex. C.)  Teran represented Delgado in his lawsuit against Earth Tech and Tyco in Venezuela.  (Tr. at 167.)

17.    The e-mail from Teran made this straightforward threat:  if Tyco does not show a "wiliness [sic] to reconcile these issues," Delgado "will be forced to use other legal and public methods" to expose Tyco's supposed "illegal activities" and "scandals."  Delgado later made good on this threat when he went to the Venezuelan press in early 2001 with his accusations that Tyco and Earth Tech engaged in "irregularities," "juggling of companies," and "name change games" in order to obtain the Jose Water Project contract.  (Haven Aff. Exs. A and D.)  These newspaper stories were part of Delgado's campaign of harassment and public disparagement of plaintiffs.

### The Fabricated and Extortionate Faxes From "PDVSA"

18.     After Earth Tech commenced this action in November 2000, executives at
Earth Tech and Tyco began to receive other threats and warnings, but in the form of faxes
that appeared to come from PDVSA.  They were each identified as coming from
"PDVSA" and purported to express the views of PDVSA.  None of the faxes was actually
signed by any PDVSA official.  (Alpert Aff. ¶ 13, Ex. A.)

19.     Between January 29 and March 28, 2001, Tyco and Earth Tech received
seven of these "PDVSA" faxes.  The subject of each fax was the litigation with Delgado
and Delgado's accusations in the press.  (Tr. at 178-79.)  The faxes warned Tyco that it
will face a "criminal investigation," and that "these matters may get out of hand" in
Venezuela, if it does not settle with Delgado.  (Alpert Aff. Ex. A.)

20.     A fax supposedly sent by PDVSA on January 28, 2001 said that PDVSA
was told that Earth Tech was "trying to bribe the courts" and, therefore, "would like a
prompt resolution on these issues before they are taken out of contest [sic] by the media
and the PDVSA name get involved."  Another fax sent on February 15, 2001 warned the
Tyco Chairman that, based on information received from Delgado, "PDVSA is clear that
your corporation ow[e] these individuals [Delgado] for the services" and "this may bring
a criminal investigation against your company" because of Tyco's "lack and willing to
settle the above cases."  Since these "games are affecting our government and our
relationship in PDVSA," the fax went on, "it will be better to have settlement that win a
war that will jeopardize your company and PDVSA."  (Alpert Aff. ¶¶ 14-15, Ex. A.)

21.     The faxes were not, in fact, sent by PDVSA.  On March 6, 2001, in
response to an inquiry from the CEO of Earth Tech (Diane Creel), the President of
PDVSA (Eduardo Praselj) sent a letter stating that the faxes were not PDVSA documents.
(Alpert Aff. ¶ 16, Ex. D.)  Delgado admitted that he has no evidence to refute
Mr. Praselj's statement.  (Tr. at 185.)

## The Fabricated and Extortionate E-Mails

22.     Soon after Earth Tech alerted the President of PDVSA to the existence of the threatening counterfeit faxes, they ceased. The last fax was sent on March 28, 2001. However, Earth Tech and Tyco then began to receive similar threats in e-mails that also appeared to come from PDVSA. Between April 1, 2001 and October 16, 2001, Earth Tech and Tyco received twelve of these "PDVSA" e-mails. (Alpert Aff. Exs. B, E; Alpert Reply Aff. Ex. A; Haven Aff. Exs. A, D.)[3]

23.     Most of these e-mails were also sent to a third party, Albert Meyer, an analyst at Tice & Associates, an investment fund openly hostile to Tyco. (Alpert Reply Aff. ¶ 5.)

24.     The first series of these "PDVSA" e-mails came from an America Online ("AOL") account with the address "pdvsacitgo@aol." Citgo is the name of PDVSA's gasoline retailing business. (Alpert Aff. ¶ 17.) The remaining e-mails came from accounts established with UnitedStates.com, a free e-mail service provider, with these addresses: "citgopdvsa@venezuela.com," "pdvsacitgo@venezuela.com," and "pdvsa@unitedstates.com."

## The E-Mails From the AOL Account

25.     Between April 1, 2001 and April 18, 2001, Tyco and Earth Tech received a string of e-mails from an AOL account that made it look as if PDVSA was the sender: "pdvsacitgo@aol.com." (Alpert Aff. ¶ 17, Ex. B.)

26.     Like the fabricated faxes, these "PDVSA" e-mails attempted to intimidate Earth Tech and Tyco into dropping this action and settling with Delgado, or else face

---

[3]     The Tyco employee responsible for computer security (Douglas Haven) testified that each of the subject e-mails addressed to Tyco was sent to and received by Tyco's e-mail server, and that he preserved the e-mails in the form in which they were received. (Haven Aff. ¶ 2; Haven Reply Aff. ¶ 5; Haven Dep. 21-26.) Delgado's own expert testified that he had no reason to doubt that the e-mails were sent to and received by Tyco. (Taylor Dep. 73-74.)

criminal charges, negative publicity, trouble with the Venezuelan government, and damage to their business relationships in Venezuela.

27.     The text of each subject e-mail is reproduced in full in Appendix A. Examples of the threats from "pdvsacitgo@aol" are:

April 2, 2001[4]

"[Y]our company reputation plus high executive in PDVSA are at stake."

"We believe that it is time to bring this to a low profile conclusion as soon as possible.  Approaching these individuals with a serious attitude to negotiate a settlement . . . could benefit in slowing down these public relation campaigns against Tyco."

April 3, 2001

"Tyco and Tyco Flow Control are moving closer to a CRIMINAL INVASTIGATION."

"We in PDVSA would have no part in defending or hiding evidence nor protecting a company on these kinds of activities."

April 18, 2001

"Delgado was at PDVSA yesterday.  Delgado was talking to high ranking officials . . . The PDVSA and government officials do not understand this game they believe that it will not be beneficial for anyone."

28.     These e-mails defamed, as well as threatened, plaintiffs.  They were each sent to Albert Meyer, the stock analyst at Tice & Associates (ameyer@tice.com).  There is no evidence that Tyco or Earth Tech was ever subject to a criminal investigation in Venezuela.

**The E-Mails From the UnitedStates.com Accounts**

29.     On May 2, 2001, Earth Tech served a subpoena on AOL to try to determine the source of the "pdvsacitgo@aol" e-mails.  (PX 22.)  Delgado admitted that

---

[4]     This e-mail was sent to Tyco on April 2, 2001.  (Haven Aff. Ex. A; PX 10.)  The same e-mail was sent to Earth Tech on April 1, 2001.  (Alpert Aff. Ex. B.)

he learned about the subpoena. (Tr. 232-33.)  Thereafter, no further e-mails were received from "pdvsacitgo@aol."

30.    However, beginning on May 20, 2001 and continuing through October 16, 2001, Tyco and Earth Tech received a second string of threatening e-mails purporting to come from PDVSA.  These came from a different e-mail service provider, UnitedStates.com.  The addresses of these e-mails again made it appear as if PDVSA was the sender: "citgopdvsa@venezuela.com," "pdvsacitgo@venezuela.com," and "pdvsa@unitedstates.com." (Alpert Aff. ¶ 17, Ex. B; Alpert Reply Aff. ¶ 3, Ex. A.)

31.    These "PDVSA" e-mails were even more threatening and disparaging. For example:

May 20, 2001

"These legal complications and rumors are getting to the ears of President Chavez; he is very upset."

"The government and PDVSA would like to have these matters resolve before the game could back fire on you and hurt PDVSA image."

