UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

---

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG,
a Swiss Corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada Corporation,

    Plaintiffs,

v.

MIGUEL DELGADO BELLO,

    Defendant.

---

MIGUEL DELGADO BELLO,

    Counterplaintiff,

v.

EARTH TECH, INC.,
a California Corporation,

    Counterdefendant.

---

Case No. 6:00-CV-1536 ORL-31JGG

AFFIDAVIT OF ROBERT
ATKINS IN SUPPORT OF
APPLICATION FOR
ATTORNEYS' FEES AND COSTS

STATE OF NEW YORK   )
                                ) ss.
COUNTY OF NEW YORK )

Robert A. Atkins, being duly sworn, deposes and states:

1.    I am a member of the firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"), counsel for plaintiffs in this action.

2.    I submit this affidavit in support of plaintiffs' application for an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and the inherent

Doc#: NY6: 144215.1

103

powers of this Court. Plaintiffs seek an award of the attorneys' fees and costs reasonably expended in connection with moving for and obtaining the preliminary injunction granted by the Court by Order dated November 5, 2001, and in connection with the making of this application. (Order Granting Plaintiffs' Motion For Preliminary Injunction ("Order"), Case No. 6:00-cv-1536-Orl-31AB (M.D. Fla. Oct. 9 2001). (A copy of the Order is annexed hereto as Exhibit A.) The fees and costs sought to be recovered here were incurred as a direct result of defendant's violation of the Anticybersquatting Consumer Protection Act (the "ACPA") by unlawfully registering the domain name "tycovenezuela.com."

3.  At this time, plaintiffs are seeking an award for work performed in connection with plaintiffs' trademark claims and the preliminary injunction motion in the period from September 1, 2001 through December 31, 2001 in the amount of $38,457.36, or such other amount as the Court deems appropriate. Applying rates applicable in Orlando, the amount sought by plaintiffs is comprised of $25,400.00 for work performed by attorneys at my firm; $5,050.00 for non-legal support staff, including computer and technology personnel, paralegals, and library staff; and $8,007.36 for disbursements and related charges.

**Background of the Case**

4.  Plaintiff Earth Tech, Inc. ("Earth Tech") commenced this action on November 15, 2000 against Defendant Miguel Delgado Bello ("Delgado"), alleging that Delgado breached his duty of loyalty to Earth Tech by, <u>inter alia</u>, entering into unauthorized contracts and dishonestly failing to notify Earth Tech of the existence of such unauthorized contracts.

5.  Since the commencement of this action, Delgado has engaged in a campaign of threats, harassment, and defamation designed to deter and intimidate plaintiffs into abandoning their claims and pay him an unwarranted settlement. Delgado has since perjured himself, we believe, by denying this conduct under oath. As reflected in plaintiffs' previous memoranda, Delgado's scheme involves the creation and transmission of a series of phony faxes and e-mails that were sent to high-ranking executives of plaintiffs which, it appeared, came from PDVSA, the government-controlled oil company in Venezuela and plaintiffs' business partner. These messages threatened criminal investigations, the exposure of "scandals," and other damage to Earth Tech's and Tyco's businesses and reputations if Delgado was not paid a settlement.

6.  As part of this same extortion and harassment scheme, on August 21, 2001, Delgado registered the Internet domain name "tycovenezuela.com" and began construction of a website with the same unauthorized use of the Tyco trademark. On August 28, 2001, plaintiffs received an e-mail from "tycovenezuela@venezuela.com" announcing the creation of Delgado's unlawful website. As the Court subsequently found, the evidence indicates that Delgado himself sent that bogus e-mail as part of his effort to gain leverage in his litigation with plaintiffs. (Order at 6.)

