

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARTH TECH, INC.,
a California Corporation, and
TYCO INTERNATIONAL SERVICES, AG,
a Swiss Corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada Corporation,

        Plaintiffs,

v.

MIGUEL DELGADO BELLO,

        Defendant.

Case No.:  6:00-CV-1536-Orl-31JGG

MIGUEL DELGADO BELLO,

        Counterplaintiff,

v.

EARTH TECH, INC.,
a California Corporation, TYCO
INTERNATIONAL SERVICES, AG, a
Swiss Corporation and TYCO
INTERNATIONAL (US) INC., a Nevada
Corporation,

        Counterdefendants.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
APPLICATION FOR ATTORNEYS' FEES
AND COSTS UNDER SEAL AND FOR A PROTECTIVE ORDER
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiffs Earth Tech, Inc., Tyco International Services, AG, and Tyco International (US) Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 26(c) and paragraph III-F of the



Case Management Order in this matter dated February 9, 2001, respectfully move for (i) leave to file their application for attorneys' fees and supporting affidavits under seal; and (ii) a protective order precluding defendant Miguel Delgado Bello ("Delgado") and his counsel from disclosing Plaintiffs' fee application and the information therein to any person other than the parties to this matter, their attorneys of record, and Court personnel.

In support of this motion, Plaintiffs state as follows:

1. In its Order dated May 15, 2002 (the "May 15 Order"), the Court granted Plaintiffs' motion for sanctions dismissing Delgado's Counterclaim with prejudice, and directed Delgado to pay Plaintiffs "all reasonable attorney's fees and costs associated with the prosecution of their motion for sanctions and defense of the Defendant's counterclaims." The Court further ordered Delgado's counsel, Robert W. Rasch, to pay attorney's fees for conduct in violation of 28 U.S.C. § 1927. (May 15 Order at 23-24.)

2. In the May 15 Order, the Court directed plaintiffs to submit, within thirty days, (i) a bill of costs and application for attorney's fees together with supporting affidavits; and (ii) an indication which fees and expenses Plaintiffs attribute to the conduct of Delagdo's counsel. (*Id.* at 24.)

3. By Order dated June 14, 2002, the Court granted Plaintiffs' unopposed motion for an enlargement of time to submit their attorneys' fee application until June 28, 2002. On June 27, 2002, Plaintiffs filed a second unopposed motion for a brief additional enlargement of time, until July 3, 2002. That motion is currently pending.

2

4. In the May 15 Order, the Court found that Delgado had engaged in litigation misconduct—including lying to the Court, fabricating documents, and transmitting threatening faxes and emails to Plaintiffs and third parties—"in an attempt to force a settlement from the Plaintiffs" in this case and related litigation in Venezuela. (*Id.* at 1-2.) Based upon the evidence submitted on plaintiffs' sanctions motion, including a two-day evidentiary hearing, the Court concluded that "Delgado has shown that he is willing to go to any length in this and the Venezuelan litigation to influence the Plaintiffs to settle with him." (*Id.* at 19.)

5. As part of his effort to coerce Plaintiffs into settling with him, the Court found, Delgado attempted to plant stories in the press repeating his baseless accusations against Plaintiffs. Specifically, the Court found that Delgado went to the Venezuelan press in early 2001 with accusations that Plaintiffs "had engaged in 'irregularities,' 'juggling of companies,' and 'name change games' in order to obtain the Jose Water Project contract." (*Id.* at 5.) The Court found that "[t]hese newspaper stories were part of Delgado's campaign of harassment and public disparagement of Plaintiffs, intended to pressure Plaintiffs into a settlement." (*Id.*)

6. Since the May 15 Order was entered, Delgado and his counsel have continued the same "campaign of harassment and public disparagement of Plaintiffs" in an effort to coerce Plaintiffs into settling with him, by repeating the same baseless accusations against Earth Tech that he has asserted in this case to newspaper and magazine reporters and, apparently, to federal securities regulators, and have used information they obtained in discovery in this case in that effort.

3

7. Attached as Exhibits A and B to this motion are two recent newspaper articles reflecting Delgado's continuing campaign of disparagement.

