UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| EARTH TECH, INC., a California corporation, TYCO INTERNATIONAL SERVICES, AG, a Swiss Corporation, and TYCO INTERNATIONAL (US) INC., a Nevada corporation,, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL DELGADO BELLO, <br><br> Defendant. | Case No. 6:00-CV-1536-Orl-31JGG |

## PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS AS SANCTIONS AGAINST DEFENDANT MIGUEL DELGADO AND ATTORNEY ROBERT W. RASCH

Plaintiffs Earth Tech, Inc. ("Earth Tech"), Tyco International Services AG and Tyco International (US), Inc. (collectively, "Tyco") respectfully submit their application for attorneys' fees and expenses as sanctions against defendant Miguel Delgado Bello ("Delgado") and his counsel, Robert W. Rasch ("Rasch").

**Introduction**

By Order dated May 15, 2002, this Court granted plaintiffs' motion for sanctions against Delgado and his counsel, Robert Rasch. The Court is well aware of, and made substantial findings concerning, Delgado's record of deceit, bad faith, and abuse of the judicial process, and so plaintiffs will not repeat it here. The Court is equally aware of the bad faith and vexatious conduct of Mr. Rasch, who fostered Delgado's perjurious testimony and made baseless and abusive accusations against plaintiffs and plaintiffs' counsel.

Consequently, the Court has ordered that plaintiffs are entitled to recover from Delgado "reasonable attorney's fees and costs associated with the prosecution of their motion for sanctions and defense of the Defendant's counterclaims." *Earth Tech, Inc. v. Delgado*, 6:00-cv-1536-Orl-31JGG, slip. op. at 23 (M.D. Fla. May 15, 2002). The Court also ordered that plaintiffs are entitled to attorneys' fees and expenses as a sanction against Rasch "for his conduct in violation of 28 U.S.C. § 1927." (*Id.* at 24.) Because the Court has already determined that plaintiffs are entitled to sanctions against Delgado and Rasch, the only question remaining is the amount.

**Summary of the Application**

The Court ordered that plaintiffs submit an application for attorneys' fees and expenses "indicating which fees and expenses Plaintiffs attribute to the conduct of Defendant's counsel." (*Id.* at 24.) Following that direction, this application is structured as follows:

1. Discussion of the Legal Standards;
2. Attorneys' Fees for Defense of Delgado's Counterclaims;
3. Attorneys' Fees for Plaintiffs' Motion for Sanctions;
4. Attorneys' Fees Solely Attributable to Rasch's Conduct;
5. Allocation of Fees and Expenses to Delgado and Rasch.

As explained in the accompanying affidavits of Robert Atkins and Randall Lord, plaintiffs' co-counsel from Paul Weiss and Jackson Lewis, the amount of attorneys' fees is based on the attorneys' time records, which are submitted with this application, and their personal review of the legal work performed in this matter. The portion of those fees plaintiffs attribute to Rasch is based on the following allocation: (1) 50% of the cost of the Court hearings on plaintiffs' motion for sanctions held on October 30,

2

2001 and January 18, 2002; (2) 50% of the cost of the Proposed Findings of Fact and Conclusions of Law Regarding Sanctions, dated February 28, 2002; (3) 100% of the sanctions and related motions filed by Rasch against plaintiffs and plaintiffs' counsel; and (4) 100% of the cost of the deposition of Michael Diaz conducted by Rasch on December 20, 2001.

The amount of expenses applied for is based on the actual disbursements incurred by Paul Weiss, allocated on a percentage basis to the legal work that is the subject of this application.

As set forth in greater detail below and in the supporting affidavits, plaintiffs apply for an award of attorneys' fees and expenses in the following amounts:

|  | *Total* | *Delgado* | *Rasch* |
|---|---|---|---|
| Fees for Defense of Counterclaims | $48,340.35 | $48,340.35 | — |
| Fees for Sanctions Hearings and Proposed Findings of Fact | $102,642.70 | $51,321.17 | $51,321.17 |
| Additional Fees Related to the Prosecution of Plaintiffs' Motion for Sanctions | $66,149.96 | $66,160.96 | — |
| Fees for Rasch's Other Conduct | $30,395.95 | — | $30,395.95 |
| Expenses | $42,042.91 | $27,327.90 | $14,715.02 |
| **TOTAL FEES AND EXPENSES** | $289,571.52 | $193,139.38 | $96,432.32 |

