## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG,
a Swiss Corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada Corporation,

                                        **Plaintiffs,**

v.

**MIGUEL DELGADO BELLO,**                    Case No.:  6:00-CV-1536-ORL-31JGG

                                        **Defendant.**

### AFFIDAVIT OF ROBERT A. ATKINS

STATE OF NEW YORK    )
                     )    SS:
COUNTY OF NEW YORK   )

        Robert A. Atkins, being duly sworn, deposes and says:

        1.    I am a member of the firm Paul, Weiss, Rifkind, Wharton &
Garrison ("Paul Weiss"), counsel for plaintiffs in this action.

        2.    Pursuant to the Order of the Court dated May 15, 2002, I submit
this affidavit in support of plaintiffs' application for attorneys' fees and expenses as a
sanction against defendant Miguel Delgado Bello ("Delgado") and his counsel,
Robert W. Rasch ("Rasch").

        3.    As directed by the Court, plaintiffs seek an award of attorneys'
fees and expenses incurred and paid by plaintiffs for the legal work performed (a) in
defense of Delgado's counterclaims, (b) in connection with the prosecution of plaintiffs'

150

motion for sanctions, and (c) in defending the sanctions and related motions made against plaintiffs by Mr. Rasch.

4. Plaintiffs seek an award of attorneys' fees and expenses for the work performed by Paul Weiss in the amount of $271,847.52 for the period from April 4, 2001 through May 17, 2002. This amount is comprised of $217,087.61 for work performed by attorneys at my firm; $12,717.00 for non-legal support staff; and $42,042.91 for disbursements and related charges. These attorneys' fees and expenses are in addition to the $17,724.00 in attorneys' fees for the work performed by our co-counsel, Jackson Lewis, as set forth in the Affidavit of Randall Lord.

5. In sum, based on the attorneys' fees and expenses of Paul Weiss and Jackson Lewis combined, plaintiffs seek an award of fees and expenses in the following amounts, as allocated to Delgado and Rasch:

|  | *Total* | *Delgado* | *Rasch* |
|---|---|---|---|
| Fees for Defense of Counterclaims | $48,340.35 | $48,340.35 | — |
| Fees for Sanctions Hearings and Proposed Findings of Fact | $102,642.35 | $51,321.17 | $51,321.17 |
| Additional Fees Related to the Prosecution of Plaintiffs' Motion for Sanctions | $66,149.96 | $66,149.96 | — |
| Fees for Rasch's Other Conduct | $30,395.95 | — | $30,395.95 |
| Expenses | $42,042.91 | $27,327.90 | $14,715.02 |
| **TOTAL FEES AND EXPENSES** | $289,571.52 | $193,139.38 | $96,432.14 |

6. All the fees and expenses plaintiffs seek to recover in this application were billed to and paid by plaintiffs.

**Work Performed in Connection with Defense of Delgado's Counterclaims**

       7.    Delgado asserted counterclaims for a commission or bonus under Florida law, breach of contract, unjust enrichment and quantum meruit. The essence of Delgado's claims is that Earth Tech allegedly promised him a bonus or fee of some kind for helping plaintiffs win the contract to construct and manage the Jose Water Project in Venezuela.

       8.    The work performed by Paul Weiss in connection with the defense of the Counterclaims entailed factual investigations (in the U.S. and Venezuela), witness interviews, the submission of pleadings and threshold motion papers, the filing of summary judgment papers, legal research, written discovery, document productions, depositions, and other related tasks.

       9.    In connection with the defense of Delgado's counterclaims, plaintiffs prepared and submitted the following pleadings and motions:

       (a)    Plaintiffs' Answer and Affirmative Defenses, dated May 10, 2001;

       (b)    Plaintiffs' Motion to Dismiss Defendant's Counterclaim, dated March 22, 2001;

       (c)    Plaintiffs' Answer and Affirmative Defenses to the Amended Counterclaim, dated May 7, 2001; and

       (d)    Plaintiffs' Motion for Summary Judgment on the Counterclaims, dated May 17, 2001.

