UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARTH TECH, INC.,
a California Corporation,
TYCO INTERNATIONAL SERVICES, AG
a Swiss Corporation, and
TYCO INTERNATIONAL (US), INC.,
a Nevada Corporation,

     Plaintiffs,

     vs.              Case No.: 6:00-cv-1536-ORL-31 JGG

MIGUEL DELGADO BELLO,

     Defendant.

_____

MIGUEL DELGADO BELLO,

     Counterplaintiff,

vs.

EARTH TECH, INC.,
A California Corporation,

     Counterdefendant.

_____/

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

     Defendant, MIGUEL DELGADO BELLO (hereinafter "Delgado"), by and through his undersigned attorney, files this Memorandum in Opposition to Plaintiffs' Application for Attorneys' Fees and Costs, and states the following:

### A. FACTUAL BACKGROUND

     In an Order dated May 15, 2002, this Court granted Plaintiffs' Motion for

1

Sanctions dismissing Delgado's Counterclaim and ordering dismissal of Delgado's Counterclaim and ordering Delgado to pay Plaintiffs' for attorneys' fees and costs associated with the prosecution of their motion for sanctions and defense of Delgado's counterclaim. This Court also ordered the undersigned to pay attorneys' fees for conduct purportedly in violation of 28 U.S.C Section 1927. In that Order, the Court ordered Plaintiffs to submit a bill of costs and application for attorneys' fees together with supporting affidavits. That Application for Fees and Costs was filed by Plaintiffs on July 3, 2002, but not received by this office until July 8, 2002.

### B. Legal Standards

#### 1. Court's Inherent Power

Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances as the court has a wide range of lesser sanctions that will not deprive the litigant of his or her day in court. *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985); *Flaska v. Little River Marine Construction Co.,* 389 F.2d 885, 888 & n. 10 (5th Cir.) *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed. 2d 1387 (1968); *Donaldson v. Clark,* 819 F.2d 1551, 1557, n. 6 (11th Cir. 1987); *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542 (11th Cir.) *cert denied,* 510 U.S. 863, 114 S.Ct. 181, 126 L.Ed. 2d 140 (1993).

The principle underlying Section 1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really does bear the costs and does not foist expenses off on its adversaries. Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes. *In re TCI Limited,* 769 F.2d 441, 446 (7th Cir. 1985). Courts must be careful not to undercut the orderly development of the law and ethical representation. *In re TCI Limited,* 769 F.2d @ 447.

There are a number of factors that should be considered before a court determines sanctions to be assessed: 1) the degree of actual prejudice to the defendant; 2) the amount of interference with the judicial process; 3) the culpability of the litigant; and 4) whether the court warned the party in advance that dismissal of the action would be a

2

likely sanction for noncompliance). In addition, before dismissal should be ordered, the trial court should consider a fifth factor – the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). One of the more important factors to consider in determining sanctions is the degree of prejudice or harm which resulted from the actions of the offender. The proper sanction must be no more severe than is necessary to prevent prejudice to the movant. *The Gates Rubber Company v. Bando Chemical Industries, Limited,* 167 F.R.D. 90, 102-104 (D.C. Colo. 1996). Simply put, the court must balance the degree of misconduct (ie. the willfulness or bad faith) with the severity of prejudice. *The Gates Rubber Company v. Bando Chemical Industries, Limited,* 167 F.R.D. 90, 109 (D.C. Colo. 1996). The party seeking sanctions must show some actual loss resulting from the alleged conduct. *Granfinanciera v. Nordberg,* 872 F.2d 397, 401 (11th Cir. 1989).

    2.  Sanctions under 28 USC Section 1927

    An attorney charged with having violated Section 1927 has every right to expect and receive notice and a fair adjudication of his case. *Carlucci v. Piper Aricraft Corp., Inc.,* 775 F.2d 1440, 1449 (11th Cir. 1985). The attorney's due process rights entitle him/her to be afforded constitutionally adequate notice of the charges against him and given adequate opportunity to defend himself against these allegations. *Carlucci v. Piper Aricraft Corp., Inc.,* 775 F.2d 1440, 1451-52 (11th Cir. 1985). An attorney or party should be given early notice that his or her conduct may warrant Rule 11 or Section 1927 sanctions. Due process not only requires that the attorney have fair notice of the possible imposition of sanctions, but the reasons for their imposition as well. *Glatter v. Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995). Early notice can deter continuing violations, thereby saving monetary and judicial resources. Similarly, a failure to provide such early notice may result in a corresponding reduction in the amount of any costs and attorneys' fees awarded. *Donaldson v. Clark,* 819 F.2d 1551, 1559-60.

    Section 1927 is penal in nature and should be strictly construed so as to allow only for excess costs incurred by the attorney's vexatious behavior and consequent multiplication of the proceedings. *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1382 (5th Cir. 1979); *O'Rear v. American Family Life Assurance Company of Columbus, Inc.,* 144 F.R.D. 410, 414 (M.D.Fla. 1992). Any costs or fees that were not awarded as part of

3

the sanctioned conduct would be "excess" costs and would be excessive. *O'Rear v.*
*American Family Life Assurance Company of Columbus, Inc.,* 144 F.R.D. 410, 415
(M.D.Fla. 1992).