June 6, 2001

"[W]e may have another Watergate Venezuelan style . . .Tyco may want to exercise caution and try to resolve these matters without getting PDVSA in these affairs."

June 19, 2001

"Tyco is being investigated along with Earth Tech's executives for fraud and kick backs to Venezuelan officials and judges."

October 15, 2001

"Here at PDVSA, we are very worry on the latest development on your legal matters in Venezuela . . .  We have been told that your idea is destroying these individuals that help you."

October 16, 2001

"PDVSA and Government are worry that your company stubbornness will bring out to the public sensitive information."

"[S]ooner or later the labor benefits must be paid."

32.    These e-mails, most of which were sent to Albert Meyer at Tice & Associates, were false and defamatory.  There is no evidence that Tyco or Earth Tech was ever investigated in Venezuela "for fraud or kick backs," or that the President of Venezuela was "upset" about the lawsuits with Delgado.

## IV.    DELGADO'S THEFT OF TYCO'S TRADEMARK

33.    On August 28, 2001, Tyco and Earth Tech received an e-mail from "tycovenezuela@venezuela.com" announcing a new website entitled "tycovenezuela.com."  The e-mail described this website as Tyco's "real" website in South America.  (Alpert Aff. ¶ 22, Ex. E.)  The e-mail reads:

"Soon you will be able to view our real operation in South America in our new WEB page

TYCOVENEZUELA.COM come and visit us."

34.    Tyco had not, in fact, launched such a website or registered such an Internet domain name.  Rather, without Tyco's knowledge or consent, Delgado registered the domain name "tycovenezuela.com" on August 21, 2001.  (Alpert Aff. ¶ 22, Ex. F.)

35.    Delgado admits that he registered the "tycovenezuela.com" domain name, and did so just one week before Tyco and Earth Tech received the e-mail announcing the launch of the website.  (Delgado Aff., October 22, 2001, ¶ 6.)  That e-mail was sent from an account established at UnitedStates.com ("tycovenezuela@venezuela.com"), the same e-mail service provider used to send most of the threatening "PDVSA" e-mails.

36.    By Order dated November 5, 2001, the Court granted plaintiffs' motion for a preliminary injunction and ordered Delgado to transfer the domain name to Tyco. The Court held that Tyco had established a likelihood of success on its claim that Delgado violated 15 U.S.C. § 1125(d)(1)(A), the Anticybersquatting Consumer Protection Act, by unlawfully registering the domain name "tycovenezuela.com." (Inj.

Order at 2-6.) The Court also held that "the evidence suggests that Delgado sent an e-mail to Tyco announcing his website as the real Tyco website in Venezuela." (Inj. Order at 6.)

37.     Finding that Delgado had registered the "tycovenezuela" domain name with a bad faith intent to profit, the Court rejected Delgado's claim that he intended to prevent Tyco from committing fraud in Venezuela and to protect the Venezuelan Government. The Court concluded that Delgado's testimony was "incredulous." (Inj. Order at 8.) The Court found that Delgado registered the "tycovenezuela.com" domain name "in order to gain leverage in the suit pending between he and the Plaintiffs in Venezuela." (Inj. Order at 6.)

38.     On November 8, 2001, Delgado transferred the infringing domain name to Tyco. (PX 24.)

## V.     THE EVIDENCE THAT DELGADO SENT THE EXTORTION THREATS

39.     It is undisputed that PDVSA did not send the threatening faxes or e-mails. In fact, Delgado claims that Tyco and Earth Tech created and sent the e-mails to themselves. That claim is false and it is frivolous. The evidence is overwhelming that Delgado sent the e-mails as part of a campaign of harassment intended to avoid litigating this action and to pressure plaintiffs into abandoning their claims and paying him a settlement.

40.     To begin with, the circumstantial evidence points to Delgado as the source. The subject matter of all the faxes and e-mails is Delgado and his accusations against Earth Tech and Tyco. The content of the "PDVSA" faxes and e-mails mirrors the charges that Delgado himself made to the press in Venezuela. Delgado admits that he was the source of the newspaper articles that are attached to the e-mails. (Tr. at 204-05.)

41.     Delgado provided the Court with no plausible explanation or credible evidence as to why anyone, other than he, would be so nearly obsessed with his claims

and so highly motivated to harass plaintiffs. Delgado's stake in the litigations is extremely personal and he has a powerful motive to pressure plaintiffs into paying him money. According to Delgado, the monetary value of the Venezuela and U.S. litigations is "very significant to me." (Delgado Dep. at 20.) Between November 2000 and November 2001, Delgado earned only $2,000 as a "consultant" and received another $5,000 to $10,000 from his family. (Delgado Dep. at 13-20.) Delgado's lawsuits against plaintiffs are his only other apparent source of income.

### Delgado Created the UnitedStates.com E-Mail Accounts

42.     The direct evidence relating to the creation and use of the fraudulent e-mail accounts proves that Delgado is responsible for all the extortionate "PDVSA" e-mails.

43.     First, Delgado created and used the four e-mail accounts at UnitedStates.com: "pdvsacitgo@venezuela.com," "citgopdvsa@venezuela.com," "pdvsa@unitedstates.com," and "tycovenezuela@venezuela.com." The password used to access each of those accounts is Delgado's own, unique e-mail password: "crismar423542."[5]

44.     The CEO of UnitedStates.com, Philip Gordon, testified that each of these e-mail accounts was created by using the free e-mail service provided by UnitedStates.com. He testified that the password for each of these accounts is "crismar423542." That is also the password Delgado created and used for his personal e-mail account at United States.com. (Gordon Aff. ¶¶ 2-3; Gordon Dep. at 119-24.)

45.     Delgado has his own, personal e-mail account at UnitedStates.com called "migueld285@myplace.com." (Tr. at 146; PX 24 at 5.) The password Delgado selected

---

[5]     By Order dated December 4, 2001, on Plaintiffs' Motion for Protective Order and Restraining Order to Preserve Evidence, the Court prohibited Delgado from "changing, altering, or tampering with the password." The Court stated that it was "concerned that Defendant [Delgado] may take steps to spoliate evidence concerning e-mail communications at issue in this case."

and used for that e-mail account is "crismar423542." (Tr. at 236; Gordon Aff. ¶¶ 3-4.)
Delgado explained that "crismar" is an amalgam of the names of his children, Cristina
and Maria. (Tr. at 229-30.)

46. Since Delgado's personal password is the password for each of the
fraudulent "PDVSA" e-mail accounts at UnitedStates.com, Delgado plainly created those
accounts and is responsible for the extortionate e-mails sent to plaintiffs from those
accounts.

47. At the January 18, 2002 hearing, Delgado demonstrated for the Court that
he knows exactly how to create phony e-mail accounts at UnitedStates.com using other
people's names, and that he has actually done so. (Tr. at 160-64.)