7.  On October 5, 2001, plaintiffs filed emergency motions for (1) leave to file an amended complaint asserting trademark infringement claims; (2) immediate injunctive relief under section 43 of the Lanham Act; and (3) sanctions under the Court's inherent powers and Fed. R. Civ. P. 37. On October 9, 2001, the Court granted the motion to add Tyco International Services, AG and Tyco International (US), Inc. as additional plaintiffs, and to add causes of actions under the Lanham Act, 15

U.S.C. §§ 1125 et. seq., including the ACPA, and the Florida Deceptive and Unfair Practices Act, F.S.A. § 501.204. The Court further ordered a hearing on plaintiffs' motions for injunctive relief and sanctions. (Order Granting Plaintiffs' Motion For Preliminary Injunction, Case No. 6:00-cv-1536-Orl-31AB (M.D. Fla. Oct. 9 2001).)

8. After a hearing held on October 30, 2001, the Court issued an order and opinion on November 5, 2001 finding that plaintiffs had established a likelihood of success on the merits under the ACPA and irreparable injury, and that the balancing of the harms and the public interest tipped in plaintiffs' favor. The Court, therefore, granted plaintiffs' motion for a preliminary injunction and entered an order in plaintiffs' favor enjoining Delgado's continued use of the "tycovenezuela.com" domain name, enjoining Delgado from auctioning, offering for sale, or in any way transferring the "tycovenezuela.com" domain name to anyone, and ordering Delgado to transfer the domain name to Tyco. (Order at 9.) Thereafter, the defendant transferred the domain name to plaintiffs.

9. Our work on behalf of plaintiffs in connection with Delgado's cybersquatting was complicated by a number of factors.

10. First, defendant's unexpected actions on August 21, 2001 (registering the "tycovenezuela" domain name) required plaintiffs to seek permission to amend the complaint and to seek, and the Court to schedule, an expedited preliminary injunction hearing that, effectively, compressed the work of many months into a two month period, requiring intensive and concentrated activity by plaintiffs' counsel.

11. Second, as a result of the fictitious nature of the e-mails and Delgado's efforts to disguise himself as their true source, litigating the preliminary

4

injunction hearing required counsel to undertake extensive legal and factual research in order to identify and understand issues related to the creation and transmission of electronic communications.

**The Work Performed in Connection with Plaintiffs' Trademark Claims and the Preliminary Injunction Hearing**

12. The work performed by Paul Weiss in connection with plaintiffs' trademark claims and preliminary injunction hearing included a factual investigation into Delgado's unlawful domain name registration, and his August 28, 2001 e-mail regarding "tycovenezuela.com"; an investigation regarding who was the true source of the fictitious e-mails at issue; legal research regarding cybersquatting and the relevant provisions of the ACPA; interviewing client witnesses; preparation of Memorandum of Law and Reply Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction and Sanctions; an investigation of and responding to Delgado's Memorandum of Law in Opposition to Motion for Injunction and for Sanctions; preparation for and presentation of oral argument at the October 30, 2001 hearing; development of electronic demonstrative exhibits for the hearing; insuring compliance with this Court's November 5, 2001 Order; advising the client on the domain name transfer; and the preparation of this fee application.

13. The time spent and the costs incurred by Paul Weiss counsel in connection with plaintiffs' trademark claims and for which compensation is sought were reasonably expended in counsels' efforts to vindicate plaintiffs' rights under the ACPA. Based on all the work performed, plaintiffs' reasonably incurred $38,457.36 in attorneys' fees and costs. This amount relates solely to the trademark related issues and not the motion for sanctions arising from Delgado's counterfeit faxes and e-mails. As discussed

5

below, I have included only time and expenses reasonably incurred in asserting the trademark claims, obtaining the injunction against Delgado's cybersquatting, and submitting this for application.

14. I have determined that the number of hours spent by Paul Weiss attorneys in connection with plaintiffs' trademark claims and the preliminary injunction hearing, and the amount of fees incurred ($25,400), are as follows:

|  | Hours | Hourly Rate[2] |
|---|---|---|
| Partner | 28 | $250 |
| Associates (3) | 160 | $115 |
| **TOTAL** | **188** | |

15. Several computer and technology personnel and paralegals assisted the Paul, Weiss attorneys in preparing for hearing, including work on hearing exhibits and court papers, assisting the attorneys in compiling pre-hearing submissions, and assisting the attorneys at hearing. In addition, six members of Paul Weiss's professional library staff obtained research materials on the ACPA. The number of hours spent by the non-legal support staff (including library staff and technology support personnel) in connection with plaintiffs' trademark claims and the preliminary injunction hearing is 101.0. Using applicable rates for such work, the corresponding fees incurred are $5,050.00.