8. Exhibit A is an article entitled "U.S. SEC investigates Tyco bribery claim — lawyer," issued by Reuters on June 26, 2002. The Reuters article states that the Securities and Exchange Commission is investigating claims "made by Miguel Delgado Bello" that Earth Tech "used bribery to win a water treatment contract with Venezuela's state-owned oil company . . . ." The article states that the source of this purported information is "Robert Rasch, Delgado's lawyer." (Ex. A hereto.) (The Court will recall that Delgado made similar baseless claims of bribery in opposition to Plaintiffs' motion for sanctions.)

9. Exhibit B is a copy of an article entitled "The Tax Games Tyco Played," published in *Business Week* on July 1, 2002. The article states that Delgado told a *Business Week* reporter that "in mid-May he met with SEC investigators to discuss bribes he alleged were paid by [Earth Tech] to seal the deal." (Ex. B, at 2.)

10. The *Business Week* article further purports to quote from a deposition that Rasch took in this matter of Earth Tech's general counsel, Charles S. Alpert—a quote *Business Week* plainly obtained from Delgado.

11. Under paragraph III-F of the Case Management Order dated February 9, 2001 in this matter, "[t]he Court will permit the parties to file documents under seal only upon a finding of extraordinary circumstances and particularized need." (*Id.*, citing *Brown* v. *Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992), and *Wilson* v. *American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985).)

4

12. Plaintiffs respectfully submit that the standard of extraordinary circumstances and particularized need is amply met here. As the Court has found, Delgado and his counsel have repeatedly attempted to subject Plaintiffs to adverse publicity in an effort to coerce them into settling plaintiffs' claims. As reflected in the attached exhibits, Delgado and his counsel have continued this "campaign of harassment and public disparagement," using discovery materials they obtained in this litigation, even after the issuance of the May 15 Order, and as recently as this week.

13. Plaintiffs' concern that Delgado may attempt to use their attorney's fee application to continue his public relations campaign was only heightened by Mr. Rasch's response to our request that Delgado consent to the relief sought by this motion. Mr. Rasch responded immediately that he could not agree to Plaintiffs' request because "there are a lot of investigations going on, and they may be relevant to those." As Mr. Rasch's statement (perhaps inadvertently) makes clear, Delgado plainly hopes to use the information he obtains from Plaintiffs' attorney's fee application to further his efforts to coerce a settlement. (Mr. Rasch did not supply any evidence, and there is none, that Plaintiffs' attorney's fee application would have the slightest relevance to any "investigation.")

14. As the Court determined in dismissing Delgado's counterclaim as a result of his misconduct in this litigation, which the Court concluded "reached the pinnacle of bad faith" (May 15 Order at 20), the circumstances of this case are extraordinary, and fully justify measures to prevent Delgado and his counsel from further misuse of the judicial process.

## LOCAL RULE 3.01(g) CERTIFICATION

15. As noted, Plaintiffs have conferred with opposing counsel pursuant to Local Rule 3.01, and opposing counsel has not agreed to the relief requested herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order (i) granting this motion; (ii) permitting Plaintiffs to file their application for attorneys' fees and supporting affidavits under seal; (iii) directing that Delgado and his counsel not disclose Plaintiffs' application or supporting affidavits, or the information contained therein, to any person other than the parties, their attorneys of record, and Court personnel; and (iv) ordering any other relief the Court deems appropriate.

Dated: June 28, 2002
Orlando, Florida

Respectfully submitted,

GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: 407-420-1000
Facsimile: 407-841-1295

By: /s/ Gregory Herbert
Tucker H. Byrd, Esq.
Florida Bar No. 381632
Gregory W. Herbert
Florida Bar No. 0111510

JACKSON, LEWIS, SCHNITZLER
& KRUPMAN
390 North Orange Avenue
Orlando, Florida 32802
Telephone: 407-246-8440
Facsimile: 407-246-8441

Of Counsel:

Robert A. Atkins
Jonathan H. Hurwitz
Nicole Tuman
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile:  212-373-2225

Attorneys and Trial Counsel for Plaintiffs Earth Tech, Inc., Tyco International Services, AG, and Tyco International (US) Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by fax and U.S. Mail, postage prepaid, to: Robert W. Rasch, Esq., Robert W. Rasch, P.A., 201 Live Oak Lane, Altamonte Springs, FL 32714; this 28th day of June, 2002.