## Calculation of a Reasonable Attorneys' Fee Award

Courts within the Eleventh Circuit use the "lodestar" method to determine the reasonableness of a fee award. *See Jerelds* v. *City of Orlando*, 194 F. Supp. 2d 1305, 1319 (M.D. Fla. 2002) (citing *Norman* v. *Housing Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Hensley* v. *Eckerhart*, 461 U.S. 424, 433-34 (1983). "Simply stated, the

3

lodestar is the product of the reasonable hours expended and the reasonable hourly rate." *Jerelds*, 194 F. Supp. 2d at 1319 (citing *Burlington v. Dague*, 505 U.S. 557, 559-60 (1992)). The lodestar method is the appropriate guide when computing an award of attorneys' fees as a sanction. *See, e.g., Sussman v. Salem, Saxon and Nielsen, P.A.*, 150 F.R.D. 209, 215 (M.D. Fla 1993) (utilizing lodestar method to determine Rule 11 sanctions).

To calculate a reasonable fee using the lodestar method, the court should first determine a reasonable hourly rate. The reasonable rate is the prevailing market rate for similar services performed by lawyers of comparable experience and reputation. *Jerelds*, 194 F. Supp. 2d at 1319. Where there are circumstances warranting the retention of non-local counsel, a plaintiff may recover actual rates if they are reasonable "'based on the attorney's experience and the locale in which he practices.'" *Review Publ'ns, Inc. v. Navarro*, No. 89-1187-Civ, 1991 WL 252962, at *4 (S.D. Fla. June 26, 1991) (quoting *Avrigan v. Hall*, 705 F. Supp. 1544, 1550 (S.D. Fla. 1989). Courts within the Second Circuit have determined Paul Weiss rates to be reasonable.[1]

Here, due to the complexity of the litigation, the parallel actions pending in a foreign nation, and the continued attempts and threats by defendant to damage

---

[1] *See, e.g., Reynolds v. Goord*, 2001 WL 118564 (S.D.N.Y. 2001) at *2 ("[t]here is no evidence that [Paul, Weiss associate] billing rates are not customary in New York City for comparable law firms."); *Lowrance v. Coughlin*, No. 88 Civ. 3343, 1995 WL 103277, at *1 (S.D.N.Y. 1995) ("the rates charged are consistent with Paul, Weiss's standard rates which we find to be in keeping with the prevailing market rates and billing practices for New York City firms of comparable size and expertise."); *Cooper Dev. Co. v. Friedman*, No. 92 Civ. 7572, 1994 WL 172401, at *1 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (table), 1994 U.S. App. LEXIS 35855 (2d Cir. 1994) (holding that rates charged by Paul, Weiss are "in keeping with the prevailing market rates and billing practices for New York City law firms of comparable size and expertise").

plaintiffs' reputation, plaintiffs elected to retain a national New York firm with whom they have had prior experience to work with Florida local counsel in the prosecution of this action. Paul Weiss has provided legal services to plaintiffs in the past, and plaintiffs and Paul Weiss enjoy a long-standing relationship.

These considerations warrant allowance for Paul Weiss's non-local rates. *See Macierla v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (allowing for attorneys' fees based on higher, out-of-town rates); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982) (district court erred in reducing out-of-town counsel's rates to match those charged by local attorneys). Nonetheless, this application seeks fees based on prevailing rates in Orlando. The rates charged by Jackson Lewis partners and senior associates and paralegals, and the rates deemed reasonable by this Court and the Eleventh Circuit, are used in computing the requested fee award. *See, e.g., Natco Ltd. P'ship v. Moran Towing of Florida*, 267 F.3d 1190, 1196 (11th Cir. 2001) (affirming uncontested rates of $135 per hour for associates); *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1334 (M.D. Fla. 2002) (rates for attorneys ranging from $115 to $160); *Peacock v. Bank of America Corp.*, 133 F. Supp. 2d 1322, 1329 (M.D. Fla. 2000) (rates for attorneys ranging from $125 to $265.)

"The next step in the computation of the lodestar is the ascertainment of reasonable hours. *Hensley* teaches that 'excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). To this end, plaintiffs have only applied for fees they have identified in their time records as associated with the matters covered by the Court's May 15, 2002 Order. Unrelated projects, miscellaneous legal tasks and a good deal of

support work have been excluded. In addition, plaintiffs have excluded from this application all fees and costs associated with the prosecution of their Lanham Act and related trademark claims.[2]

We now turn to the specific categories of attorneys' fees.