       10.    Paul Weiss lawyers were chiefly responsible for handling the factual investigations, document review, client and third party interviews, depositions, legal research and summary judgment motion. The deposition of Delgado (taken by my associate Mathew Rosengart on November 20, 2001) and the deposition of Earth Tech's

General Counsel, Charles Alpert (taken by Mr. Rasch on December 4, 2001) focused primarily on Delgado's counterclaims. Most of the work on Delgado's counterclaims was performed by Mr. Rosengart (a former Assistant U.S. Attorney) with the assistance of a junior lawyer Eli Wald. Since Mr. Rosengart left the firm in May 2002, and Mr. Wald has been assigned to other matters, the motion for summary judgment, filed on May 17, 2002, was prepared by Jonathan Hurwitz, a counsel to the firm, and Nicole Tuman.

11.   I have reviewed our contemporaneous time records, and identified the time spent performing the legal services discussed above. A highlighted copy of the time records is attached as Exhibit A identifying those entries relating to the defense of Delgado's counterclaims. For time entries relating solely to defending the counterclaims (*e.g.*, the summary judgment motion), 100% of the time was counted. For entries relating to both prosecuting Earth Tech's affirmative claim against Delgado and defending against the counterclaims (*e.g.*, the Delgado and Alpert depositions), 50% of the time was counted.[1] That is a conservative allocation because, in truth, more work was done defending the counterclaims. For those entries involving multiple tasks, only one-third was counted toward defending the counterclaims.

12.   Based on my review of the time records, I determined that the number of hours spent by Paul Weiss attorneys and support staff in defense of Delgado's counterclaims, and the amount of fees at the attorneys' hourly rates, are as follows:

A.   ————————————————

---

[1]   Time relating to opposing Delgado's pending motion for summary judgment on Earth Tech's affirmative claim was excluded entirely.

|                              | Hours   | Hourly Rate  |
|------------------------------|---------|--------------|
| Robert Atkins                | 31.24   | $225         |
| Jonathan Hurwitz             | 18.03   | $225         |
| Mathew Rosengart             | 80.70   | $185         |
| Nicole Tuman                 | 69.50   | $130         |
| Eli Wald                     | 31.82   | $130         |
| **TOTAL ATTORNEY TIME**      | **231.29** | **$39,186.85** |
|                              |         |              |
| **Support Staff**            | 28.65   | $100         |
| **TOTAL SUPPORT STAFF**      | 28.65   | **$2,865.00** |
|                              |         |              |
| **TOTAL FEES**               |         | **$42,051.85** |

13.     Paul Weiss's standard rates are reasonable and correspond to prevailing market rates for firms in New York City comparable to Paul Weiss and for attorneys of similar skill, experience and qualifications as the Paul Weiss lawyers who handled this case.[2]  However, because Paul Weiss's rates are higher than the prevailing

**A.** _____

[2]     *See, e.g., Reynolds* v. *Goord*, 2001 WL 118564 (S.D.N.Y. 2001) at *2 ("There is no evidence that [Paul, Weiss associate] billing rates are not customary in New York City for comparable law firms."); *Lowrance* v. *Coughlin*, No. 88 Civ. 3343, 1995 WL 103277, at *1 (S.D.N.Y. 1995) ("The rates charged are consistent with Paul, Weiss's standard rates which we find to be in keeping with the prevailing market rates and billing practices for New York City firms of comparable size and expertise."); *Cooper Dev. Co.* v. *Friedman*, No. 92 Civ. 7572, 1994 WL 172401, at *1 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (table), 1994 U.S. App. LEXIS 35855 (2d Cir. 1994) (holding that rates charged by Paul, Weiss are "in keeping with the prevailing market

rates charged in the Orlando, Florida area, this application uses the rates charged by Jackson Lewis partners, counsel senior associates and paralegals, and rates for junior associates recommended by this Court and the Eleventh Circuit. *See, e.g., Natco Ltd. P'ship* v. *Moran Towing of Florida*, 267 F.3d 1190, 1196 (11th Cir. 2001) (affirming uncontested rates of $135 per hour for associates); *Jerelds* v. *City of Orlando*, 194 F. Supp. 2d 1305, 1334 (M.D. Fla. 2002) (rates for attorneys ranging from $115 to $160); *Peacock* v. *Bank of America Corp.*, 133 F. Supp. 2d 1322, 1329 (M.D. Fla. 2000) (rates for attorneys ranging from $125 to $265.)