Something more than a lack of merit is required for Section 1927 sanctions or
they would be due in every case. *McMahan v. Toto,* 256 F.3d 1120, 1128 (11h Cir.
2001). Our adversarial system does not require counsel to actively pursue the interest of
an opposing litigant. Where additional proceedings are not causally linked to any
objectionable conduct by counsel, then it is not proper to sanction the attorney under
Section 1927 with the costs and attorneys fees in connection with such proceedings.
*Peterson v. BMI Refractories,* 124 F.3d 1386, 1397 (11th Cir. 1997).

The attorney should be given an opportunity to present evidence as to the
reasonableness of his/her inquiry before making the claims or arguments in question to
enable the District Court to properly evaluate the reasonableness of the attorney's
conduct. *Jerelds v. The City of Orlando,* 194 F.Supp. 2d 1305, 1309 (M.D. Fla. 2002).

3. Calculation of Attorneys' Fees and Costs

The Supreme Court has determined the amount of a reasonable fee is the number
of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.
*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed. 2d 40 (1933). A
reasonable hourly rate is the prevailing market rate in the relevant legal community for
similar services by lawyers of reasonably comparable skills, experience, and reputation.
*Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.
1988). The applicant bears the burden of producing satisfactory evidence that the
requested rate is in line with prevailing market rates. Satisfactory evidence of the
prevailing market rate at a minimum is more than the affidavit of the attorney performing
the work. Affidavits from the litigating attorneys provide little or no evidentiary support
for an award. Satisfactory evidence necessarily must also speak to rates actually billed
and paid in similar lawsuits. *Norman v. Housing Authority of City of Montgomery,* 836
F.2d 1292, 1299 - 1304 (11th Cir. 1988).

The next step in computation of the lodestar is the ascertainment of reasonable
hours. Inquiry into the reasonable number of hours focuses on the exercise of "billing
judgment" – exclusion of those hours not reasonably billable to a client irrespective of

4

counsel's skill, therefore the Court must deduct for redundant hours. *Ruszala v. Walt Disney World Company*, 132 F. Supp.2d 1347, 1353-54 (M.D.Fla. 2000). A court must exclude excessive, redundant or otherwise unnecessary hours. Excessive or unnecessary hours are those hours that would be unreasonable to bill to ones' client. Redundant hours occur when a client has multiple attorneys and the attorneys are unreasonably performing the identical tasks, and therefore unreasonable to bill to one's adversary irrespective of the skill, reputation or experience of counsel. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). Generalized statements concerning reasonableness are of little or no assistance to the Court. *Ruszala v. Walt Disney World Company*, 132 F. Supp.2d 1347, 1354 (M.D. Fla. 2000).

Where there is apparent duplication of efforts undertaken by counsel or where counsel spent a lot of time reviewing documents with which they should have been familiar, the Court should exclude such time from the fee application. *In re TCI Limited, Inc.*, 769 F.2d 441, 448 (7th Cir. 1985); *Mills v. Freeman*, 118 F.3d 727, 732, n. 2 (11th Cir. 1997). Where there are multiple attorneys working on one case, reduction of redundant hours is warranted where attorneys are unreasonably doing the same work. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999). Time billed by excessive lawyers in a courtroom or conference when fewer would do may obviously be discounted. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Similarly, a court would abuse its discretion by not excluding excessive hours for internal communications among the plaintiffs' attorneys, whether by phone or e-mail. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 435 (11th Cir. 1999). An award for time spent by two or more attorneys is proper only as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Johnson v. University College of Univ. of Ala. In Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983).

The Court must also deduct time spent on discrete and unsuccessful claims. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 143 F.R.D. 277, 283 (M.D. Fla. 1992). *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Courts are not authorized to be generous with the money of others, and it is as much the

duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

As far costs to be taxed, routine office overtime normally absorbed by the practicing attorney is not awardable as part of a sanction. *George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1298 (M.D.Fla. 2000); *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 438 (11th Cir. 1999).

The extent to which the applicant has not provided the Court sufficient evidence to support its claim for fees and costs is a factor that a court may use in determining whether certain amounts requested were unreasonable. *Coastal Fuels Marketing, Inc. v. Florida express Shipping Co., Inc.,* 207 F.3d 12471253 (11th Cir. 2000). A number of Circuits have held that a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request is outrageously unreasonable. *Fair Housing Council of Greater Washington v. Landow,* 999 F.2d 92 (4th Cir. 1993); *Lewis v. Kendrick,* 944 F.2d 949 (1st Cir. 1991); *Brown v. Stackler,* 612 F.2d 1057 (7th Cir. 1980); *Loranger v. Stierheim,* 10 F.3d 776, 782, n. 8 (11th Cir. 1994). Where the entire application for fees is "absurd", it may be rejected. *In re TCI Limited. Inc.,* 769 F.2d 441, 449 (7th Cir. 1985). At the very least, to the extent that the absence of certain testimony about a firm's billing records means that specific questions the court might have go unanswered, that is a factor which a court may use in determining whether certain amounts requested were unreasonable. *Coastal Fuels Marketing v. Florida Express Shipping Co., Inc.,* 207 F.3d 1247, 1253 (11th Cir. 2000).