48. Delgado's creation and use of the UnitedStates.com accounts is further
confirmed by the fact that one of those accounts ("tycovenezuela@venezuela.com") was
used to announce the launch of the "tycovenezuela.com" website, which Delgado
admittedly created. Furthermore, Delgado's attorney, Glenn Morales, sent e-mails to
Tyco using accounts created at UnitedStates.com. (Alpert Aff. Ex. C; Gordon Aff. ¶ 2.)
The e-mail Morales sent on July 27, 2001 had the exact same list of Tyco recipients, in
exactly the same order, as the e-mails Tyco received from "pdvsacitgo@venezuela.com"
on June 19, 20, and 27, 2001. (Alpert Aff. Ex. B; Tr. at 246-48.)[6]

### Delgado Created the "pdvsacitgo@aol.com" Account

49. Delgado also created the "PDVSA" e-mail account at AOL
("pdvsacitgo@aol.com"). He did so by using the American Express corporate account
number of his former employer, William Hall of McKim & Creed. The facts
demonstrating Delgado's creation of the "pdvsacitgo@aol" account, and his unauthorized

---

[6] Delgado claimed that Morales was not his attorney because he had not executed a power of attorney,
but he admitted that Morales was referred to him by a friend and that he had instructed Morales to "show
me what you can do." (Delgado Aff., October 22, 2001, ¶ 8.) Morales himself represented to Tyco that he
was Delgado's attorney. (Alpert Reply Aff. ¶¶ 6-7, Ex. B.)

use of Mr. Hall's American Express account, are established by the records from AOL and American Express. (PX 2, 3, 9, 13-15, 17-20; Hall Aff. Ex. A; Hall Reply Aff. Ex. A.)

50.     William Hall is the president of McKim & Creed, the architectural and engineering firm where Delgado worked after he left Earth Tech. (Hall Aff. ¶¶ 1-3.) Delgado was fired by McKim & Creed in October 2000. (Hall Aff. ¶ 4.)

51.     The AOL e-mail account entitled "pdvsacitgo@aol" was opened on January 28, 2001 in the name of "William Hall" at 249 N. Front Street, Wilmington, North Carolina, phone number 819-233-8091. (PX 2.) From this alone it is doubtful that Mr. Hall actually opened the account: the address and the phone number are each off by one digit, an apparent attempt to make the fraudulent account untraceable.

52.     The AOL billing information for the "pdvsacitgo@aol" account shows that Mr. Hall's American Express corporate credit card number (378261409641026) was used to open the account. (PX 3.)

53.     Mr. Hall did not set up or authorize the "pdvsacitgo@aol" account and did not send the offending e-mails. Mr. Hall had no interest in pretending to be PDVSA in order to intimidate Earth Tech or Tyco into settling with Delgado. (Hall Aff. ¶¶ 4-12.) Delgado offered no credible evidence to refute Mr. Hall's testimony, nor any plausible explanation why Mr. Hall would send phony e-mails and, thereby, commit potentially criminal acts.

54.     Delgado created the "pdvsacitgo@aol" account using Mr. Hall's name and American Express corporate account number. (Hall Aff. ¶ 12.) Mr. Hall discovered that after being fired by McKim & Creed in October 2000, Delgado made numerous unauthorized charges with Mr. Hall's American Express corporate account number. (Hall. Aff. ¶ 5.) Those fraudulent charges are as follows:

55.     On January 11, 2001, Mr. Hall's American Express account was charged for an American Airlines ticket to Dallas, Texas. The American Express receipt indicates that the charge was made by "Delgado/Miguel." (PX 15.) Delgado admitted that he frequently travels to Dallas. (Tr. at 224; Delgado Dep. at 235-39.)

56.     On January 12, 2001, Mr. Hall's American Express account was charged for an Avis car rental in Dallas, Texas. The American Express receipt indicates that the charge was made by "Delgado, Miguel." (PX 15.)

57.     On January 28, 2001, the "pdvsacitgo@aol" account was created using Mr. Hall's American Express account number. (PX 2, 3.)

58.     On January 30 and 31, 2001, Mr. Hall's American Express account was charged for an online database search on a website called "KnowX.com." (PX 13, 14.) KnowX.com charges customers for searches of public records. The person who made the searches identified himself as "pdvsacitgo" and listed his e-mail address as "pdvsacitgo@aol.com." (PX 14.)

59.     Mr. Hall did not use the KnowX.com website, nor did he authorize anyone to use his American Express account for that purpose. (Hall Aff. ¶¶ 9-11.) The subject of the searches demonstrates, in fact, that Delgado conducted the searches. Every search was for information about either Delgado himself, Earth Tech, or one of Delgado's other former employers. (Hall Aff. ¶¶ 6-8, Ex. A; PX 14.)

60.     On March 19, 2001, Mr. Hall's American Express account was charged for an Avis car rental in Orlando, Florida. The American Express receipt indicates that the charge was made by "Delgado, Miguel." (PX 17.) Orlando is Delgado's home in the U.S. and he is in Orlando frequently to visit his wife and children. (Tr. at 227-28.)

61.     On April 16, 2001, Mr. Hall's American Express account was charged for an Avis car rental in Orlando, Florida. The American Express receipt indicates that the charge was made by "Delgado, Miguel." (PX 18.)

62.     On April 22, 2001, Mr. Hall's American Express account was charged for an Avis car rental in Orlando, Florida.  The American Express receipt indicates that the charge was made by "Delgado, Miguel."  (PX 19.)  In addition, the Avis invoice for that car rental indicates that the car was rented to "Delgado Miguel," lists Delgado's Florida driver's license (FLD423542513840), and lists Delgado's Avis "Wiz" number (XK796T).  (PX 20.)

63.     Delgado admitted that those are his license and Wiz numbers.  (Delgado Dep. at 46; Tr. at 230.)  Delgado further testified that Avis requires that the person renting the car show a driver's license that matches the invoice: "they check your driver's license to see if it's the same driver's license they check." (Tr. at 275.)  Thus, no person other than Delgado could have gotten past the Avis counter without showing a driver's license.  Since Delgado's license number, name and Wiz number appear on the Avis profile, Delgado is the only person who could have possibly rented the car and charged that rental to Mr. Hall's American Express account.  (Tr. at 297.)

64.     Delgado denied incurring any of these American Express charges, but offered no credible evidence to refute Mr. Hall or explain why his name appears on all the American Express and Avis records.  (Tr. at 224-31.)

65.     In sum, the evidence shows that Delgado fraudulently used Mr. Hall's American Express corporate account number on numerous occasions, including the creation of the "pdvsacitgo@aol" account on January 28, 2001.

**Delgado Sent the "pdvsacitgo@aol.com" E-Mails**

66.     The evidence also proves that Delgado created and sent the e-mails from the "pdvsacitgo@aol" account.

67.     The first two e-mails sent to Tyco by "pdvsacitgo@aol.com" were received on April 2, 2001 and April 3, 2001.  (Haven Aff. Exs. A, D; PX 10, 11.)  Attached to each of these e-mails in electronic form was a Venezuelan newspaper article

about Delgado's claims.  Delgado admitted that he was the primary source for both articles.  (Tr. at 204.)  An examination of the attachments to the e-mails also proves that Delgado created and sent the e-mails.

68.     The e-mail from "pdvsacitgo@aol" on April 2, 2001 included as an attachment an electronic version of a March 26, 2001 newspaper article from "Tal Cual Lunes."  That attachment is entitled "Tal Cual Lunes 26 de Marzo de 2001.doc."  (Haven Aff. ¶ 3; Ex. A.)

69.     The e-mail from "pdvsacitgo@aol" on April 3, 2001 included as an attachment an electronic version of an April 2, 2001 newspaper article from "Tal Cual Lunes."  That attachment is entitled "Tal Cual Lunes 2 de Abril de 2001.doc."  (Haven Aff. ¶ 8; Ex. D.)

70.     The attachments to both these e-mails are in the form of a word processing file created using Microsoft Word (or "Word") software.  The newspaper articles were downloaded from the Internet (from www.talcualdigital.com) and then saved as Word documents.  The files containing the articles were then attached to the e-mails.  (Haven Aff. ¶¶ 4, 9.)