---

[2] These hourly rates have been deemed reasonable by this Court in Riccard v. Prudential Insurance Company of America, Case No. 6:97-CV-1390-Orl31B (Order dated October 6, 2000), and the hours incurred have been adjusted downward to conform with Riccard. Because the actual rates charged by Paul Weiss are higher, the actual amount of attorneys' fees incurred and paid by plaintiffs was approximately $70,695.

6

Doc#: NY6: 144215.1

16. Finally, plaintiffs incurred expenses and other related charges, including court costs and litigation expenses (reporting services); out-of-town travel; word processing; overtime; and duplicating in the total amount of $20,164.16 between September 1, 2001 and October 30, 2001. I have determined that $8,007.36 was incurred in connection with plaintiffs' trademark claims and preliminary injunction hearing.

### Conclusion

17. For the reasons set forth above and in plaintiffs' supporting memorandum, for the period of September 1, 2001 through and including December 31, 2001, I respectfully submit that this Court should award the fees sought by plaintiffs for work performed by counsel ($25,400.00); non-legal support staff ($5,050.00); and for disbursements and related charges ($8,007.36); in the aggregate amount of $38,457.36.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR ATTORNEYS' FEES AND COSTS AND FOR STATUTORY DAMAGES and AFFIDAVIT OF ROBERT ATKINS IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND COSTS has been furnished via facsimile and U.S. Mail this 1st day of March, 2002 to Robert Wallace Rasch, Esq., 201 Live Oak Lane, Altamonte Springs, Florida 32714.

GREENBERG TRAURIG, P.A.
Attorneys for Plaintiff
450 South Orange Ave., Suite 650
Orlando, Florida 32801
Telephone:   (407) 420-1000
Facsimile:   (407) 841-1295

By: _____   FL Bar No.
for Tucker H. Byrd, Esq.                491411
Florida Bar No. 381632

Of Counsel:
Robert A. Atkins
Mathew S. Rosengart
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-373-2225

JACKSON, LEWIS, SCHNITZLER & KRUPMAN
390 North Orange Avenue
Orlando, Florida 32802
Telephone:   407-246-8440
Facsimile:   407-246-8441
Attorneys and Trial Counsel for Plaintiffs Earth Tech, Inc.,
Tyco International Services, AG, and Tyco International (US) Inc.


RECYCLED



# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EARTH TECH, INC. a California
Corporation,
TYCO INTERNATIONAL SERVICES, AG,
a Swiss Corporation and TYCO
INTERNATIONAL (US) INC., a Nevada
Corporation,

    Plaintiffs/Counter-Defendants,

-vs-               Case No. 6:00-cv-1536-Orl-31JGG

MIGUEL DELGADO BELLO,

    Defendant/Counter-Plaintiff.

---

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This Court has for its consideration Plaintiffs' Emergency Motion for Immediate Injunctive Relief Under Section 43 of the Lanham Act (Dkt. 28), Plaintiffs' Memorandum in Support of Their Motion for a Preliminary Injunction (Dkts. 29 & 50), Plaintiffs' Affidavits and in Support of Their Motion and accompanying exhibits (Dkts. 32 - 36), Defendant's Memorandum in Opposition to Plaintiffs' Motion and accompanying exhibits (Dkt. 46), and Defendant's Affidavit in Opposition to Plaintiffs' Motion (Dkt. 47). The Court has carefully considered the Plaintiffs' motion, the accompanying memorandum, the Plaintiffs' supporting affidavits and exhibits attached thereto, Defendant's memorandum and the accompanying exhibits and supporting affidavit, and argument of both Plaintiffs and Defendant at the hearing on October 30, 2001, and is otherwise fully advised in the premises.