_____
Gregory W. Herbert

\\orl-srv01\HERBERTG\200272v01\4@J401!.DOC\6/28/02\52165.010100



**YAHOO! FINANCE** Search - Finance Home - Yahoo! - Help    **REUTERS**



What's better than banking online.

[ Latest Headlines | Market Overview | News Alerts | More Reuters ]

**Wednesday June 26, 2:37 pm** Eastern Time

# Reuters Market News
## U.S. SEC investigates Tyco bribery claims - lawyer

| **Related Quote** | | |
|---|---|---|
| TYC | 12.65 | +0.32 |

delayed 20 mins - disclaimer
Quote Data provided by Reuters

By Tim McLaughlin

BOSTON, June 26 (Reuters) - U.S. regulators are investigating whether a unit of Tyco International Ltd. (NYSE:TYC - News) used bribery to win a water treatment contract with Venezuela's state-owned oil company, a lawyer for a former Tyco employee said on Wednesday.

ADVERTISEMENT



The U.S. Securities and Exchange Commission is investigating the bribery claims made by Miguel Delgado Bello, who was fired by Tyco's Earth Tech Inc. subsidiary in 1999, Robert Rasch, Delgado's lawyer, told Reuters.

Delgado recently told the SEC that executives at Earth Tech may have bribed officials at Petroleos de Venezuela (PDVSA) to win a contract for building water treatment plants, Rasch said.

Rasch said the SEC is investigating whether high level officials at Earth Tech deposited $250,000 in a Caracas bank account on behalf of a PDVSA official while the contract was still being negotiated.

A spokesman at the SEC declined to comment.

Tyco spokesman Gary Holmes said the company would cooperate with any probe and also noted that a federal judge in Florida had recently discredited Delgado in a lawsuit filed against him by Earth Tech.

"We will cooperate fully with any enforcement entity that raises questions about these allegations," Holmes said. "But as a matter of policy we do not comment publicly on inquiries from government agencies."

EXHIBIT "A"

http://biz.yahoo.com/rf/020626/manufacturing_tyco_venezuela_2.html                                    6/28/2002

Earth Tech won the PDVSA contract and formed a joint venture with Pequiven, a PDVSA subsidiary, in 1999. Delgado introduced Earth Tech to the prospect of bidding on a water treatment contract for several oil refineries in Venezuela.

The SEC is investigating whether Tyco's Earth Tech violated the U.S. Foreign Corrupt Practices Act, which bars bribery of foreign officials by U.S. companies to win or maintain business, Rasch said.

The act also requires companies to keep detailed accounting entries on how their assets are used in foreign countries. One intent of the ACT, passed in 1977, is to prevent multinational corporations from setting up slush funds to win business.

In a May 15 court order, a Florida federal judge said that Delgado gave false testimony in a breach of loyalty lawsuit filed by Earth Tech.

"The court finds, by clear and convincing evidence, that (Delgado) has engaged in vexatious and bad faith litigation and has given false testimony, fabricated documents, and committed other discovery abuses, all in an effort to perpetrate fraud on this court," U.S. District Judge Gregory Presnell wrote.

In 2000, Delgado sued Earth Tech in Caracas seeking more than $500,000 in severance because of his firing. Earth Tech responded by filing a lawsuit against Delgado in U.S. District Court in Orlando, Florida, claiming he breached the loyalty clause of his contract.

Earth Tech said Delgado, who worked on the deal to land the PDVSA contract, signed unauthorized deals with family and friends in Venezuela.

Presnell said evidence supported Tyco claims that Delgado sent threatening e-mail to company executives, including then-Chairman Dennis Kozlowski.

The judge dismissed Delgado's counterclaims in the case.

The disclosure comes as the Manhattan District Attorney investigates whether Tyco funds were improperly used to buy real estate and artwork for executives. Tyco's stock has been hammered all year because of accounting worries and corporate strategy flip-flops under Kozlowski.