**Attorneys' Fees for Defense of Delgado's Counterclaims**

Plaintiffs apply for $48,340.35 in attorneys' fees relating to the defense of Delgado's counterclaims. This amount reflects 260.59 hours of attorney time, and 29.05 hours of time expended by non-legal support staff. (Atkins Aff. ¶ 12; Lord Aff. ¶ 8.)

The tasks for which plaintiffs seek fees and costs are detailed in the accompanying affidavits of Robert Atkins and Randall Lord, and in the attorney time records, which are attached as Exhibit A to the Atkins Affidavit, and Composite Exhibit A to the Lord Affidavit. The fees and costs associated with prosecuting Earth Tech's affirmative claim against Delgado for breach of the duty of loyalty have not been included here.

The legal services performed by Jackson Lewis and Paul Weiss in defending against Delgado's counterclaims included factual investigations, witness interviews, document review, legal research, threshold and dispositive motion practice, written discovery and depositions. (Atkins Aff., ¶ 8.) Delgado filed his Counterclaim on March 2, 2001. (Docket Entry No. 13.) Plaintiffs then moved to dismiss on March 22, 2001. (Docket Entry No. 14.) On April 11, 2001, this Court denied in part and granted part plaintiffs' motion, and defendant amended his counterclaim on April 19, 2001. (Docket Entry Nos. 17, 18.) Thereafter, plaintiffs drafted and responded to written

---

[2] Those amounts were identified in plaintiffs' application for attorneys' fees and costs under the Lanham Act filed on March 4, 2002.

discovery requests relating to Delgado's counterclaims, and produced and reviewed documents. (Atkins Aff. ¶ 8.) On November 20, 2001, plaintiffs deposed Delgado and on December 4, 2001, plaintiffs defended the deposition of Earth Tech's General Counsel, Charles Alpert. Most of the focus of these depositions dealt with Delgado's counterclaims. (Atkins Aff. ¶ 10.)

Although plaintiffs had requested that this Court dismiss Delgado's counterclaims as a sanction under its inherent powers, the sequence of events required that plaintiffs submit a motion for summary judgment on the counterclaims after the close of fact discovery. Plaintiffs made that motion on May 17, 2002, before receiving the Court's Order dismissing the counterclaims as a sanction. (Atkins Aff. ¶¶ 9-10.)

**Attorneys' Fees for Plaintiffs' Motion for Sanctions**

Plaintiffs apply for $168,792.31 in attorneys' fees for the prosecution of their motion for sanctions. This amount reflects 896.13 hours of attorney time, and 104.49 hours of time expended by non-legal support staff. (Atkins Aff. ¶ 23; Lord Aff. ¶ 8.)

The tasks for which plaintiffs seek fees and costs are detailed in the accompanying Affidavits of Robert Atkins and Randall Lord, and in the attorney time records, which are attached as Exhibit B to the Atkins Affidavit and Composite Exhibit A to the Lord Affidavit.

The sanctions motion involved difficult and novel legal work by Jackson Lewis and Paul Weiss (1) to prove that Delgado was the source of the extortionate e-mails, and then lied about it to the Court, and (2) to disprove the frivolous accusations made by Mr. Rasch that plaintiffs and their counsel created the phony e-mail accounts, sent the e-mails to themselves (and third parties), and then conspired with the e-mail

7

service provider (UnitedStates.com) to frame Delgado. (*e.g.* Defendant's Motion to Suppress and Motion for Sanctions at 5-7, dated December 7, 2001.) Plaintiffs also needed to investigate, defend and rebut all the irrelevant allegations made by Delgado, and advanced by Rasch, about plaintiffs' supposed conduct in Venezuela. (*e.g.* Defendant's Supplemental Motion for Sanctions, Motion to Compel Discovery and Motion to Amend Counterclaim ("Supplemental Motion") at 3, dated January 16, 2002.) All of Delgado's misconduct and Rasch's frivolous arguments are detailed in plaintiffs' previous submissions to this Court and in the Court's Order of May 15, 2002. (Order at 5-9.)

The legal services required to investigate and remedy Delgado's extortion and harassment campaign included an exhaustive factual investigation which spanned months, from the inception of Delgado's failed extortionate scheme, which began in January 2001, until February 2002; sophisticated electronic analyses of the e-mails; third party discovery from American Express, AOL, McKim & Creed, and UnitedStates.com, including document production, affidavits and depositions; the preparation of written testimony from numerous witnesses; legal research; the drafting and submission of numerous motions, briefs and exhibits; conducting two days of evidentiary hearings, including the presentation of computerized demonstrative evidence and oral arguments; and the submission of Proposed Findings of Fact and Conclusions of Law, dated February 28, 2002. (Atkins Aff. ¶¶ 14-21.)