### **Work Performed in Connection with Plaintiffs' Sanctions Motion**

14.     On October 5, 2001, plaintiffs moved for sanctions against Delgado for sending fraudulent faxes and e-mails, disguised as coming from the Venezuelan government-owned oil company PDVSA, in an attempt to harass and extort a settlement from plaintiffs.  (Plaintiffs also moved to enjoin Delgado from using the Internet domain name "tycovenezuela.com," but since plaintiffs sought fees and costs for that work in a separate application filed on March 4, 2002, those fees and expenses are excluded from this application.)

15.     The legal work involved in preparing and litigating that motion was intensive, fast paced, and required plaintiffs to deal with an array of diversionary tactics employed by Rasch to conceal Delgado's misconduct and perjurious testimony. The sanctions motion involved difficult and novel legal work (1) to prove that Delgado

A.     _____

rates and billing practices for New York City law firms of comparable size and expertise").

was the source of the extortionate e-mails, and then lied about it to the Court, and (2) to disprove the frivolous accusations made by Mr. Rasch that plaintiffs and their counsel created the phony e-mail accounts, sent the e-mails to themselves (and third parties), and then conspired with the e-mail service provider (UnitedStates.com) to frame Delgado. Plaintiffs also needed to investigate, defend and rebut all the irrelevant allegations made by Delgado, and advanced by Rasch, about plaintiffs' supposed conduct in Venezuela. All of Delgado's misconduct and Rasch's frivolous arguments are detailed in plaintiffs' previous submissions to this Court and in the Court's Order of May 15, 2002. *Earth Tech, Inc.* v. *Delgado*, 6:00-cv-1536-Orl-31JGG, slip. op. at 5-9 (M.D. Fla. May 15, 2002) ("Order").

16. The Court observed the product of our legal services in the various briefs and written evidentiary submissions; the oral arguments, evidentiary presentations and witness examinations at the hearings on October 30, 2001 and January 18, 2002; and the Proposed Findings of Fact and Conclusions of Law submitted on February 28, 2002. The Court's Order of May 15, 2002 also summarizes much of the factual record we compiled, including third-party affidavits and depositions, records from AOL, American Express, McKim & Creed, and UnitedStates.com, electronic proof that Delgado created the extortionate e-mails, and evidence of how Delgado stole his former employer's American Express account number to create the bogus AOL account ("pdvsacitgo@aol.com") and make other fraudulent purchases.

17. Paul Weiss lawyers had principal responsibility for conducting the factual investigations, analyzing the e-mails, developing the evidentiary record, briefing

7

the motion, conducting the two hearings, and preparing the Proposed Findings of Fact and Conclusions of Law.  Most of that work was performed by myself and my colleagues Mathew Rosengart and Eli Wald.  My partner Martin London participated in the preparation and presentation of the hearing on June 18, 2002.  My colleague Joseph Frank, a senior associate, was responsible for much of the electronic e-mail analysis and discovery.

       18.    Paul Weiss lawyers were first responsible for conducting the factual and electronic investigations necessary to identify the source of the threatening e-mails sent from accounts at AOL and UnitedStates.com.  Some of that work involved the following:

       (a)    To determine the source of the "AOL" e-mails, we consulted with Douglas Haven, the head of computer security at Tyco.  Mr. Haven reviewed and analyzed the various e-mails and later summarized his finding (that Delgado had sent the e-mails from an aol.com account) in an affidavit which plaintiffs submitted in connection with their Reply Memorandum in Support of their Motion for a Preliminary Injunction and for Sanctions, dated October 29, 2001.  Delgado challenged Mr. Haven's findings, and, subsequently deposed Mr. Haven on November 12, 2001.  Joseph Frank, a Paul Weiss associate, defended Mr. Haven's deposition.