The burden is on the fee applicant to provide sufficient evidence for the Court to divide between successful or unsuccessful claims, or between claims for which the Court has allowed recovery and those for which no recovery is allowed. *Texas State Teachers Assoc., et al. v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1295 (M.D.Fla. 2000). Moreover, the District Court may reduce a fee application by denying travel time of out-of-state counsel where the case could have been litigated by able local counsel. *George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1290 (M.D.Fla. 2000); *Dillard v. City of Foley,* 995 F.Supp. 1358, 1370-1 (M.D. Ala. 1998)..

4. **Evidence of Financial condition**

6

In determining the amount of money sanctions to be awarded against a party or an attorney, the district court is required to make an inquiry into a party's or attorney's ability to pay sanctions in order to prevent additional violations of Rule 11, Section 1927 or the Court's inherent power. Particularly, in the case of Rule 11 and Section 1927, such inquiry must be made to ensure that the claimed sanctions are not being used as a vehicle to drive an attorney out of practice. *Baker v. Alderman*, 158 F.3d 516, 529 (11th Cir. 1998). Similarly, it is not an abuse of discretion for a district court to award a fraction of the actual and reasonable fees requested sufficient to deter future violations. *Baker v. Alderman*, 158 F.3d 516, 529 (11th Cir. 1998).

Ultimately, it is incumbent on the Court to evaluate whether a lesser sanction than that sought by Plaintiffs would be appropriate under all of the circumstances of this case. *Brooks v. United States*, 837 F.2d 958, 96 (11th Cir. 1988). Another factor in determining the amount of fees and costs to be assessed as a sanction under Section 1927 is the fee that the attorney is receiving from the client for his services. *Carlucci v. Piper Aricraft Corp., Inc.*, 775 F.2d 1440, 1446 (11th Cir. 1985).

5. Plaintiffs have shown no prejudice.

A court should ordinarily consider a number of factors as part of its evaluation of a proper sanction (whether dismissal or monetary):

a)      the degree of actual prejudice to the defendant;

b)      the amount of interference with the judicial process;

c)      the culpability of the litigant;

d)      whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and

e)      the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992); *Gates Rubber Company v. Bando Chemical Industries, Limited*, 167 F.R.D. 90, 101 (D.C. Colo. 1996).

In essence, the culpability of the offender is to be weighed against the degree of prejudice or harm which resulted from the actions of the offender. *Gates Rubber Company v. Bando Chemical Industries, Limited*, 167 F.R.D. 90, 102 (D.C. Colo. 1996). The Eleventh Circuit has also determined that the degree of prejudice to the party should

7

be considered in determining the appropriateness and degree of sanctions to be assessed against the offender. *Wouters v. Martin County Florida*, 9 F.3d 924, 934 (11th Cir. 1993).

## C. ARGUMENT

### 1. Appropriateness of Dismissal of Delgado's Counterclaim and Sanction of Fees and Costs

The Court in its May 15, 2002 Order discussed the culpability of Delgado and the undersigned and this discussion is not intended to question or reargue those findings. However, Plaintiffs argued to the Court both in the October 31, 2001 hearing and in the January 18, 2002 hearing that Delgado was in no position to pay a monetary sanction, and therefore, dismissal of his Counterclaim was the only possible effective remedy available to the Court (Docket # 53, Transcript pp. 37-38; Docket # 88, Transcript pp. 296; 305-306). Based on that argument, the Court dismissed Delgado's Counterclaim and then ordered Delgado to pay for Plaintiffs' attorneys fees and costs associated with defending against Delgado's Counterclaim and prosecuting their Motion for Sanction.

By Plaintiffs' own admission, Delgado has virtually no income and no assets from which to pay any sanctions (See Exhibit 1, Delgado's Affidavit). It was for that reason Plaintiffs sought dismissal of his Counterclaim as a penalty for his alleged acts.

Without arguing the appropriateness or impropriety of the Court's Order dismissing Delgado's Counterclaim, it would be inappropriate to punish Delgado by both dismissing his Counterclaim and ordering him to pay Plaintiffs' attorneys fees and costs.

Assuming that dismissal as a sanction is to be the "last resort" under controlling case law, then it would stand to reason that dismissing Delgado's Counterclaim is punishment enough for his alleged transgressions. For the Court to dismiss Delgado's Counterclaim and order him to pay Plaintiffs' fees and costs associated with the defense of that Counterclaim as well as prosecution of Plaintiffs' Motion for Sanctions would require the Court to ignore Delgado's financial plight and the required analysis of the efficacy of lesser sanctions. Not even Plaintiffs have sought such double penalty.