71.     Information identifying the person who created these Word documents, and the computer used to create and send the documents, is stored electronically within the documents themselves.  (Haven Aff. ¶¶ 5, 9.)  The identity of the "author," derived from the program registry on the user's computer, is attached automatically to every Word document created.  (Haven Aff. ¶¶ 6-9; Exs. B, E.)  The author of the documents attached to the April 2, and April 3, 2001 e-mails is "Miguel."  (Haven Aff. Exs. B, E.)

72.     In addition, the Microsoft Word software embeds certain background codes that track each document's electronic history.  These codes are known as "metadata."  The metadata contained within the Word documents attached to the April 2, and April 3, 2001 e-mails also establishes that "Miguel" created each document:

The documents were created with a Spanish-language version of Microsoft Word ("Documento Microsoft Word.")

The documents were stored on the C drive of the user's computer entitled "Miguel8C:" and "Miguel7C:" in a directory called "Misdocumentos."

The documents were created, edited and saved by "Miguel." Each time the document was accessed, the user is identified as "Miguel."

(Tr. at 15-22; Haven Aff. ¶¶ 7, 10, Exs. C, F.)

### Delgado Pretended to be "PDVSA" on His Own AOL Account

73. In addition to creating and using the phony "PDVSA" e-mail accounts at UnitedStates.com and AOL, Delgado logged on to his personal AOL account ("migueld285@aol") using the screen name "Pdvsa." (PX 9.) Although Tyco and Earth Tech did not receive e-mails from this particular account, this confirms Delgado's practice of posing as PDVSA on the Internet.

74. The AOL records for Delgado's personal e-mail account show the dates and times when Delgado logged on to AOL. (PX 9; Tr. at 190-91.) Delgado usually used the screen name "migueld285." (Tr. at 187-89.)[7]

75. However, on sixteen occasions between January 17, 2001 and April 18, 2001, Delgado logged on to his personal AOL account using the screen name "Pdvsa." (PX 9 at 7, 11, 12, 16, 17, 18, 19, 20, 21, 22.) On many occasions, Delgado logged on as "Pdvsa" in between sessions as "migueld285." (Tr. at 198; PX 9 at 7, 19, 20, 21, 22.) For example:

| | | |
|---|---|---|
| 01-04-18 | 06:51 | migueld285 |
| 01-04-18 | 06:48 | Pdvsa |
| 01-04-18 | 06:45 | migueld285 |
| | | |
| 01-02-01 | 06:17 | migueld285 |
| 01-02-01 | 06:13 | Pdvsa |
| 01-02-01 | 06:10 | migueld285 |

---

[7] Delgado's wife Cecilia used the screen name "cecil958" and Delgado's daughter Maria used the screen name "mari405." (Tr. at 187-89.)

(PX 9 at 7, 20.)

76.     Delgado explained that on these occasions, he logged on as "migueld285" and then quickly logged off; someone else then immediately logged on as "Pdvsa" and quickly logged off; and then he immediately logged back on as "migueld285." (Tr. 190-94.) Delgado's testimony that a "total stranger" repeatedly logged on to his AOL account as "Pdvsa," just minutes after and minutes before he logged on, is not credible. (Tr. 190-94.) The only credible evidence is that during the same period Delgado was sending the fabricated "PDVSA" faxes and e-mails to plaintiffs, Delgado was pretending to be PDVSA when he used his own AOL account.

### Delgado Is a Confirmed Liar and Fabricator of Documents

77.     Delgado has a proven history of fabricating documents and telling falsehoods about himself.

78.     Delgado lied to Earth Tech about his job qualifications when Earth Tech acquired Delgado's former employer Rust in 1998. On August 2, 1998, Delgado sent an e-mail outlining his professional background, education and expertise. (PX 35; Tr. at 260-65.) In order to keep his job at his new employer, Delgado represented that he had received a B.S. degree from the University of Texas. Delgado admitted that was false because he never graduated from the University of Texas. (Tr. at 260-65.) On April 15, 1999, Delgado sent another e-mail claiming to have graduated from the University of Texas. (PX 36; Tr. at 265.) That was false. (Tr. at 266.)

79.     Earth Tech also found in Delgado's personnel file, which it obtained from Rust, a diploma from the University of Texas indicating that "Miguel Delgado" received a Bachelor of Science in Civil Engineering in 1980. (PX 37; Alpert Dep. at 153-54, 204.) That document is a fraud. The registrar of the University of Texas at Arlington testified that the diploma is a fake. (PX 38; Prince Aff. ¶ 5.) Delgado fabricated the diploma in

order to deceive Earth Tech's predecessor and conceal the truth about his lack of qualifications.

## VI. DELGADO'S PERJURIOUS TESTIMONY AND SANCTIONABLE ACCUSATIONS

80.     In his pleadings, affidavits and appearance before this Court, Delgado gave false testimony and perjured himself in denying that he sent the extortionate faxes and e-mails. Delgado and his attorney, Robert Rasch, also made numerous false and insulting allegations that were made in bad faith and without any basis in fact.

81.     Delgado's perjurious testimony and frivolous allegations are as follows:

82.     Delgado denied under oath sending any of the faxes or e-mails to Earth Tech and Tyco. (Delgado Aff., October 22, 2001, ¶ 5; Delgado Aff., November 14, 2001, ¶¶ 2-3, 8; Tr. at 81-82, 141, 143-45, 186.) Delgado's denial was unequivocal: "I definitely did not send any e-mails purportedly from PDVSA." (Delgado Aff. November 14, 2001, ¶ 3.) That testimony was false.

83.     Delgado denied under oath using William Hall's American Express corporate card account to make any of the unauthorized and fraudulent charges between January 11, 2001 and April 16, 2001. (Tr. at 217-20.) That testimony was false.

84.     Delgado and his attorney alleged that Earth Tech or Tyco created the extortionate e-mails and "simply manufactured these e-mails to support the argument made in their Motion." (Delgado's Memorandum in Opposition to Motion for Injunction and for Sanctions ("Delgado's Memorandum"), dated October 22, 2001, at 7-8.) That allegation was frivolous and made without any basis in fact. The accusation is especially incredible given that most of the e-mails were sent to a third party, Albert Meyer of Tice & Associates. (Alpert Aff. Ex. B.) Tice is a bear fund that is openly hostile to Tyco and has tried to drive down Tyco's market value by encouraging investors to short-sell Tyco stock. (Alpert Reply Aff. ¶ 5.)

85.     Delgado and his attorney alleged that Tyco conspired with or paid Delgado's cousin Luis Delgado to obtain Delgado's e-mail password. (Delgado Aff., November 14, 2001, ¶¶ 4-5.) That allegation was frivolous and made without any basis in fact.

86.     Delgado denied under oath that he logged on to his personal AOL account with the screen name "Pdvsa" and testified that a "total stranger" was responsible for using the "Pdvsa" name on his AOL account. (Tr. at 190-94.) Delgado's denial was unequivocal: "I have no idea who might have logged onto my personal e-mail account as 'PDVSA'." (Delgado Aff., November 14, 2001, ¶ 3.) That testimony was false.

87.     Delgado denied under oath sending the e-mail from "tycovenezuela@venezuela.com" on August 28, 2001 announcing the website "tycovenezuela.com." (Delgado Aff., October 22, 2001, ¶ 6; Tr. at 81-82.) That testimony was false.