### Preliminary Injunction Standard

Injunctive relief is an extraordinary and drastic remedy. <u>United States v. Lambert</u>, 695 F.2d 536, 539 (11th Cir. 1983). As such, "its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." <u>Id.</u> To prevail on a motion for preliminary injunction, a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that plaintiff's injury outweighs the injury to the defendant; and (4) that the requested relief would not disserve the public interest. <u>Lucero v. Operation Rescue of Birmingham</u>, 954 F.2d 624, 627 (11th Cir. 1992).

Vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden. <u>See Atari Games Corp. v. Nintendo of Am., Inc.</u>, 897 F.2d 1572, 1575 (Fed. Cir. 1990). Furthermore, affidavits based on personal knowledge are accorded more weight than affidavits based upon mere belief or hearsay. <u>See</u> 13 <u>Moore's Federal Practice</u> § 65.23[2] (3d ed. 2000). Rule 52(a) of the Federal Rules of Civil Procedure requires that, "in granting or refusing interlocutory injunctions the court shall . . . set forth the findings of fact and conclusions of law which constitute the grounds of its action."

### Likelihood of Success on the Merits

Plaintiffs seek a preliminary injunction preventing Delgado's use of the domain name "tycovenezuela.com.."[1] Plaintiffs argue that such use of the domain names violates Section 43(d) of the Lanham Act, also known as the Anti-cybersquatting Protection Act ("ACPA"), 15 U.S.C. §

---

[1] Earth Tech is an affiliate of Tyco.

-2-

1125(d). In his response, Delgado contends that he lacks the bad faith intent required under the ACPA.

The ACPA provides for civil liability when a person, with a bad faith intent to profit from a protected mark, registers or uses a domain name that is identical or confusingly similar to the famous or distinctive mark. 15 U.S.C. § 1125(d)(1)(A). Since Delgado has admitted to registering the domain name "tycovenezuela.com," the next inquiry is whether the domain name is identical or confusingly similar to the "Tyco" mark. In determining whether a domain name is confusingly similar to a trade name or mark, courts look at a totality of the circumstances. See Wella Corp. v. Wella Graphics, Inc., 37 F.3d 46, 48 (2d Cir. 1994). In this vein, a domain name may be confusingly similar even if it is not identical to the mark. Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 496-97 (2d Cir. 2000).

In the instant case, the word Tyco is encompassed in Delgado's registered domain name "tycovenezuela.com." Furthermore, "tycovenezuela.com" is both practically identical and confusingly similar to Tyco's other registered and licensed domain names including: tyco.com, tyco.co.nz, tycoint.com, tyconet.com, tycoventures.com, tycovalves.com, tycothermal.com, tycoservies.com.au, tycofire.com, tycofp.com, tycoadhesives.com, tycoelectronics.com, and tycohealthcare.com. Finally, Delgado is not using a derivation of the "Tyco" mark, but rather the exact mark. The domain name "tycovenezuela.com" would be a logical domain name for Tyco's operations in Venezuela.

In his response, Delgado does not dispute these contentions. Therefore, this Court finds that the domain name "tycovenezuela.com" is confusingly similar to Tyco's mark. See generally

-3-

Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1055 (9th Cir. 1999) (finding that the name "moviebuff.com" was confusingly similar to "MovieBuff"); Shields v. Zuccarini, 254 F.3d 476, 483 (3d Cir. 2001) (observing that domain names that are derived by adding, deleting, or rearranging letters of a mark are confusingly similar to that mark); Wella Corp. v. Wella Graphics, Inc., 874 F. Supp. 54, 56 (E.D. N.Y. 1994) (finding the mark "Wello" confusingly similar to the trademark "Wella").

The third inquiry under the ACPA is whether the "Tyco" mark is distinctive or famous. Tyco asserts that its name is distinctive and entitled to protection claiming that the mark has been widely used nationally and internationally since 1977. Tyco International Services, AG, ("Tyco") the owner of the "Tyco" mark, has licensed and continues to license the use of the "Tyco" mark to Tyco International (US), Inc., in conjunction with the marketing and promotion of various items and services. Tyco AG has expended large sums of money in this promotion. Again, Delgado does not dispute this contention. Accordingly, there is no reason to believe that the "Tyco" mark is not distinctive for purposes of the ACPA. See generally Sporty's Farm, 202 F.3d at 496-97. Once distinctiveness has been determined, no finding of famousness is necessary. Id. at 497.