Kozlowski abruptly resigned earlier this month before his criminal indictment on charges he conspired to avoid paying $1 million in sales taxes on artwork purchases. He is expected in court later on Wednesday to be arraigned on charges he tampered with evidence.

Email this story - Most-emailed articles - Most-viewed articles

**More Quotes and News:** Tyco International Ltd (NYSE:TYC - News)
**Related News Categories:** politics

ADVERTISEMENT
**Special Offers**
- **Paying too much for car insurance? Find out**
- **FREE credit report & trial membership!**
- **Interest rates won't stay this low forever. Yahoo! Mortgage**

**Center**
- **Access Your PC from Anywhere - Free Download**

 Help

Copyright © 2002 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service
Copyright © 2002 Reuters Limited. All rights reserved. Republication or redistribution of Reuters content is expressly prohibited without the prior written consent of Reuters. Reuters shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.
Questions or Comments?

Register/Subscribe
Home



 Close Window

JULY 1, 2002

SPECIAL REPORT -- SCANDALS IN CORPORATE AMERICA

# The Tax Games Tyco Played
**It made an art form of avoidance, but a climate shift has opened the door to harsher scrutiny**

The criminal indictment of L. Dennis Kozlowski paints a stunning portrait of complex schemes the former chief of Tyco International Ltd. (TYC ) allegedly used to evade New York State and City sales taxes on $13.2 million worth of personal artwork. To beat the 8.25% tax, the June 4 indictment charges, Kozlowski and his co-conspirators used such tactics as preparing false invoices and shipping empty boxes to the conglomerate's executive offices in New Hampshire.

That scheme was child's play compared with the apparently legal methods Tyco has used to avoid corporate income taxes. Under Kozlowski, tax avoidance became a way of life and a key corporate strategy. It's not just that Tyco five years ago moved to the now-famous tax haven of Bermuda. Since then, it has gone to extraordinary lengths to amass subsidiaries in such tax-friendly locales as Barbados, the Cayman Islands, and Jersey. From 2000 to 2001 alone, the number doubled to more than 150.

The payoff: Tyco has cut its effective tax rate from 36% in 1996, just before the Bermuda move, to 23% in 2001. In an interview last year, Tyco Chief Financial Officer Mark H. Swartz said tax stratagems would slash Tyco's 2001 tax bill by some $600 million. "It has been a huge strategic advantage," he bragged.

Yet Tyco didn't actually pay anything near even that 23% rate, according to Bob McIntyre of Citizens for Tax Justice, a Washington advocacy group. Why? That rate was based on Tyco's "provision" of almost $1.5 billion for income taxes. But in its 2001 10-K, Tyco admits only $754 million was considered due in that year. Of that, $629 million was said to be for non-U.S. income taxes. The company doesn't spell out exactly how much of the remainder covers U.S. taxes, but the amount would be reduced further by a deduction for millions of executive stock options that were exercised. McIntyre says Tyco may have wound up paying nothing: "Was [the U.S. tax bill] positive? Probably not."

Suddenly, though, Tyco's powerful advantage is coming under scrutiny. And it couldn't happen at a worse time for the $36 billion company, which is scrambling to avoid a liquidity squeeze. In Congress, which for years showed little interest in this issue, Tyco has become the No. 1 example for those seeking to rein in a tax strategy many consider unpatriotic. "Tyco has raised tax avoidance to an art," grouses Rep. Richard E. Neal (D-Mass.), who has introduced legislation that would force Tyco to pay taxes as a U.S. corporation beginning in 2004.

That perception, along with Kozlowski's indictment, makes it more likely that tax authorities in the U.S. and other high-tax industrialized countries will put Tyco's tax schemes under a microscope. The basic

EXHIBIT "B"

strategies "are very consistent with the tax code and regulations," says one Wall Street tax expert. However, because a number of Tyco's subsidiaries appear to exist mostly to deal with related units, that could be challenged by the Internal Revenue Service. "Tyco is an obvious audit target," argues Leslie B. Samuels, a New York tax attorney and former U.S. assistant Treasury secretary for tax policy.