The total amount of attorneys' fees applied for has been sub-divided into three categories in order to permit the Court to make an allocation to Rasch for his culpability in multiplying and confounding these proceedings:

8

|  | Hours | Fees |
|---|---|---|
| The Court Hearings and Proposed Findings of Fact and Conclusions of Law | 616.30 | $102,642.35 |
| Additional Fees Related to the Prosecution of Plaintiffs' Motion for Sanctions | 384.32 | $66,149.96 |

**Attorneys' Fees Solely Attributable to Rasch's Conduct**

Plaintiffs apply for $30,395.95 in attorneys' fees relating to the frivolous and vexatious litigation activities for which Mr. Rasch bears sole responsibility. The tasks for which plaintiffs seek fees and expenses are detailed in the accompanying Affidavits of Robert Atkins and Randall Lord, and in the attorney time records, which are attached as Exhibit C to the Atkins Affidavit and Composite Exhibit A to the Lord Affidavit.

The Court found, "by clearing and convincing evidence," that Rasch's accusations against plaintiffs and plaintiffs' counsel -- *e.g.*, that plaintiffs and counsel created the phony e-mail accounts, and sent the phony e-mails, and then conspired with the e-mail service provider (UnitedStates.com) to frame Delgado -- were "completely baseless, devoid of merit, were an abuse of the judicial system, and were made in bad faith." (Order at 23.) Many of these accusations were made in the responsive papers and during the hearings relating to plaintiffs' motion for sanctions. (*e.g.* Defendant's Memorandum in Opposition to Motion for Injunction and for Sanctions at 4-6, dated October 22, 2001; October 30, 2001 hearing tr. at 92-99; January 18, 2002 hearing tr. at 136-37.) Rasch also prolonged the hearings by his unannounced plan to introduce live

9

testimony. (January 18, 2002 hearing tr. at 49-52.) In combination with eliciting Delgado's perjurious testimony, and accusing plaintiffs and plaintiffs' counsel of fabricating the e-mails themselves and interfering with Delgado's personal e-mail accounts, Rasch's conduct delayed and multiplied the proceedings, and extended the hearing unnecessarily. (Atkins Aff. ¶¶ 25-33.) Accordingly, plaintiffs submit that Rasch should share with Delgado, on a 50-50 basis, the legal expense of the Court hearings on October 30, 2001 and January 18, 2002, and the Proposed Findings of Fact and Conclusions of Law, dated February 28, 2002. (Atkins Aff. ¶¶ 38-39.)

In addition, Rasch undertook certain litigation initiatives directed against plaintiffs and plaintiffs' counsel for which he should be held fully accountable. Specifically: (1) the Motion to Suppress Evidence and Motion for Sanctions, dated December 7, 2001; (2) the Supplemental Motion for Sanctions, Motion to Compel Discovery, and Motion to Amend Counterclaim, dated January 16, 2002; and (3) the December 20, 2001 deposition of Michael Diaz. (Atkins Aff. ¶ 40.)

These three aspects of the case were the creation of Rasch and were part of his deliberate effort to divert the parties' (and the Court's) attention from Delgado's misconduct by slinging mud on plaintiffs' and their counsel. As the Court will recall, Rasch first moved on December 7, 2001 to sanction plaintiffs and their counsel for obtaining an affidavit from the CEO of UnitedStates.com (Philip Gordon) which proved that Delgado set up the extortionate e-mail accounts. (Defendant's Memorandum in Support of Motion to Suppress and Motion for Sanctions, dated December 7, 2001.) Rasch also asked the Court to "suppress" Gordon's affidavit. (*Id.* at 8.) Rasch accused plaintiffs and counsel, without any basis in fact, of altering the e-mail account passwords,

10

deleting Delgado's personal e-mail account, and intercepting an e-mail from Delgado to Mr. Rasch with an outline for the deposition of Earth Tech's General Counsel, Charles Alpert. (*Id.* at 4-5.) Plaintiffs were required to brief this baseless motion and submit affidavits to refute Rasch's outlandish charges. The Court denied this motion for sanctions as "baseless." *Earth Tech v. Delgado*, slip op. at 2 (M.D. Fla. Mar. 5, 2002).