       (b)    To further confirm that Delgado had sent the e-mails from an AOL account that he had set up, we subpoenaed AOL to produce documents regarding the registration of the "pdvsacitgo" screen name and the billing records associated with the "pdvsacitgo" account.  AOL produced documents from Delgado's personal e-mail

accounts showing that Delgado sent e-mails using the screen name "pdvsa." The documents produced by AOL also indicated that the "pdvsacitgo" screen name had been billed to a credit card held by William Hall, Delgado's former boss at McKim & Creed.

(c)     We contacted Mr. Hall, who produced two affidavits testifying that he had not created the "pdvsacitgo" screen name, had not used it to send e-mails to Tyco or Earth Tech, and that Delgado had made unauthorized and fraudulent charges using his American Express account number, including the creation of the phony "pdvsacitgo" AOL account.

(d)     To determine the source of the e-mails from the UnitedStates.com accounts ("citgopdvsa@venezuela.com", "pdvsacitgo@venezuela.com", "tycovenezuela@venezuela.com", and "pdvsa@unitedstates.com"), we obtained an affidavit from Philip Gordon, the president and C.E.O. of UnitedStates.com, proving that the password for these e-mail accounts was Delgado's personal password. Plaintiffs submitted Mr. Gordon's affidavit in connection with their Emergency Motion and Memorandum in Support of a Protective and Restraining Order to Preserve Evidence, dated December 3, 2001, and relied on his testimony in support of their motion for sanctions at the hearing. Rasch deposed Mr. Gordon on January 15, 2002. Mr. Gordon was examined at the deposition by Paul Weiss associate Joseph Frank.

(e)     Delgado retained an expert, James Taylor, to address the evidence that connected him to the string of harassing e-mails sent to plaintiffs. Paul Weiss associate Joseph Frank took Mr. Taylor's deposition on November 21, 2001.

(f)     To corroborate Delgado's propensity to lie and fabricate documents, we obtained an affidavit from Zack Prince, the Registrar of the University of Texas, proving that the "diploma" Delgado provided to Earth Tech to obtain and continue his employment was a fake.

19.     This factual investigation culminated in the October 30, 2001 and January 18, 2002 hearings.  The hearings were necessitated and perpetuated by Delgado's continued refusal to admit to sending the harassing e-mails.

20.     Paul Weiss made several written evidentiary submissions in connection with plaintiffs' prosecution of the motion for sanctions:

(a)     Plaintiffs' Emergency Motions for (1) Leave of Court to File an Amended Complaint; (2) Immediate Injunctive Relief under Section 43 of the Lanham Act; and (3) Sanctions under the Courts Inherent Powers and Fed. R. Civ. P. 37, dated October 5, 2001 ("Sanctions Motion").

(b)     Plaintiffs' Reply Memorandum dated October 29, 2001.

(c)     Plaintiffs' Emergency Motion and Memorandum in Support of a Protective and Restraining Order to Preserve Evidence, dated December 3, 2001.

(d)     Plaintiffs' Proposed Findings of Fact and Conclusions of Law Regarding Sanctions against Defendant Miguel Delgado, dated February 28, 2002 ("Proposed Findings of Fact").

21.     The time expended researching the legal issues raised by these motions, and in drafting, filing, and serving them, was reasonable and necessary to the prosecution of plaintiffs' motion for sanctions.

22.     I have reviewed our contemporaneous time records and identified the time spent performing the legal services in connection with plaintiffs' motion for sanctions.  A highlighted copy of the time records is attached as Exhibit B identifying

those entries relating to the sanctions motion. Again, time relating to the Lanham Act and related claims has been excluded. For the time entries relating solely to the sanctions motion (*e.g.*, the Proposed Finding of Fact, and the depositions of Douglas Haven and Philip Gordon), 100% of the time has been counted. For entries relating to both the motion for sanctions and the Lanham Act claims (*e.g.*, the memoranda of law), I counted two-thirds of the time toward the sanctions motion because that was the primary focus of our work. For time entries involving multiple tasks, I made the conservative estimate that only one-third counted towards the sanctions motion.