Similarly for the Court to both dismiss Delgado's Counterclaim and order him to pay Plaintiffs' fees and costs would require the Court to ignore the fact that Plaintiffs have failed to demonstrate any prejudice from the receipt of the alleged faxes and e-mails. Arguing that a sole ex-employee in Venezuela could somehow extort a settlement

out of a multi-billion dollar global conglomerate defies not only logic, but all sense of reason. Moreover, there was absolutely no evidence presented by Plaintiffs that Delgado, a Venezuelan native, knew or should have know what extortion was under U.S. law or that his alleged threats were improper. The Court is to fashion an appropriate remedy that fits the particular offense, it must ensure that the remedy keeps in mind the purpose of the sanction to deter similar conduct and punish the subject conduct. *Sussman v. Salem, Saxon and Nielsen,* 154 F.R.D. 294, 299 (M.D. Fla. 1994). Obviously, punishment is inappropriate if there is no showing that the alleged offender knew or should have known that their conduct was inappropriate. [1] In order to satisfy traditional notions of due process, the conduct prohibited must be ascertainable, there must be evidence that Delgado had notice that such conduct was prohibited and such conduct should not be the basis of the sanction *after* the conduct occurred. *In re Finkelstein,* 901 F.2d 1560, 1565 (11th Cir. 1990).

Delgado submits that in absence of any evidence that he knew or should have known that the alleged threats to go to the press or engage in other activity against Tyco was improper activity, then imposition of a double sanction (much less a single sanction) against him is inappropriate and violates his due process rights. Therefore, Delgado submits that the absence of any evidence that he knew or should have known of the impropriety of the alleged threats, particularly in light of his dire financial condition, should form the basis for the Court to determine not to impose any further sanctions on Delgado beyond dismissal of his Counterclaim.

2. General Analysis of Plaintiffs' Application for Fees and Costs

At no time have Plaintiffs even argued, much less presented any evidence, that Plaintiffs incurred any actual prejudice from the Delgado's alleged activity. Plaintiffs have not even argued that they were swayed in the least by the alleged faxes or e-mails. Hence, in evaluating whether Delgado is required to reimburse Plaintiffs any fees and costs incurred, the Court should recognize that Plaintiffs suffered no prejudice from the alleged faxes and e-mails. In fact, it is uncontroverted that Plaintiffs' expert Haven

---

[1]  It is particularly noteworthy that the Eleventh Circuit Court of Appeals found that similar threats to go to the press if the other party did not settle the substantive claims did not involve impropriety and reversed the suspension of the attorney who engaged in such conduct. *In re James Finkelstein,* 901 F.2d 1560, 1562-65 (11th Cir 1990).

intercepted most of the e-mails and redirected them to himself. Hence, there is no evidence that the allegedly intended recipients ever saw the alleged e-mails.

Plaintiffs assert that they are entitled to recover $289,571.52 from Delgado and the undersigned. Not only is this claimed amount excessive and unreasonable on its face, it is especially incredible in light of the Plaintiffs' previous application for fees and costs (Docket #s 101 & 102) in which Plaintiffs sought another $38, 457.36 from Delgado (Docket # 101). That means that Plaintiffs have sought to recover from Delgado and the undersigned a total of $328,028.88 in total fees and expenses incurred as a result of preliminary motions and allegedly defending against Delgado's counterclaim (when we never reached the merits). [2] We submit that these assertions of fees and costs accumulated in what Plaintiffs have described as a "simple employment case" against a former employee, are astronomical and patently unreasonable. Delgado and the undersigned assert that the Court should dismiss the instant application for fees and expenses as patently unreasonable on its face (see Exhibit 2, Karatinos Affidavit).

Before engaging in a detailed analysis of the Jackson Lewis and Paul Weiss fee records, it is appropriate to discuss certain general allocations purported by Plaintiffs without any evidentiary support. Plaintiffs suggest that the Court apply an artificial % of the fees be applied to the undersigned based on incorrect assertions. Plaintiffs suggest that 50% of the fees and costs associated with the two hearings on October 31, 2001 and January 18, 2002 should be taxed against the undersigned; that 50% of the fees and costs of the Proposed Findings of Fact and Conclusions of Law Regarding Sanctions should be taxed against the undersigned; and that 100% of the cost of the deposition of Michael Diaz should be taxed against the undersigned. These suggested %s are not based on credible supporting evidence. There is no factual basis for claiming that the undersigned's conduct multiplied the proceedings in either of the two hearings. Nor is that any factual basis for claiming that the undersigned's conduct multiplied the proceedings as to Plaintiffs' preparation of Proposed Findings – requested by the Court to address *only* Plaintiffs' Motion for Sanctions.

---

[2]   Moreover, according to Exhibit A attached to Atkins Affidavit (attached to Plaintiffs' Application for Fees and Costs), Tyco has paid the Paul, Weiss law firm alone in conjunction with this case through May 31, 2002 -- $1,132,740.00 (fees and expenses). This is particularly noteworthy as it does not include fees charged by the Jackson, Lewis firm or the Greenberg, Traurig firm, both of which have provided additional services to Tyco in this case – that through May 31, 2002 was not even close being tried on the merits.

3.   Imposition of Sanctions on the undersigned under Section 1927

Neither Plaintiffs nor the undersigned received service of the Court's Order dated May 15, 2002 (Docket # 116).  Rather, on or about May 17, 2002, both Plaintiffs and the undersigned received a Court Order in an entirely unrelated case.  I contacted the Clerk's office to advise them that I had received the improper service of an order in a different case and suggested that they needed to ensure proper service of that order.  I did not receive a copy of the Court's May 15, 2002 Order until Prudential filed a copy to the Eleventh Circuit U.S. Court of Appeals in an entirely unrelated matter.  That filing was received on or about June 1, 2002, beyond the 10 day period to file a Motion for Reconsideration (Exhibit 3, Rasch's Affidavit).