88.     Delgado and his attorney alleged that Delgado registered the "tycovenezula.com" domain name "in an effort to thwart Tyco's possible future fraudulent efforts." (Delgado's Memorandum, dated October 22, 2001, at 10; Delgado Aff., October 22, 2001, ¶ 6.) That allegation was frivolous and made without any basis in fact. The Court has found that Delgado registered the domain name in order to gain leverage in the litigation. (Inj. Order at 8.)

89.     Delgado denied under oath that he had knowledge of the fake University of Texas diploma or created it. (Delgado Dep. at 60-61; Tr. at 269-70.) That testimony was false.

90.     Finally, Delgado's attorney alleged at the January 18, 2002 hearing that counsel for plaintiffs (Robert Atkins) changed the passwords to the e-mail accounts at UnitedStates.com in order to frame Delgado. (Tr. at 321-23.) That accusation was made in bad faith, without any basis in fact, and with full knowledge that it was unsupported by

and contradicted by the evidence. In particular, Mr. Rasch represented to the Court that the deposition testimony of Philip Gordon, the CEO of United States.com, proved that the passwords for the e-mail accounts "were different on October 23, 2001 when Gordon first provided them to Mr. Atkins" and that Mr. Atkins thereafter changed the passwords to "crismar423542." (Tr. at 321.)

91.     Mr. Rasch's representation to the Court was false, and he knew it. The testimony of Mr. Gordon proves that the password for the phony "PDVSA" accounts was "crismar423542" from the start, and that Mr. Atkins did not change it. Mr. Gordon testified that:

> The first time he ever spoke to Mr. Atkins, or anyone from Earth Tech, was October 23, 2001 when he received a subpoena. (Gordon Dep. at 56-57, Ex. 2.)
>
> On that same day, October 23, 2001, he gave Mr. Atkins the password for the three e-mail accounts listed in paragraph 1 of the subpoena: "pdvsacitgo@venezuela.com," "citgopdvsa@venezuela.com," and "pdvsa@unitedstates.com." (Gordon Dep. at 66, Ex. 2.)
>
> The password he provided for those accounts "on the very first day" was "crismar423542." (Gordon Dep. at 110-112.)
>
> On November 21, 2001, he searched and confirmed that "crismar423542" was still the password for all the e-mail accounts, including Delgado's personal account. (Gordon Dep. at 99, Ex. 4.)
>
> He has no knowledge that the password for any of the accounts was changed between the date he first identified the password (October 23, 2001) and when he confirmed it on November 21, 2001. (Gordon Dep. at 123-25.)

## VII.   CONCLUSIONS OF LAW

### The Court's Inherent Power and Authority to Impose Sanctions

92.     The Court's inherent power to sanction a party and counsel is extremely broad, including the authority to dismiss a lawsuit, see Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962), and to assess monetary sanctions and fees where a party

has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska
Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975).

93.     In addition to the sanctioning authority contained in the Federal Rules,
see, e.g., Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, federal courts have the inherent power
to sanction a party or counsel for misconduct.  As the Supreme Court held in Chambers v.
Nasco, Inc., 501 U.S. 32, 43 (1991), "[i]t has long been understood that certain implied
powers must necessarily result to our Courts of justice from the nature of their institution,
powers which cannot be dispensed with in a Court, because they are necessary to the
exercise of all others." (citation omitted).  These powers are "'necessarily vested in
courts to manage their own affairs so as to achieve the orderly and expeditious
disposition of cases.'"  Id.  (citing Link, 370 U.S. at 630-31.)

94.     Courts within the Eleventh Circuit have imposed severe sanctions
pursuant to their inherent powers -- including the dismissal of claims -- where a party has
acted in bad faith, vexatiously, wantonly or for oppressive reasons. See, e.g., In re Mroz,
65 F.3d 1567, 1576 (11th Cir. 1995) (sanctions are available for litigation abuses and
"subjective bad faith"); Malautea v. Suzuki Motor Co. Ltd., 987 F.2d 1536 (11th Cir.
1993); Vargas v. Peltz, 901 F. Supp. 1572, 1579-82 (S.D. Fla. 1995) (dismissal
warranted under court's inherent power in light of persistent pattern of misconduct by
plaintiff, which included fraud on the court, fabrication of evidence, perjury, and
obstruction of discovery process); Corneal v. Niemic, No. 98-10052-Civ, 1999 WL
737884 (S.D. Fla. June 24, 1999) (dismissing claims with prejudice as a result of
plaintiff's bad faith, lies, and abuse).  The Court also has the inherent power to sanction
and impose fines on attorneys. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 765
(1980); Malautea, 987 F.2d at 1545.

95.     Under 28 U.S.C. § 1927, the Court also has the power to sanction an
attorney who "multiplies the proceedings in any case unreasonably and vexatiously." An

attorney can be ordered to pay costs and fees where he has engaged in "unreasonable and vexatious conduct" that multiplies the proceedings. Peterson v. BMI Refractories, 124 F.3d 1386, 1395-96 (11th Cir. 1997); see McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001).

### The Court's Authority to Dismiss Delgado's Claims

96.     In addition to ordering monetary sanctions, fees, and injunctive relief, the Court may dismiss an action pursuant to its inherent power. See, e.g., Mingo v. Sugar Cane Growers Co-op. of Florida, 864 F.2d 101, 102 (11th Cir. 1989); Wonders Trust v. Deaton, Inc., 200 F.R.D. 473, 479 (M.D. Fla. 2000); Corneal v. Niemic, No. 98-10052-Civ, 1999 WL 737884; Vargas, 901 F. Supp. at 1579-82.

97.     The power to dismiss applies to both attorney and party misconduct. "[W]here any other sanction would fail to cure the harm that the attorney's misconduct would cause to the defendant, dismissal is appropriate." Wonders, 200 F.R.D. at 479. The court in Vargas, 901 F. Supp. at 1579, held that dismissal of an action is appropriate where "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense" (citing Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)) (cause of action dismissed for "fraud on the court" where plaintiff attached a bogus agreement to the complaint).

98.     Richardson v. Cabarrus County Bd. of Educ., 151 F.3d 1030, 1998 WL 371999 (4th Cir. 1998), is particularly instructive. There, the Court of Appeals affirmed the lower court's dismissal of a lawsuit as a sanction for the plaintiff's creation and transmission of letters to potential defense witnesses, which, among other things, threatened them with harm if they did not settle with him.

99.     Perjury and fabrication of evidence are also grounds for dismissal.  In

McDowell v. Seaboard Farms of Athens, Inc., No. 95-609-Civ-Orl-19, 1996 WL 684140

(M.D. Fla. Nov. 4, 1996), this Court held: "Not only has Plaintiff fabricated evidence

that would have apparently been the linchpin of his case, Plaintiff has perjured himself in

his deposition testimony and in his testimony at the hearing.  While the Court finds that

Plaintiff's fabrication of the diary as evidence of discrimination is a sufficient basis for

dismissal of this suit, evidence of perjury by Plaintiff during his depositions and during

the hearing reinforce the Court's conclusion that Plaintiff holds in total disregard the

integrity of the judicial system." Id. at *8.  (emphasis added).  In Vargas, 901 F. Supp. at

1581-82, the action was dismissed because of plaintiff's persistent pattern of misconduct,

perjury and obstruction of discovery.