The final inquiry is whether Delgado possessed a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(A)(i). The APCA lists nine non-exclusive factors to assist courts in determining when a person has acted with a bad faith intent to profit from the use of a mark.[2] A

---

[2] These factors are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is

-4-

court, however, is not limited to considering just the listed factors when making a determination of whether the statutory criterion has been met. 15 U.S.C. § 1125(d)(1)(B)(i); Sporty's Farm, 202 F.3d at 496.

Here, several of the enumerated factors favor Tyco. First, Delgado does not have any intellectual property rights in the "Tyco" mark; whereas, Tyco has a protectable interest in the

---

otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection(c)(1) of section 43.

15 U.S.C. § 1125(d)(1)(B)(i).

-5-

mark. Second, "tycovenezuela.com" uses the "Tyco" mark which is used to identify with Tyco and its goods and services. Further, "tycovenezuela.com" does not use the name of Delgado, the person registering the name. Third, Delgado has not used the domain name in connection with the bona fide offering of any goods and services and only registered the domain name after litigation between the parties began. Fourth, the evidence suggests that Delgado sent an email to Tyco announcing his website as the real Tyco website in Venezuela. This could be construed as an attempt to harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. Fifth, in open court, Delgado claimed he had no intent to develop or use the website and he would sell the website to Tyco and Earth Tech for the amount he paid to register the name. Sixth, the "Tyco" mark is distinctive and "tycovenezuela.com" would likewise be distinctive and be associated with Tyco. Last, but certainly one of the most important factors in this analysis, it appears that Delgado registered the "tycovenezuela.com" domain name in order to gain leverage in the suit pending between he and the Plaintiffs in Venezuela. These factors clearly support a finding of bad faith on Delgado's behalf in registering the domain name. Accord Sporty's Farm, 202 F.3d at 499. Thus, Tyco's success on the merits is likely.

### Irreparable Injury

Although, it appears that the Eleventh Circuit has not addressed irreparable injury prong under the ACPA, it has stated that "'a sufficiently strong showing of likelihood of confusion

-6-

[caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.'" McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, 756 F.2d 1525, 1530 (11th Cir. 1985)). Preliminary injunctions are also appropriate when money damages will not make the parties whole. Moreover, trademark actions "are common venues for the issuance of preliminary injunctions." Id. Even if irreparable harm is not presumed, Tyco will suffer irreparable harm if the preliminary injunction is not granted because there is no quantifiable way to measure Tyco's potential loss of customers and good will due to the fact that its protectable mark is being used by Delgado as a domain name. If Delgado develops the website, there is no way to measure the potential harm to Tyco that could be caused by the confusion of Delgado's site with the legitimate sites, services, and products of Tyco. A finding of irreparable injury in a trademark infringement case can be based on a finding of a likelihood of confusion. Opticians Ass'n v. Indep. Opticians, 920 F.2d 187, 196 (3d Cir. 1990). Furthermore, absent an injunction there is nothing to prevent Delgado from developing and using the domain name (or, at least, to keep Tyco from using the domain name) pending a resolution of this case on the merits. Hence, there is no adequate remedy at law and only an injunction will prevent the irreparable injury to Tyco if Delgado is allowed to maintain the domain name and develop the website under "tycovenezuela.com."

### Balancing of Harms

Upon finding that Tyco will suffer irreparable injury if the injunctive relief is not granted, the hardships that the Tyco will suffer if relief is not granted must be balanced against those that

-7-

Delgado will suffer if relief is granted. Here, this balancing test tips in Tyco's favor. Delgado makes no attempt to argue that he would be harmed by an injunction preventing his use of the domain names and in fact only claims that the name was registered to protect the Venezuelan government--a claim which this Court finds incredulous. If Delgado sincerely intends not to infringe as he claims, the injunction can have no harmful effect and only gives Tyco protection of its trademark. Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir. 1986). Indeed, it is clear that Delgado would not be harmed by the injunction. On the other hand, Tyco stands to lose much in the way of customers, good will, and faith in the Tyco mark which it has spent time and money developing.