Tyco first began to focus on tax avoidance in 1997, when Kozlowski bought ADT Ltd., a security-services firm. ADT--headed by the controversial Lord Michael A. Ashcroft, now a member of Tyco's board--already was based in Bermuda. Through a reverse merger, in which the smaller ADT effectively acquired Tyco, Tyco no longer had to pay U.S. taxes on its non-U.S. income.

The biggest savings, though, came in succeeding years. Many of the tax-haven subsidiaries Tyco owns--with such names as Silver Avenue Holdings, Driftwood, and Bunga Bebaru--have little apparent connection to its operating businesses. But they are perfect vehicles "for shielding interest, dividends, royalties, and other forms of passive income from tax," says Samuel C. Thompson Jr., a professor at the University of Miami School of Law. In fiscal 2001, Tyco reported that while 65% of its revenues came from the U.S., just 29% of its income did. In other words, 71% was no longer subject to the 35% U.S. corporate income tax. A Tyco spokesman declined to discuss the company's overall tax policy. He said many of the subsidiaries "are dormant" and some are being dissolved.

Tyco's 10-K provides no information about the operations of most of these mysterious subsidiaries. But tax experts point out that the units could be used to engage in transfer pricing. Goods produced in a high-tax country might be sold to a tax-haven subsidiary for a low price, and then legally resold at a higher price--with most of the profit tax-free. Clearly, one of the most important overseas units is Luxembourg-based

Tyco International Group. TIG borrows much of the billions Tyco needs to finance its $27 billion of debt, and then reloans it to Tyco units in the U.S. and other high-tax countries. In its 10-K, Tyco reported that TIG had $16.7 billion in such intercompany loans outstanding. The beauty of this is that the interest Tyco's U.S. subsidiaries pay on these intercompany loans is tax-deductible in the U.S. Moreover, Samuels says TIG could be charging Tyco's other subsidiaries a higher interest rate than it is paying--further increasing the tax benefit. But the interest payments Tyco's U.S. units ship back to TIG are not taxed in Luxembourg, says Robert Willens, a Lehman Brothers Inc. tax analyst.

At least one of Tyco's overseas units has come under official scrutiny. Earth Tech Venezuela was formed in 1999 to handle a $200 million contract a Tyco unit had won to build and operate an industrial water-treatment complex in that country. In a deposition taken last December as part of a labor dispute lawsuit involving a disgruntled former executive, Charles S. Alpert, general counsel of U.S.-based Tyco subsidiary Earth Tech, testified that "on the advice of the Tyco tax department," Earth Tech Venezuela was set up so it was owned by Luxembourg-based Tyco Group. Such a move would shield the Venezuelan project from U.S. taxes.

Now, *BusinessWeek* has learned that the Securities & Exchange Commission is investigating whether Earth Tech may have used means to win the contract--such as paying bribes--that would violate the Foreign Corrupt Practices Act. Miguel Delgado Bello, a vice-president for Earth Tech Venezuela at the time of the bid, says that in mid-May he met with SEC investigators to discuss bribes he alleged were paid by the Tyco unit to seal the deal. But Tyco points out that Delgado, fired later in 1999, was thoroughly discredited in a May 15, 2002, U.S. District Court ruling that found he "has given false testimony [and] fabricated documents...in an effort to perpetuate a fraud on the court." Nonetheless, sources say the SEC is still probing the bribe allegations.

Some tax experts suspect if the IRS fully probed Tyco's bag of tax tricks, the company could be hit with huge penalties, because it could argue Tyco's tax situation doesn't reflect economic reality. Since Kozlowski's resignation, Tyco has strived to argue that his personal conduct will have no material impact on the company. But Kozlowski's legacy also included an increasingly aggressive strategy of avoiding taxes by any means possible. That may prove to be an even bigger problem for Tyco.

By William C. Symonds in Boston, with Geri Smith in Caracas, Venezuela

Copyright 2000-2002, by The McGraw-Hill Companies Inc All rights reserved.
Terms of Use   Privacy Policy



A Division of The McGraw-Hill Companies