On January 16, 2002 -- just two days before the second hearing on plaintiffs' sanction motion against Delgado -- Rasch filed a "supplemental" sanctions motion, sought to amend Delgado's counterclaims to assert civil rights claims against plaintiffs, and required that he have the right to depose Charles Alpert for a second time. (Supplemental Motion, dated January 16, 2002.) Again, plaintiffs were forced to brief these meritless motions, which the Court also denied as "baseless." *Earth Tech v. Delgado*, slip op. at 2 (M.D. Fla. Mar. 5, 2002).

Lastly, Rasch's deposition of Michael Diaz, one of Earth Tech's other attorneys, was another wasteful diversion. Rasch's examination had little to do with the merits of the case, or plaintiffs' sanctions motion against Delgado. Instead, the deposition focused on Rasch's accusations about plaintiffs' supposed threats against Delgado (and his friends) in Venezuela. (*e.g.* Supplemental Motion, Ex. 2.) (The Court specifically identified these accusations as "baseless, devoid of merit, [and] an abuse of the judicial system" in deciding to sanction Rasch. (Order at 22-23; Atkins Aff. ¶ 31.)

Accordingly, plaintiffs submit that 100% of the attorneys' fees associated with the Diaz deposition, and with the December 7, 2001, and January 16, 2002, sanctions and related motions made by Rasch against plaintiffs, should be attributed to Rasch. (Atkins Aff. ¶ 32.)

**Allocation of Fees and Expenses to Delgado and Rasch**

The amount of expenses incurred and paid in connection with all the legal work discussed above is $42,042.91. (The categories of expenses included is detailed in the accompanying affidavits.) To determine that amount, we first determined the amount of hours devoted to this legal work as a percentage of the total hours spent on the case by Paul Weiss and Jackson Lewis (48.7%), and then applied that percentage to the total expenses on the case. (The expenses associated with plaintiffs' Lanham Act and related trademark claims were excluded from this computation).

For the reasons discussed above, plaintiffs respectfully submit that a judgment be entered against Miguel Delgado awarding plaintiffs attorneys' fees of $165,811.48. That amount represents 100% of the fees for defending the counterclaims ($48,340.35), 50% of the fees for the two sanctions hearings and 50% of the fees for the Proposed Findings of Fact and Conclusions of Law ($51,321.17), and 100% of the fees from the remainder of the work on the motions for sanctions ($66,149.96). Because the hours expended in completing these tasks represent approximately 65% of the total hours expended by Paul Weiss attorneys attributable to Delgado and Rasch, plaintiffs submit that Delgado should be ordered to pay 65% of the expenses ($27,327.90), for a total award against Delgado of attorneys' fees and expenses of $193,139.38

Plaintiffs further submit that a judgment be entered against Robert Rasch awarding plaintiffs attorneys' fees of $81,717.17. That amount represents 50% of the fees for the two sanctions hearings and 50% of the fees for the Proposed Findings of Fact and Conclusions of Law ($51,321.17), 100% of the fees for the sanctions and related motions made by Rasch against plaintiffs and 100% of the fees for the deposition of Michael Diaz ($30,395.95). Because the hours expended in completing these tasks

represent approximately 35% of the total hours expended by Paul Weiss attorneys attributable to Delgado and Rasch, plaintiffs submit that Rasch should be ordered to pay 35% of the expenses ($14,715.02), for a total award against Rasch of attorneys' fees and expenses of $96,432.14.

Dated this 3rd day of July, 2002.

Respectfully submitted,

JACKSON LEWIS LLP
390 North Orange Avenue, Suite 1285
Post Office Box 3389
Orlando, Florida 32802-3389
Telephone: (407) 246-8440
Facsimile: (407) 246-8441

By: _____
Randall W. Lord
Florida Bar No. 765422

Deborah E. Frimmel
Florida Bar No. 093970

Tucker H. Byrd
Florida Bar No. 381632
Gregory W. Herbert
Florida Bar No. 0111510
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 841-1295

Martin London
Robert A. Atkins
Nicole Tuman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3106
Facsimile: (212) 373-2315
Attorneys for Plaintiffs EARTH TECH, INC.,
TYCO INTERNATIONAL SERVICES, AG,
And TYCO INTERNATIONAL (US) INC.

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid, to: Robert W. Rasch, Esq., Robert W. Rasch, P.A., 201 Live Oak Lane, Altamonte Springs, FL 32714, Tucker H. Byrd, Esq., and Gregory W. Herbert, Esq., Greenberg Traurig, P.A., 450 S. Orange Ave., Suite 650, Orlando, FL 32801, Martin London, Esq., Robert A., Atkins, Esq., and Nicole Tuman, Esq., Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019, this ___ day of July, 2002.

_____
Attorney