     23.    Based on my review of the time records, I determined that the number of hours spent by Paul Weiss attorneys and support staff in connection with plaintiffs' motion for sanctions, and the amount of fees at the attorneys' hourly rates, are as follows:

|  | Hours | Hourly Rate |
|---|---|---|
| Robert Atkins | 122.27 | $225 |
| Martin London | 67.40 | $225 |
| Joseph Frank | 95.90 | $185 |
| Mathew Rosengart | 263.45 | $185 |
| Eli Wald | 304.21 | $130 |
| **TOTAL ATTORNEY TIME** | **853.23** | **$148,702.81** |
|  |  |  |
| **Support Staff** | 97.79 | $100 |
| **TOTAL SUPPORT STAFF** | 97.79 | **$9,779.00** |

| | |
|---|---|
| **TOTAL FEES** | **$158,481.81** |

24.     For purposes of allocating some of these attorneys' fees to Rasch (which I discuss below), I have divided the work on the motion for sanctions into three subcategories: the Court Hearings on October 30, 2001 and January 18, 2002 (including preparation time), the Proposed Findings of Fact and Conclusions of Law, and all other tasks. I made this division based on my review of the entries in the time records attached as Exhibit B:

| | Hours | Fees |
|---|---|---|
| The Court Hearings and Proposed Findings of Fact and Conclusions of Law | 616.30 | $102,642.35 |
| Additional Fees Related to the Prosecution of Plaintiffs' Motion for Sanctions | 384.32 | $66,149.96 |

**Rasch's Other Sanctionable Conduct**

25.     In addition to directly multiplying and confounding the proceedings on plaintiffs' motion for sanctions, Rasch engaged in other conduct designed to harass plaintiffs and divert the attention of the parties and the Court from Delgado's misconduct and false testimony. These litigation tactics needlessly multiplied the work required of Paul Weiss (and paid for by plaintiffs).

26.     Rasch also filed his "Emergency Motion for Extension of Time to Complete Discovery and Emergency Motion to Postpone Hearing on Motion for Preliminary Injunction and Sanctions" on January 8, 2002. On the same day that

12

plaintiffs filed a response to Rasch's motion, the Court denied it summarily. Rasch's motion to extend discovery was purely a dilatory tactic, and he should be held solely responsible for plaintiffs' expenses in responding to it.

27. Rasch filed two motions for sanctions and related relief: (i) Defendant's Motion to Suppress and for Sanctions, dated December 7, 2001; and (ii) Defendant's Supplemental Motion for Sanctions, Motion to Compel, and Motion to Amend Counterclaim, dated January 16, 2002. The Court ruled in its March 5, 2002 Order that all these motions were "baseless." Rasch is responsible for the time Paul Weiss lawyers and staff expended defending these motions, and the delay this useless practice caused.

28. In addition, on December 20, 2001, Rasch deposed Michael Diaz, another attorney for Earth Tech. Rasch's deposition of Mr. Diaz was another attempt to deflect attention from the claims against his client, and Rasch should be solely responsible for the expense and cost incurred in connection with this deposition.

29. These motions and the Diaz deposition were the creation of Rasch and were part of his deliberate effort to divert the parties' (and the Court's) attention from Delgado's misconduct by slinging mud on plaintiffs and their counsel. As the Court will recall, Rasch first moved on December 7, 2001 to sanction plaintiffs and their counsel for obtaining an affidavit from the CEO of UnitedStates.com (Philip Gordon) which proved that Delgado set up the extortionate e-mail accounts. Rasch also asked the Court to "suppress" Gordon's Affidavit. Rasch accused plaintiffs and counsel, without any basis in fact, of altering the e-mail account passwords, deleting Delgado's personal e-mail

account, and intercepting an e-mail from Delgado to Mr. Rasch with an outline for the

deposition of Earth Tech's General Counsel, Charles Alpert. Plaintiffs were required to

brief this baseless motion and submit affidavits to refute Rasch's outlandish charges,

which the court denied as baseless. *Earth Tech* v. *Delgado*, slip op. at 2 (M.D. Fla.

Mar. 5, 2002).

30.     On January 16, 2002, just two days before the second hearing on

plaintiffs' sanction motion, Rasch filed a "supplemental" sanctions motion, sought to

amend Delgado's counterclaims to assert civil rights claims against plaintiffs, and

required that he have the right to depose Charles Alpert for a second time. Again,

plaintiffs were forced to brief these baseless motions.