In addition, the undersigned never did receive service of the Court's Order date March 5, 2002 (Docket # 104).  The undersigned was under the mistaken impression that the Court had not ruled on Delgado's two Motions for Sanctions until receiving the May 15, 2002 Order on or about June 1, 2002.  I was under the impression that the Court was still considering Delgado's two Motions for Sanctions.  I then suspected that I had not been served another Court Order and upon searching the Docket Sheet discovered the March 5 order listed and obtained a copy from the Clerk's office.  By that time it was again too late to file a Motion for Reconsideration (Exhibit 3, Rasch's Affidavit).

Although Plaintiffs had argued that I should be sanctioned under Section 1927 for filing Delgado's two Motions for Sanctions against them, the Court's Order of March 5 (Docket # 104) inferentially denied that request by ignoring it and refusing to rule on it. Although the Court found the two motions to be "baseless" and "frivolous", it did not find that they were filed in "bad faith".  Therefore, I was never given any notice by this Court that it was considering that anything I did in this case was potentially sanctionable under Section 1927 until receiving the May 15 Order.

This Court has previously granted an accused attorney the opportunity to provide evidence to demonstrate why sanctions should not be ordered under Section 1927. *Jerelds v. The City of Orlando*, 194 F. Supp.2d 1305 (M.D. Fla. March 27, 2002).

Therefore, the undersigned will take this opportunity to provide information regarding the reasonableness of his inquiry and argument. [3]

In preparation for the October 31, 2002 hearing, Delgado and 3 other witnesses traveled from Venezuela to Orlando to testify in that hearing. They insisted that they had met with the U.S. Consulate in Venezuela who advised them to make a criminal complaint to the U.S. authorities concerning their allegations. I met and took information from all four individuals and reduced the information to affidavits which each of them signed. These affidavits were then filed along with the complaint filed with the FBI. It was based on this sworn testimony that the undersigned filed the Supplemental Motion for Sanctions. The undersigned not only had no reason to believe that this information was in any manner false, after filing the Supplemental Motion for Sanctions, Plaintiffs did not deny the activity alleged to have been committed by the Arocha firm in Venezuela (controverting only the allegations regarding threats by Michael Diaz). The only reference Plaintiffs made to Delgado's allegations regarding illegal behavior of the Arocha firm was to attempt to discredit the 3 independent witnesses as Delgado's friends and then to say "Even if there were any truth to Delgado's charges, plaintiffs' purported behavior in the Venezuelan lawsuits is not a matter for this Court". (Docket # 96, p. 6). However, Plaintiffs could give no explanation as to how the undenied behavior of the Arocha firm did not impact this Court in light of the fact that all 3 of these same witnesses appeared to testify before this Court on October 31, 2001.

In Delgado's 1st Motion for Sanctions (Docket #s 71 & 72), Delgado asserted that Plaintiffs failed to serve copies of subpoenas issued to Phillip Gordon, owner of the free e-mail services, and then served an unenforceable subpoena on Gordon (which Delgado never had any opportunity to oppose). After obtaining a tainted affidavit from Gordon they submitted that affidavit to the Court in support of their Motion for a Protective Order and for a Restraining Order to Preserve Evidence. Plaintiffs' response was "We do acknowledge error in not providing advance notice to Delgado of process served on

---

[3] This presentation is not intended to disrespect the Court's May 15, 2002 Order, but rather present evidence and argument that we never had an opportunity to present given the absence of service of the March 5, 2002 and May 15, 2002 Orders until after June 1, 2002. The evidence and argument are being offered to allow the Court to properly evaluate the amount of sanctions to be imposed upon the undersigned.

United States.com. But that oversight did not prejudice Delgado." (Docket # 73, p. 3).  [4]
Further, in response to Delgado's claim that Plaintiffs interfered with and intentionally
delayed the deposition of Gordon until *after* the close of the Court ordered discovery
period, Plaintiffs said "As for Delgado's claim that plaintiffs' counsel (Mr. Atkins)
somehow interfered with Mr. Gordon's deposition, the truth is that the deposition went
forward on January 15, 2002 . . . ." (Docket  # 96, p. 6).  Plaintiffs gave no further
explanation of their alleged conduct.

By not providing any evidence regarding Delgado's allegations of witnesses
tampering, attempted bribery and other threats by Plaintiffs, Plaintiffs tacitedly admitted
the activity claiming only that the alleged conduct related only to the Venezuelan suit, not
impacting this Court.  Further, Plaintiffs' admitted that they did not properly serve
Delgado with copies of the subpoena to Gordon until *after* they had already obtained an
affidavit from Gordon and had filed that affidavit with the Court.

This is not the time to argue the Court's March 5 Order finding that Delgado's
motions were "baseless" and "frivolous".  However, the undersigned has had no other
notice that the Court considered such filings in "bad faith" and submits this information
and evidence in absence of notice that the Court was considering the issue and absence of
any previous opportunity to address same.