100.    Likewise, the court in In re Amtrak "Sunset Limited" Train Crash in

Bayou Canot, AL on September 22, 1993, 136 F. Supp. 2d 1251, 1264 (S.D. Ala. 2001),

held that dismissal is an appropriate sanction for perjury and a party's abuse of the

judicial process.  The factors to be considered are these:

> "(1) the degree of actual prejudice to the defendant; (2) the amount of
> interference with the judicial process; (3) the centrality of the fraud to the
> matters at issue in the litigation; (4) the culpability of the litigant and
> whether his actions were willful, intentional or in bad faith; (5) the due
> process/warning given to the offending party that dismissal of the action
> would be a likely sanction; (6) the efficacy of lesser sanctions; and (7) the
> public interest in the integrity of the judicial system."

Id. at 1267 (citations omitted).[8]  Applying these factors, the court held that the only

appropriate sanction for plaintiff's perjurious conduct was dismissal.  Id. at 1271.

---

[8]     The Third Circuit in Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984), held that
similar factors should be considered in determining whether to dismiss an action: "1) the extent of the
party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling
orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the
attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an
analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense."  See Perna v.
Electronic Data Systems Corp., 916 F. Supp. 388, 398 (D. N.J. 1995).

101.    Where a fraud on the court is the underlying misconduct -- as it is here -- the prejudice to the judicial system and the threat to the integrity of the courts can justify dismissal as a sanction. See Derzack v. County of Allegheny, Pa., 173 F.R.D. 400, 414 (W.D. Pa. 1996).

### Sanctions Are Warranted Against Delgado and His Counsel

102.    The misconduct of Delgado surpasses even the most demanding test for imposing sanctions. He has demonstrated a manifest disregard for the integrity of the judicial system, sought to obstruct the prosecution of plaintiffs' claims, and interfered with the fair administration of justice. He has done so repeatedly, and in several different ways.

103.    First, Delgado's attempt to extort a settlement, and force plaintiffs to abandon their claims, through threats, intimidation and harassment easily qualifies as bad faith, vexatious, wanton and oppressive behavior. Delgado fabricated threatening faxes and e-mails, which he disguised to look like warnings from an arm of the Venezuelan government and plaintiffs' business partner, in an effort to avoid litigating on the merits and to pressure plaintiffs to pay him a settlement out of fear of reprisals in Venezuela. The threats from Delgado's lawyer, Delgado's infringement of Tyco's trademark, and his disparaging stories in the Venezuelan press were part of the same scheme. Although Delgado's extortion plan did not succeed, it was abusive to both the plaintiffs and the Court, and escalated the cost of litigation.

104.    Second, Delgado committed a fraud on the Court and perjured himself by denying his involvement in sending the phony faxes and e-mails. He also testified falsely before the Court about, inter alia, his infringement of Tyco's tradename, his unauthorized use of William Hall's American Express account, his use of his personal AOL account, and his knowledge of the fake University of Texas diploma. Delgado's incredible and dishonest testimony were intended to deceive and defraud the Court.

105.    Third, Delgado and his attorney made numerous allegations against plaintiffs that they knew to be false, unfounded and offensive.  In particular, the accusations that plaintiffs engaged in "criminality," created the faxes and e-mails to frame Delgado, and that plaintiffs' counsel (Mr. Atkins) changed the passwords, are false and were presented to the Court in absolute bad faith and without any basis in fact.

### The Appropriate Sanctions

106.    Delgado's abuse of the Court, his false testimony, and his other egregious misconduct warrant that his counterclaims be dismissed; that his answer be stricken and judgment be entered in favor of Earth Tech on liability; that he be ordered to pay monetary sanctions, including the expenses and attorneys' fees incurred by plaintiffs; and that he be enjoined from filing any additional motions or claims against Earth Tech and Tyco without obtaining leave of this Court.  Given the severity of Delgado's misconduct and the likelihood that monetary sanctions will not suffice to punish or deter him, dismissing his counterclaims is both appropriate and necessary.

107.    Delgado's attorney, Robert Rasch, should also be sanctioned pursuant to the Court's inherent power and 28 U.S.C. § 1927.[9]  Mr. Rasch made many frivolous and fabricated accusations against plaintiffs and plaintiffs' counsel that he knew, or should have known, to be false.  Mr. Rasch also knowingly misrepresented the evidence to the Court, particularly the deposition of Philip Gordon.  Accordingly, because he has "multiple[d] the proceedings. . . unreasonably and vexatiously" and inflated the cost of litigation by presenting false arguments in Court and by making baseless charges of improper conduct against plaintiffs and their counsel, Mr. Rasch should be made responsible for paying costs, expenses, and fees in an amount to be determined by the Court.

---

[9]    Mr. Rasch has previously been sanctioned for making baseless motions and allegations.  See Riccard v. Prudential, Case No. 6:97-cv-1390-Orl-31DAB (M.D. Fla. Feb. 26, 2001).

**Dated: Orlando, Florida**
**February 28, 2002**

Respectfully submitted,

GREENBERG TRAURIG, P.A.
111 N. Orange Avenue, Suite 2050
Orlando, Florida  32801
Telephone:  407-418-2360
Facsimile:  407-841-1295

By: _____
Tucker H. Byrd, Esq.
Florida Bar No. 381632

JACKSON, LEWIS, SCHNITZLER
& KRUPMAN
390 North Orange Avenue
Orlando, Florida  32802
Telephone:  407-246-8440
Facsimile:  407-246-8441

Of Counsel:

Robert A. Atkins
Mathew S. Rosengart
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile:  212-373-2225

Attorneys and Trial Counsel for Plaintiffs Earth Tech, Inc.,
Tyco International Services, AG, and Tyco International (US) Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFFS'

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING

SANCTIONS AGAINST DEFENDANT MIGUEL DELGADO has been furnished via

facsimile and U.S. Mail this 28th day of February, 2002 to Robert Wallace Rasch, Esq.,

201 Live Oak Lane, Altamonte Springs, Florida 32714.

GREENBERG TRAURIG, P.A.
Attorneys for Plaintiff
450 South Orange Ave., Suite 650
Orlando, Florida 32801
Telephone:     (407) 420-1000
Facsimile:     (407) 841-1295

By: _____
    Tucker H. Byrd, Esq.
    Florida Bar No. 381632

Of Counsel:
Robert A. Atkins
Mathew S. Rosengart
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-373-2225

JACKSON, LEWIS, SCHNITZLER & KRUPMAN
390 North Orange Avenue
Orlando, Florida 32802
Telephone:     407-246-8440
Facsimile:     407-246-8441
Attorneys and Trial Counsel for Plaintiffs Earth Tech, Inc.,
Tyco International Services, AG, and Tyco International (US) Inc.

From:       Pdvsacitgo@aol.com
Sent:       Sunday, April 01, 2001  12:53 PM
To:         dcreel@earthtech.com; calpert@earthtech.com
Subject:    Tyco – Earth Tech in the news again......

Another article on Tyco &#8211; Earth Tech.  We believe that is not worthy to get into these public fights.  There is more to loose for you company, the dough&#8217;s that these media campaigns are crating on your company will be very difficult to overcome.

We believe that time it is becoming very critical, and keeping these matters on the public eyes will not help you nor your company.  Attorneys are promising you great solution to charge your company for more fees, but the bottom line is your company reputation plus high executive in PDVSA are at stake.

We know, cases are handled by Venezuelan attorneys to produce the highest revenue for themselves, as long that your attorneys know that there is a pot of gold at the other end, they will keep the fight to benefit themselves, not your company.

We believe that it is time to bring this to a low profile conclusion as soon as possible.  Approaching these individuals with a serious attitude to negotiate a settlement, in our opinion it is worthy, plus could benefit in slowing down these public relation campaigns against Tyco &#8211; Earth Tech.