### Public Interest

Similarly, the public interest tips in favor of Tyco in this matter. Customers and potential customers of Tyco have an interest in avoiding confusion in the marketplace. The public interest in trademark infringement cases, including those involving cybersquatting, is the right of the public not to be deceived. Zuccarini, 254 F.3d at 486 (citing Opticians Ass'n, 920 F.2d at 197; Estate of Presley v. Russen, 513 F. Supp 1339, 1382 (D. N.J. 1981)). There is a substantial likelihood of confusion between Delgado's infringing domain name and the "Tyco" mark. Furthermore, it is in the interest of the public and Tyco to preserving the integrity of the "Tyco" mark, which may be disparaged if Delgado is allowed to maintain the "tycovenezuela.com" domain name. These public interests clearly outweigh any interest Delgado has in the domain name.

It is therefore,

ORDERED and ADJUDGED, that Plaintiffs' Motion for a preliminary injunction is GRANTED. Accordingly, a preliminary injunction is hereby issued, pursuant to 15 U.S.C. § 1125(d)(1)(C), enjoining Delgado's continued use of the "tycovenezuela.com" domain name. Furthermore, Delgado is enjoined from auctioning, offering for sale, or in any way transferring this domain name to anyone. Finally, it is ordered that Delgado shall transfer the domain name to Tyco pending a resolution on the merits.[3]

DONE and ORDERED in Chambers, Orlando, Florida this 5th day of November, 2001.

                                           _____
                                           GREGORY A. PRESNELL
                                           UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[3] See Ford Motor Co. v. Lapertosa, 126 F. Supp. 2d 463, 468 (E.D. Mich. Jan. 3, 2001) (granting a preliminary injunction against the use of a domain name and ordering the transfer of the domain name to the plaintiff until resolution of case on the merits).

F I L E   C O P Y

Date Printed: 11/05/2001

Notice sent to:

    ___ Carlos J. Burruezo, Esq.
    Fisher & Phillips LLP
    Lincoln Plaza, Suite 1250
    300 S. Orange Ave.
    Orlando, FL  32801

    ___ Juan C. Lopez-Campillo, Esq.
    Fisher & Phillips LLP
    Lincoln Plaza, Suite 1250
    300 S. Orange Ave.
    Orlando, FL  32801

    ___ Randall W. Lord, Esq.
    Jackson, Lewis, Schnitzler & Krupman
    390 N. Orange Ave., Suite 1285
    P.O. Box 3389
    Orlando, FL  32802-3389

    ___ Michael M. Hernandez, Esq.
    Jackson Lewis Schnitzler & Krupman
    First Union Financial Center - Suite 2600
    200 S. Biscayne Blvd.
    Miami, FL  33131-2374

    ___ Martin London, Esq.
    Paul, Weiss, Rifkind, Wharton & Garrison
    1285 Avenue of the Americas
    New York, NY  10019-6065

    ___ Robert A. Atkins, Esq.
    Paul, Weiss, Rifkind, Wharton & Garrison
    1285 Avenue of the Americas
    New York, NY  10019-6065

    ___ Mathew S. Rosengart, Esq.
    Paul, Weiss, Rifkind, Wharton & Garrison
    1285 Avenue of the Americas
    New York, NY  10019-6065

    ___ Tucker H. Byrd, Esq.
    Greenberg Traurig P.A.
    111 N. Orange Ave., Suite 2050
    P.O. Box 4923
    Orlando, FL  32802-4923

    ___ Robert W. Rasch, Esq.
    Law Office of Robert W. Rasch
    201 Live Oak Lane
    Altamonte Springs, FL  32714

    ___ Jay M. Cohen
    Jay M. Cohen, P.A.

P.O. Box 2210
Winter Park, FL 32790-2210