31.     Rasch's deposition of Michael Diaz was another wasteful

diversion. Rasch's examination had little to do with the merits of the case, or plaintiffs'

sanctions motion against Delgado. Instead, the deposition focused on Rasch's

accusations about plaintiffs' supposed threats against Delgado (and his friends) in

Venezuela. The Court specifically identified these accusations as "baseless, devoid of

merit, [and] an abuse of the judicial system" in deciding to sanction Rasch. (Order at 22-

23.)

32.     Accordingly, plaintiffs submit that 100% of the fees associated

with the Diaz deposition, and with sanctions and related motions filed by Rasch against

plaintiffs, should be attributed to Rasch.

33.     Paul Weiss lawyers had principal responsibility for responding to

the motions filed by Rasch against plaintiffs – indeed, we were the target of many of

14

Rasch's accusations – and handling the Diaz deposition.  The legal services necessitated by Rasch's conduct included legal research, drafting of legal memoranda, preparation of affidavits to rebut Rasch's baseless charges, and deposition preparation.  To deal with the sanctions motions filed by Rasch, I had to ask my partner, Gerard Harper, and associate Eric Stone, to assist me and Mr. Rosengart in the legal research and writing of our responsive papers and affidavits.

34.    I have reviewed our contemporaneous time records and identified the time spent performing the legal services in connection with the sanctions and related motions filed by Rasch against plaintiffs and the Diaz deposition.  A highlighted copy of the time records is attached as Exhibit C identifying those entries relating to this work. For entries relating solely to this work (*e.g.*, the services performed by Mr. Harper and Mr. Stone), 100% of the time was counted.  For entries relating to multiple tasks, only one-third of the time was counted.

35.    Based on my review of the time records, I determined that the number of hours spent by Paul Weiss attorneys and support staff in connection with the sanctions and related motions filed by Rasch and the Diaz deposition, and the amount of fees at the attorneys' hourly rates, are as follows:

|  | Hours | Hourly Rate (FL) |
|---|---|---|
| Robert Atkins | 14.33 | $225 |
| Gerard Harper | 5.12 | $225 |
| Joseph Frank | 1.10 | $185 |
| Mathew Rosengart | 67.46 | $185 |

| | | |
|---|---|---|
| Eric Stone | 52.00 | $130 |
| Eli Wald | 41.37 | $130 |
| **TOTAL ATTORNEY TIME** | **181.38** | **$29,197.95** |
| | | |
| **Support Staff** | .73 | $100 |
| **TOTAL SUPPORT STAFF** | **.73** | **$73.00** |
| | | |
| **TOTAL FEES** | | **$29,270.95** |

**The Expenses Incurred By Paul Weiss**

36.     The amount of expenses incurred by Paul Weiss in connection with all the legal work discussed above is $42,042.91.  To determine that amount, I first calculated the amount of hours devoted to the legal work that is the subject of this application as a percentage of the total hours spent on the entire case (48.7%), and then applied that percentage to the total expenses on the case.  (The expenses associated with plaintiffs' Lanham Act and related trademark claims were excluded).

37.     The categories of expenses included are as follows:

(a)     Foreign language translation services;

(b)     Court reporting services;

(c)     Lexis and Westlaw computer research services;

(d)     Other computer research services;

(e)     Library services;

16

(f)     Travel expenses, including flights, hotel rooms, car rentals, meals, and taxis;

(g)     Word processing;

(h)     Photocopying and document production;

(i)     Telephone calls and faxes;

(j)     Document retrieval services;

(k)     Postage, Federal Express, and messenger services; and

(l)     Taxis and car services.

## Allocation of Fees and Expenses to Delgado and Rasch

38.     In its May 15, 2002 Order, the Court directed that plaintiffs identify which fees and expenses are attributable to the conduct of Mr. Rasch.  (Order at 24.)  For the following reasons, we believe that Rasch should be liable for 50% of the cost of the two sanctions hearings and the Proposed Findings of Fact and Conclusions of Law, 100% for the sanctions and related motions he made against plaintiffs and their counsel, and 100% for his deposition of Michael Diaz.