The undersigned submits that this information should be taken into consideration
by the Court in its determination of the amount of penal sanctions that should be imposed
upon the undersigned.  Further, the evidence provided by the undersigned as to his
current financial situation should also be considered in evaluating the amount of penal
sanctions to be imposed on him (Exhibit 3, Rasch's Affidavit).

4. Inadequacy of Plaintiffs' Application for Fees and Costs Generally.

In addition to the fact that Plaintiffs' Application for reimbursement of
$289,571.52 is outrageously unreasonable and should be denied on that basis alone, there
are a host of deficiencies in the Application.

Initially, although Plaintiffs have the burden of producing satisfactory evidence
that the requested rates are in line with the prevailing market rates, Plaintiffs did not do

---

[4]   However, Plaintiffs did not explain how denying Delgado an opportunity to object to the third party
subpoena would not prejudice him when they subsequently offered the subpoena in support of their Motion
for Protective Order.

so. Plaintiffs simply claimed that they were seeking the rates charged by Jackson, Lewis firm, one of Plaintiffs' firms involved in this litigation. Plaintiffs did not even attempt to establish the prevailing market rates for litigating sanctions. Plaintiffs further submitted only affidavits from two attorneys specifically involved in this litigation on behalf of Plaintiffs. Controlling law in this Circuit is that satisfactory evidence of the prevailing market rate at a minimum is more than an affidavit of the attorney performing the work.

     5.  Inadequacy of Plaintiffs' Assumptions.

     In arguing the amount of sanctions that should be imposed on the undersigned, Plaintiffs made a number of factually baseless and unsupported assumptions. First, they claim that the undersigned should be charged with 50% of the cost of the Court hearings on Plaintiffs' Motion for Sanctions held on October 31, 2001 and January 18, 2002. They provide no support for that assertion and ignore the fact that the Court refused to allow the undersigned any opportunity to argue Delgado's Motions for Sanctions at either hearing. Both hearings addressed Plaintiffs' Motion for Sanctions, not Delgado's Motions. Therefore, I did not vexatiously multiply either proceeding. Plaintiffs attempted to support their specious claim by suggesting that the undersigned "prolonged the hearings by his unannounced plan to introduce live testimony and eliciting Delgado's perjurious testimony" (Plaintiffs' Application, p. 10). Not only is that not true, but they know it is not true – yet they continue to assert statements of fact that are clearly erroneous when viewed against the uncontroverted record evidence. Even the Court admitted that the scheduling order for the 1st hearing was not clear leading to some understandable confusion and allowed the testimony (Docket # 53, pp. 50-51). In fact, the January 18, 2002 hearing was scheduled with the understanding that Delgado would conclude his oral testimony and submit the oral testimony of other witnesses. [5] Therefore, the undersigned did not multiply either hearing and none of the cost of these hearings can be imposed on the undersigned.

     Second, Plaintiffs claim that the undersigned should be responsible for 50% of the cost of preparation of the Proposed Findings of Fact and Conclusions of Law. Again,

---

[5] Plaintiffs cite the Court to the January 18, 2002 hearing transcript at pp. 49-52. However, there are no such pages for that hearing. The hearing transcript for the January 18, 2002 hearing starts at p. 125 and concludes on p. 330.

those Proposed Findings addressed Plaintiffs' Motion for Sanctions – not Delgado's Motions and the cost of preparation of same cannot be imposed on the undersigned.

Third, Plaintiffs claim that the undersigned should be responsible for 100% of the cost of the deposition of Michael Diaz. This is simply preposterous. Plaintiffs included an affidavit from Michael Diaz as an attachment to their Motion for Sanctions against Delgado. This Court issued an order dated October 31, 2001 giving Delgado the opportunity to depose any of the affiants whose affidavits were submitted by Plaintiffs in support of their Motion.   A review of that affidavit (Docket # 32) reflects that Diaz discussed a meeting and conversation with Delgado. It was that meeting and conversation that was the subject of the deposition of Diaz (Exhibit 3, Rasch Affidavit). To argue that the undersigned should be taxed with the cost of that deposition is specious and unfounded.

   6.  Analysis of Jackson, Lewis Time Entries

Jackson, Lewis bases calculations of hours worked on the % assumptions set forth In Plaintiffs' Application, and for that reason alone, the submission is tainted and without factual foundation.

In addition, Jackson, Lewis has included many entries that have multiple tasks listed, only some of which relate to the allegedly sanctionable conduct. Many of the entries instead relate directly to Plaintiffs' original claim of breach of duty of loyalty and are not properly included in its Application for Fees and Costs. We have specifically noted objections to each questionable Jackson, Lewis entry in Exhibit 4, attached hereto. In addition, Jackson, Lewis has included many entries that reflect work performed on factual or legal issues that were unnecessary or found to be legally unfounded. The case law supports the notion that the Court should exclude time spent on discrete and unsuccessful claims.