We are your friend at the industry, that are very worry that the information that we have so far is not very favorable to you nor your company.  There are a lot of things coming out on these newspaper articles that may compromise your company in the Venezuela operations.

Best regards,

Pdvsa's friends

Alpert Affidavit, Ex. B

| | |
|---|---|
| From: | Pdvsacitgo@aol.com [mailto:Pdvsacitgo@aol.com] |
| Sent: | Monday, April 02, 2001  8:03 AM |
| To: | Czelusniak, Judith; almeyer@tice.com; McGee, Brad; bmead@tyco.geis.com; Kozlowski, Dennis; Blackstock, Jackson; mgarcia@tyco.geis.com; Swartz, Mark |
| Subject: | Tyco in Venezuela |

Another article on Tyco &#8211; Earth Tech.  We believe that is not worthy to get into these public fights.  There is more to loose for you company, the dough&#8217;s that these media campaigns are crating on your company will be very difficult to overcome.

We believe that time it is becoming very critical, and keeping these matters on the public eyes will not help you nor your company.  Attorneys are promising you great solution to charge your company for more fees, but the bottom line is your company reputation plus high executive in PDVSA are at stake.

We know, cases are handled by Venezuelan attorneys to produce the highest revenue for themselves, as long that your attorneys know that there is a pot of gold at the other end, they will keep the fight to benefit themselves, not your company.

We believe that it is time to bring this to a low profile conclusion as soon as possible.  Approaching these individuals with a serious attitude to negotiate a settlement, in our opinion it is worthy, plus could benefit in slowing down these public relation campaigns against Tyco &#8211; Earth Tech.

We are your friend at the industry, that are very worry that the information that we have so far is not very favorable to you nor your company.  There are a lot of things coming out on these newspaper articles that may compromise your company in the Venezuela operations.

Best regards,

       Pdvsa's friends

Haven Affidavit, Ex. A

| From: | Pdvsacitgo@aol.com [mail to:Pdvsacitgo@aol.com] |
|---|---|
| Sent: | Tuesday, April 03, 2001 7:38 AM |
| To: | Czelusniak, Judith; almeyer@ice.com; McGee, Brad; bmead@tyco.valves.com; Kozlowski, Dennis; Blackstock, Jackson; Belnick, Mark; mgarcia@tyco.valves.com; Swartz, Mark |
| Subject: | April 2, 2001 article on Criminal Charges to be filed against Tyco International and Tyco Flow Control |

Ladies and Gentleman,

Tyco and Tyco Flow Control moving closer to a CRIMINAL INVASTIGATION in Venezuela. If what the newspaper is pointing out that these case will be moved to a phase that it would be a shame for a company like yours to be on it.

We in PDVSA would have no part in defending nor hiding evidence nor protecting a company on these kinds of activities. Our position has been always to resolve these problem with these individuals under very low profile and quick, now appears to be moving into a high profile case that it is exactly what the industry does no like to be on it.

We continue, and believe that it would be better to resolve these issues with those individuals in private, trying to resolve these issues with attorneys and public forum only will damage our industry and your company. We also would recommend your attorneys activities, which there are the only winners on their recommendations.

This article is bringing back a shell game played in Venezuela and the criminal ramification on these activities.

Well, we would like to have these problems behind us as soon possible; if the General Attorney General of Venezuela investigates these charges would be very difficult to get out the public eyes and the news.

Best Regards,

Pdvsa's friends

Alpert Affidavit, Ex. B

From:       Pdvsacitgo@aol.com
Date:       Wed, 18 Apr 2001  07:27:29 EDT
Subject:    PDVSA – PEQUIVEN – TYCO INTERNATIONAL
To:         bmcgee@tyco.com, bmead@tyco.com, dkozlowski@tyco.com,
            jblackstock@tyco.com, Jczelusniak@tyco.com, mbelnick@tyco.com,
            almeyer@tice.com, mgarcia@tyco.com, mswartz@tyco.com

Well, Gentleman – The rumor continues in PDVSA about Tyco International and it is legal complications in Venezuela.

The information that we are getting is that the wall street newspaper has been asking question about the Tyco's operation in Venezuela, appears that an engineer name Jesus Aristimuno's wife at Citibank is moving some connections to release some information related to the Jose project and Tyco International, also El Nacional is asking a lot of questions about these contracts.

We also have had information that Delgado was at PDVSA yesterday, Delgado was talking to high ranking officials, appears that now Tyco have two lawsuits to deal with, one for over two million in Venezuela and another for over two millions in Orlando, United States.

Delgado was telling officials that the Judge has approved his counterclaim against Tyco in Orlando for over two million dollars.

The PDVSA and government's officials do not understand this game but they believe that it will not be beneficial for anyone involves.

Please, take care your friend.

Alpert Affidavit, Ex. B

| From: | citgopdvsa@venezuela.com. <citgopdvsa@venezuela.com> |
|---|---|
| To: | dcreel@earthtech.com <Dcreel@earthtech.com>; <dkozlowski@tyco.com> <dkozlowski@tyco.com> |
| Sent: | Sun May 20 23:43:35 2001 |
| Subject: | Venezuela Legal Matters |

These legal complications and rumors are getting to the ears of President Chavez; he is very upset about the different stories on these matters. PDVSA has tried it's best to diffuse these matters, but the evidence brought in by the attorneys are showing a different angle on these matters.

The information that we have been getting is telling us, that Earth Tech Inc. did not purchase Grupo Rust International de Venezuela C.A. that change names in December 1998 to Earth Tech Venezuela C.A., as shown by your attorneys in Orlando, making these facts very clear to us.

PDVSA and the government are mystifying by these activities that were taken place without the proper notifications.

There is a suit against a Delgado in Florida, claiming lack of loyalty on Delgado's part due to contracts signed on behave of Grupo Rust International de Venezuela C.A., a company that it was not purchase by Earth Tech Inc. The government does not understand this harassment against a Venezuelan citizen for contract that could not have caused any damages to your company due to the fact that Earth Tech Inc. never purchase such entities. Paying contracts for companies that you have not purchase are illegal transactions in Venezuela and blaming a third party it is even worst.

All these legal games are having a negative appreciation on your companies in the Venezuela market. The government is looking into these matters with a great diastase that a corporation plays such games, just to harass a past employee which was a key element on bringing your company and PDVSA together.

The government and PDVSA would like to have these matters resolve before the game could back fire on you and hurt PDVSA image.

We have a saying in Venezuela that it is better a bad settlement that a good trial__. Attorneys are the only winners on these matters. Money is not always the main ingredient to win legal matters...

Best Regards,

GL

Doc#: NY6: 161068.1

Alpert Affidavit, Ex. B

From:    citgopdvsa@venezuela.com
To:      "McGree, Brad" <bmcgee@TYCO.COM>, bmead@tyco.com, "Kozlowski,
         Dennis" <dkozlowski@TYCO.COM>", "Blackstock, Jackson"
         <jblackstock@TYCO.COM>, "Czelusniak, Judith
         <jczelusniak@TYCO.COM>, "Belnick, Mark" <mbelnick@TYCO.COM>,
         almeyer@tice.com, mgarcia@tyco.com, "Swartz, Mark"
         <mswartz@TYCO.COM>
Subject: Venezuela /Tyco International
Date:    Wed, 6 Jun 2001 17:39:18-0400

Ladies and Gentleman:

The PDVSA group does not understand all Tyco's legal maneuvers going on against
Aristimuno and Delgado's.