39.     The Court found, "by clearing and convincing evidence," that Rasch's accusations against plaintiffs and plaintiffs' counsel – *e.g.*, that plaintiffs and counsel created the phony e-mail accounts, and sent the phony e-mails, and then conspired with the e-mail service provider (UnitedStates.com) to frame Delgado – were "completely baseless, devoid of merit, were an abuse of the judicial system, and were made in bad faith."  (Order at 23.)  Many of these accusations were made in the responsive papers Rasch filed and at the hearing on plaintiffs' motion for sanctions.

17

Rasch also prolonged the hearings by his unannounced plan to introduce live testimony and his frivolous stunts at the hearings, such as trying to introduce a letter he sent to the FBI (which the Court noted in its Order) and trying to introduce fabricated e-mails that appeared to be sent by me. In combination with eliciting Delgado's perjurious testimony, and accusing plaintiffs and plaintiffs' counsel of fabricating e-mails and interfering with Delgado's personal e-mail accounts, Rasch's conduct delayed and multiplied the proceedings, and extended the hearing unnecessarily. Accordingly, plaintiffs submit that Rasch should share with Delgado, on a 50-50 basis, the legal expense of the two Court hearings and the Proposed Findings of Fact and Conclusions of Law.

40.     In addition, Rasch undertook certain litigation initiatives directed against plaintiffs and plaintiffs' counsel for which he should be held fully accountable: (1) the Motion to Suppress Evidence and Motion for Sanctions, dated December 7, 2001; (2) the Supplemental Motion for Sanctions, Motion to Compel Discovery, and Motion to Amend Counterclaim, dated January 16, 2002; and (3) the December 20, 2001 deposition of Michael Diaz.

41.     For all the reasons I have discussed, and those discussed in the Affidavit of Randall Lord, plaintiffs respectfully submit that the total attorneys' fees and expenses from Paul Weiss and Jackson Lewis should be allocated as follows:

(a)     Judgment should be entered against Miguel Delgado awarding plaintiffs attorneys' fees of $165,811.48. That amount represents 100% of the fees for defending the counterclaims ($48,340.35), 50% of the fees for the two sanctions hearings and 50% of the fees for the Proposed Findings of Fact and Conclusions of Law

($51,321.17), and 100% of the fees from the remainder of the work on the motions for sanctions ($66,149.96.) Because the hours expended in completing these tasks represent approximately 65% of the total hours expended by Paul Weiss attorneys attributable to Delgado and Rasch, plaintiffs submit that Delgado should be ordered to pay 65% of the expenses ($27,327.90), for a total award against Delgado of attorneys' fees and expenses of $193,139.38.

        (b)     Judgment should be entered against Robert Rasch awarding plaintiffs attorneys' fees of $81,717.12. That amount represents 50% of the fees for the two sanctions hearings and 50% of the fees for the Proposed Findings of Fact and Conclusions of Law ($51,321.17), 100% of the fees for the sanctions and related motions made by Rasch against plaintiffs and 100% of the fees for the deposition of Michael Diaz ($30,395.95). Because the hours expended in completing these tasks represent approximately 35% of the total hours expended by Paul Weiss attorneys attributable to Delgado and Rasch, plaintiffs submit that Rasch should be ordered to pay 35% of the expenses ($14,715.02), for a total award against Rasch of attorneys' fees and expenses of $96,432.14.

## Conclusion

42.     For the reasons set forth above, I respectfully submit that this Court should award the attorneys' fees and expenses sought by plaintiffs as a sanction against Delgado ($193,139.38) and should award the attorneys' fees and expenses sought by plaintiffs as a sanction pursuant to 28 U.S.C. § 1927 against Rasch ($96,432.14).

Robert A. Atkins

Sworn to before me this
2ⁿᵈ day of July 2002

Notary Public

HERMAN M. WINKELS JR.
Notary Public, State of New York
No. 01WI6040965
Qualified in New York County
Commission Expires September 16, 2005

# DOCUMENT

# <u>NOT</u>

# SCANNED

_____ Exceeds scanner's page limit
_____ Physical exhibit prevents scanning
__X__ Other:_____

# **REFER TO COURT FILE**

Revised 8/11/99