What stands out most in the Jackson, Lewis time entries is the fact that a large majority of time was spent in communication with Plaintiffs' other attorneys. When we review the time entries of Paul, Weiss, we will see this defect reflected to the extreme. Such excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed. Such time is simply unreasonable to bill to a client, and therefore, improper and unreasonable to bill to one's adversary. To the extent that the multiple

15

lawyers are working on distinct projects it would properly be included.  However, it is evident that a large majority of Jackson, Lewis time was spent merely communicating with Plaintiffs' New York counsel (or even other Orlando counsel) without any basis to determine that the respective attorneys were working on distinct projects.

7.  Analysis of Paul, Weiss Time Entries

It is apparent that the Paul, Weiss time entries are much more summary in nature than those submitted by Jackson, Lewis.  Note that Jackson, Lewis time entries provide entries down to the 1/10 of a minute or 6 minute intervals, a common method of recording billable time.  Paul, Weiss time entries do not reflect the original time entries by the attorneys, but rather purportedly reflect a summary of all time worked by a given individual in a particular day relating to the Delgado case.  There is no way to ascertain the amount of time expended on each activity from these time entries (Exhibit 2, Karatinos Affidavit).  For example, time worked on investigating and defending Delgado's Counterclaim; or time spent working on Plaintiffs' original claim of breach of contract.  We would submit that these entries reflect summaries and not reflective of the initial time entries reported by the individuals reporting time worked in this case.  Since it is Plaintiffs' burden to provide satisfactory evidence which properly divides between successful and unsuccessful claims, between the various issues involved in this case (some of which the Court said are to be included while others are not), any entries which contain multiple issues are not properly includable in the Application for Fees and Costs.

Plaintiffs make the assertion that "most of the focus" of the depositions of Delgado and Alpert involved Delgado's Counterclaims (Plaintiffs' Application for Fees and Costs, p. 7).  That is simply not true.  In fact, approximately 80% of each of those depositions involved questioning relating to Plaintiffs' breach of loyalty claim while the other 20% involved the Plaintiffs' original Motion for Sanctions.  Very little if any questioning related to Delgado's Counterclaim (Exhibit 3, Rasch's Affidavit).

In reviewing the Paul, Weiss time entries and our objections to each entry (Exhibit 5), one can readily see that Plaintiffs are attempting to load up the time entries with time spent on prosecuting their original claim of breach of loyalty or pursuing unsuccessful claims that were either abandoned as not supported by the facts or rejected by the Court.  These time entries must be removed from the proper summary of time.

16

Also included in Paul, Weiss time entries is time expended by "non-legal support staff" (Plaintiffs' Application for Fees and Costs, p. 6, 7). Such non-legal support staff properly falls in the category of non-billable clerical overhead of the firm and not properly billable to the client. This is particularly true of such clerical entries as making up binders, photocopying, and the like, whether performed by attorneys or whomever.

Probably the most obvious exaggeration by the Paul, Weiss time entries is the gross amount of excessive and redundant time spent by multiple attorneys reviewing the same work. This is not only evident throughout the entire period of April 1, 2001 through May 31, 2002, but more egregious around the two hearings in October, 2001 and January, 2002 (Exhibit 2, Karatinos Affidavit). In fact, they are attempting to shift the cost of 4 lawyers (3 Paul, Weiss lawyers and 1 Jackson, Lewis lawyer) preparing for and attending the October, 2001 hearing and 5 lawyers and 2 paralegals (4 Paul, Weiss lawyers, 2 Paul, Weiss paralegals and 1 Jackson, Lewis lawyer) preparing for and attending the January, 2002 hearing.. Similarly, travel time by such out of town lawyers is not properly included in the time entries. These entries are simply overkill and an improper attempt to shift this expense to Delgado and the undersigned.

8.   Paul, Weiss claim for expenses.

Paul, Weiss claimed to have expenses in connection with all their legal work in the amount of $42,042.91 (Plaintiffs' Application for Fees and Costs, p. 12). However, they do not indicate how they determined that amount was attributable to the areas the Court indicated were sanctionable. Nor do they itemize the costs so that one can compare to the individual cost lines on their billing statement (Exhibit A, pp. 1-3, attached to Atkins Affidavit). [6]   Plaintiffs have simply failed to provide any support for their claim as which of these expenses were related to the areas the Court indicated were sanctionable and the other work billed to their client.

An evaluation of the various expenses listed by Plaintiffs without associated cost figures reveal several questionable claims. First, the time and billing records of Paul, Weiss reflect that they billed the Plaintiffs $20,212.06 for Computer research. However,

---

[6]   If Plaintiffs used the same % theory applied to costs that they applied to fees, they would have submitted a claim for only $24,275.49 or 25.5% of the total expenses incurred in the entire case ($289,571.52 fees and expenses sought divided by $1,132,740 total fees and expenses in the entire case) (Exhibit A, attached to Atkins Affidavit). However, there is no more rationalization for that % approach than the one used by Plaintiffs.

17

it is commonly known that major law firms frequently purchase packages of time from Westlaw and Lexis that become part of their normal overhead and not specifically billed to the client. (Exhibit 3, Rasch Affidavit).

Plaintiffs claim in Atkins' Affidavit that they are entitled to reimbursement for "Library services" (Atkins Affidavit, p. 16). Yet "Library services" do not appear at all on Paul, Weiss summary of disbursements for Plaintiffs (Exhibit A, pp. 1-2, attached to Atkins Affidavit). Therefore, such phantom expense is not properly charged to Delgado and the undersigned. The problem is that we don't know what this represents of the total.