The rumors by all the legal actions taken and the court documents are leading to believe
that Tyco is hidden something really big and they are investigating several people in
PDVSA and the Government including the attorneys and the Judges on these cases,
closely related to Tyco/Earth Tech.

PDVSA is starting to believe that there is a lot of money going in different place to hide
these business transactions.  We hope that all these rumors are incorrect, because if they
are developing to be corrected, we may have another Watergate Venezuelan style.

There are several international newspaper following these events closely, we know for a
fact that the Financial Times has been asking questions to local news reporter.

PDVSA does not understand the gains, but they do understand the potential loses, if these
events become another Watergate.

Just to keep you inform, that Tyco may want to exercise caution and try to resolve these
matters without getting PDVSA in these affairs, and without kick backs to Judges related
to the attorneys handling the cases for Tyco.

Best Regards,

Alpert Affidavit, Ex. B

From: pdvsacitgo@vebezyeka,cin
Sent: Tuesday, June 19, 2001 12:02 PM
To: McGee, Brad; bmead@tyco.com; Kozlowski, Dennis; Blackstock, Jackson; Czelusniak, Judith; Belnick, Mark; almeyer@tice.com; mgarcia@tyco.com; Swartz, Mark
Subject: Tyco International/Earth Tech – Venezuela

Well, Everyone is worry about all the events that are taking place. All the investigators from the USA in Venezuela has alerted the US Embassy security affairs.

Tyco is being investigated along with Earth Tech's executives for fraud and kick backs to Venezuelan officials and Judges. Appears that the allegations have a great foundations. Attorneys in Venezuela appears to be talking to the investigators.

PDVSA is worry about his partners and all these allegations, they may consider to declare the contract void.

I am trying to alert that the escalation is no good for PDVSA and his partners.

Best Regards,

Alpert Affidavit, Ex. B

From:     pdvsacitgo@venezuela.com
Sent:     Wednesday, June 20, 2001  6:04 PM
To:       McGree, Brad; bmead@tyco.com; Kozlowski, Dennis; Blackstock, Jackson;
          Czelusniak, Judith; Belnick, Mark; almeyer@tice.com; mgarcia@tyco.com;
          Swartz, Mark
Subject   Tyco International / Venezuela

Ladies and Gentleman,

The stakes are getting higher for the legal complication of Tyco/Earth Tech in Venezuela.
These matters are moving to New York close to the Wall Street.  Appears that a big
attorney firm in New York took their case.

Aristimuño and Delgado's are stepping up to those circles, as far we know in PDVSA.
These games may get very complicated before anything gets resolve.  We have suggested
them to use arbitration to resolve those issues.

Best Regards,

Alpert Affidavit, Ex. B

From:      pdvsacitgo@venezuela.com
Sent:      Wednesday, June 27, 2001  8:54 AM
To:        McGee, Brad; bmead@tyco-com; Kozlowski, Dennis; Blackstock, Jackson;
           Czelusniak, Judith; Belnick, Mark; almeyer@tice.com; mgarcia@tyco.com;
           Swartz, Mark
Subject:   Earth Tech/Tyco

Here is your friend from PDVSA writing one more time about Tyco/Earth Tech legal
complications in Venezuela.

Mr. Aristimuno has been in the industry talking to several people and showing evidence
of wrong doing on the part of Earth Tech / Tyco, they have strong evidences and they are
vigorous pursuing these cases against you group of companies.

In the industry do not understand what Mr. Albert your general consul is after on these
matters, because the damage to your company and affiliates is already going thru at this
market place.  Aristimuno is vigorously perusing these matters.  Your general counsel has
to stop, and think that he is already spent over $ 500.000,00 on legal fees and they are
increasing every day.  Your company has been fine 30% against attorney's moves on the
trials in country.  They are expected to get fine aging for another 30%.  This represent
just in fines over $ 800.000,00.  They are looking today close to over a million dollars
without any resolutions.  We understand this could it have been resolve for half of that. .

Mr. Albert appears that he should re think that he may be causing more damage than
good by his actions.

Aristimuno and other appears also vigorous determine to collect their professional fees
for the Jose project as appear to be entitled.

Just a thought, hormones do not make the right decisions for corporations.  Common
sense and understanding of the potentials choices are better allies.

Alpert Affidavit, Ex. B

From:     tycovenezuela@venezuela.com [mailto:tycovenezuela@venezuela.com]
Sent:     Tuesday, August 28, 2001 11:19 AM
To:     bmead@tyco.com; McGee, Brad; Kozlowski, Dennis; Blackstock, Jackson; Czelusniak, Judith; Belnick, Mark; almeyer@tice.com; mgarcia@tyco.com; Swartz, Mark; Diane Creel; Charles Alpert
Subject:  New WEB site

Soon you will be able to view our real operation in South America in our new WEB page

TYCOVENEZUELA.COM come and visit us.

Alpert Affidavit, Ex. E

From:    &lt;pdvsa@unitedstates.com&gt;
To:      &lt;bmcgee@tyco.com&gt;; &lt;dkozlowski@tyco.com&gt;; &lt;jblackstock@tyco.com&gt;; ,
           jczelusniak@tyco.com&gt;; &lt;mbelnick@tyco.com&gt;; &lt;almeyer@tice.com&gt;;
           &lt;mswartz@tyco.com&gt;
Sent:    Monday, October 15, 2001  11:31 AM
Subject: Supreme Court Ruling

Here at PDVSA, we are very worry on the latest development on your legal matters in Venezuela.

We are attaching the ruling that it came out from the Supreme Court last week.

The main problem is that PDVSA is involved in a problem that it is only Tyco's and Earth Tech Inc. Our joint company Aguas Industriales de Jose C.A. according to the last week ruling which it can not be appealed, it is included also. (See attached ruling).

We have been told that your idea is destroying these individuals that help you and obtained these opportunities for your corporations. We think that the theory of the boomerang may take place; also spending over $ 900,000.00 to make a point, seen this kind of behavior in our business is kind of foolish.

As a businessman this operations do not make any sense, but it is time to re think your spending on more beneficial opportunities for your corporations. Only money will not assure you to win these cases against these individuals, also we have received information of your attorney threaten these individual with body harm, very dangerous to go to those extremes.

We would like to see you as our partner in Venezuela, but his situation in our opinion may be getting out of hand.

Sincerely,

Your very truly friend at PDVSA

Alpert Reply Affidavit, Ex. A

From: &lt;pdvsa@unitedstates.com&gt;
To; &lt;bmcgee@tyco.com&gt;; &lt;dkozlowski@tyco.com&gt;; &lt;jblackstock@tyco.com&gt;;
&lt;jczelusniak@tyco.com&gt;; &lt;mbelnick@tyco.com&gt;; &lt;almeyer@tice.com&gt;;
&lt;mswartz@tyco.com&gt;
Sent: Tuesday, October 16, 2001 4:22 PM
Subject: Newspaper on PDVSA and Tyco in Venezuela

PDVSA and Government are worry that your company stubbornness will bring out to the public sensitive information in our ways of doing business in our corporation.

We have had several newspapers and also the US Embassy asking questions about these matters. (See attached article).

We believe that your corporation, with the Supreme Court Ruling against your Group of Tyco/Earth Tech companies doing business in Venezuela may look for ways to resolve these issues.

Your corporations despite what your attorneys in country are saying the cases are lost, sooner or later the labor benefits must be paid as per the Supreme Court Ruling of last week.

Let's no get into a public and costly defenses of matters that we do think should be aired on newspapers.

Alpert Reply Affidavit, Ex. A