Another line item is $16,212.06 for travel for out-of-town counsel (Exhibit A attached to Atkins Affidavit). Since Plaintiffs have not adequately demonstrated that competent counsel to represent Plaintiffs was unavailable in and around Orlando, it is improper to attempt to shift the cost of using out-of-town counsel to Delgado and the undersigned.

Atkins Affidavit suggests that Plaintiffs are claiming expenses associated with "Word Processing". According to Exhibit A, p. 2 (attached to Atkins Affidavit) they billed Plaintiffs $17,193.25 for word processing. However, word processing is considered part of clerical overhead not properly billed to the normal client. Therefore, not properly charged to Delgado and the undersigned.

Atkins Affidavit seeks reimbursement for photocopying and document production. According to the Paul, Weiss billing to Plaintiffs, they charged $20,421.57 for copies. At $.07 per copy, that would be 291,736.71 copies in this case. That is simply overwhelming and excessive. That excessive cost was incurred in the number of books put together for every Paul, Weiss lawyer who worked on this case as reflected in the hours billed by Paul, Weiss (eg. entries for Wilson for 10/25/01, 10/26/01, 10/29/01, 12/5/01, 12/11/01, 12/12/01, 1/2/02, 1/7/02, etc., pp. 14 - 26 of Paul, Weiss bill (Exhibit A, attached to Atkins Affidavit). Such copying activity and the number of copies generated is simply excessive, improper to bill to a normal client, and therefore, improper to charge to Delgado and the undersigned.

As far as document production, Plaintiffs objected to and refused to provide any documents relating to Delgado's counterclaim (Exhibit 3, Rasch Affidavit). The only documents retrieved and produced by Plaintiffs to Delgado in discovery were those that

related to their initial claim of breach of loyalty.  Therefore, it is improper to charge any costs of document reproduction or document retrieval to Delgado and the undersigned.

As for taxi and rental car services, it can only be assumed that this expense was incurred by Paul, Weiss employees traveling from New York to Orlando.  The Paul, Weiss bill reflects $1638.18 in taxi and auto rental expenses.  Since this relates to out-of-town travel without any factual support for the need of out-of-town attorneys, this expense cannot properly be shifted to Delgado and the undersigned.

9.   Summary of Time Entries and Expenses.

Given the fact that both Jackson, Lewis and Paul, Weiss reported their time entries with multiple activities for each day, it is impossible to properly and fairly divide up the time between the multiple activities.  This is particularly true when some of those time entries have no relation to the matters the Court instructed them to include – eg. unnecessary activity or work, or related to Plaintiffs' original claim of breach of loyalty. Plaintiffs further tried to load up the entries by improperly and inaccurately representing that Delgado's and Alpert's depositions focused mostly on Delgado's counterclaims.

If one eliminates the defective time entries in both the Jackson, Lewis entries and the Paul, Weiss entries, the fees and expenses that proper to submit according to the Court's May 15, 2002 Order total $33,957.50 to Delgado and $11,898.00 to Rasch. However, given the excessive and unsupported nature of Plaintiffs' Application for Fees and Costs in total, we assert that the entire Application should be rejected as failing to meet Plaintiffs' burden of providing proper evidence of the time and expenses attributable to each area of sanction as instructed by the Court.

10.   Inability to pay.

More importantly, in addition to the apparent defects in Plaintiffs' Application for Fees and Costs, it is admitted by Plaintiffs that Delgado has no means of paying any monetary sanctions.  It was on this basis that Plaintiffs argued that Delgado's Counterclaim should be dismissed.  Now for them to come back and seek reimbursement for fees and costs from Delgado is excessive and unconscionable.

In light of the additional information provided above regarding the information that the undersigned observed before filing the two Motions for Sanctions, and in light of my current financial condition, the undersigned is in no position to pay any monetary

19

sanctions. I have no ability to borrow more money, having been turned down for any additional loans.

**D. SUMMARY**

The essence of this story is that suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.

Delgado should not be penalized by dismissing his Counterclaim and then forced to pay for fees and costs on top of that. The undersigned simply represented his client and argued what the evidence indicated was warranted. Plaintiffs' Application for Fees and Costs is excessive, egregious, and improperly charged to either Delgado or the undersigned in light of all of the circumstances.

Respectfully submitted,

Robert W. Rasch
Florida Bar No. 0890560
ROBERT W. RASCH, P.A.
201 Live Oak Lane
Altamonte Springs, Florida 32714
(407) 865-7473
Fax (407) 865-5979

**CERTIFICATE**

I HEREBY CERTIFY that a true and correct copy of this document has been served by U.S. mail this 19th day of August 19, 2002 to Tucker H. Byrd, Esq., Greenberg Traurig, P.A., 450 South Orange Avenue, Suite 650, Orlando, Florida 32801.

Robert W. Rasch

20

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

_____ Exceeds scanner's page limit

___✓___ Physical exhibit prevents scanning

_____ Other: ▓▓▓▓▓▓▓

# **REFER TO COURT FILE**

Revised 09/15/99